**LITIGATION AND BUSINESS LAW GROUP, INC.**
 Michael W. Kinney, Esq. (106781)
73-745 El Paseo Drive, Suite 12B
Palm Desert, California 92260
Telephone:  760.341.1100
Email:      mkinney@lblglaw.com

Attorneys Specially Appearing for
True Pharmastrip Inc.

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SANTA ANA DIVISION

IN RE TRUE PHARMASTRIP INC., A Canadian Corporation

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 8:23-bk-11489-SC

**MEMORANDUM OF POINTS AND AUTHORITIES OF TRUE PHARMASTRIP, INC. IN OPPOSITION TO PETITIONING CREDITORS MOTION FOR APPOINTMENT OF AN INTERIM TRUSTEE**

**Date:  August 24, 2023**
**Time:  9:30 a.m.**
**Ctrm.  Via Zoom**

    True Pharmastrip, Inc. ("TPI") hereby offers the following opposition to the emergency motion

of BPMD Texas Partners LP, Gordon Smith, Robert Chaikin, Richard Lyons, and Lejos Investments

LLC ("Petitioning Creditors" ) for an order appointing an interim trustee

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| **1.0** | **PRELIMINARY STATEMENT** | 2 |
| **2.0** | **FACTUAL BACKGROUND** | 6 |
| | **2.1** **TPI'S FORMATION AND THE FTC ACTION** | 6 |
| | **2.2** **TPI'S CROSS-COMPLAINT FOR RETURN OF THE TPI FUNDS** | 11 |
| | **2.3** **RESOLUTION OF DEBENTURE HOLDERS' CLAIMS** | 13 |
| | **2.4** **POUJADE IS NOT A DIRECTOR, OFFICER, EMPLOYEE OR AGENT OF TPI.** | 14 |
| | **2.5** **ORDER ISSUED FOR HEARING ON MOTION OF PETITIONING CREDITORS** | 14 |
| **3.0** | **THE MOTION SHOULD BE DENIED BECAUSE IT WAS NEVER SERVED AND VIOLATES THE DUE PROCESS RIGHTS OF THE INTERESTED PARTIES** | 15 |
| **4.0** | **THERE IS NO EVIDENCE OF DANGER TO THE ALLEGED ESTATE** | 17 |
| | **4.1** The Failure to Provide the Requisite Notice is Fatal to the Motion. | 22 |
| | **4.2** The Court Must Consider the Petitioning Creditor's Likelihood of Success on The Underlying Petition | 23 |
| | **4.3** The Petitioning Creditors Filed the Petition In Bad Faith | 24 |
| | **4.4** There is no Automatic Comity Between the United States and Canada so Appointment of an Interim Trustee Would Only Create Waste and Unnecessary Expense. | 29 |
| | **4.5** The Petitioning Creditor's Purported Issues with Management are Irrelevant | 31 |
| **5.0** | **IF THIS COURT GRANTS THE MOTION PETITIONING CREDITORS SHOULD BE REQUIRED TO POST A BOND IN THE AMOUNT OF $2,000,000.** | **33** |

i

# TABLE OF AUTHORITIES

## CASES

*AMG Capital Management LLC v. Federal Trade Commission* 141 S.Ct. 1341 (2021)        7

*In re Bayshore Wire Products Corp*., 209 F .3d 100, 105 (2000)        25

*In re Better Care, Ltd*., 97 B.R. 405,411 (Bankr. .D. Ill. 1989)        26

*In re Diamondhead Casino Corp.*, 540 B.R. 499 (Bankr. D. Del. 2015)        3, 18-20, 23

*In re Forever Green Athletic Fields Inc.* 804 F.3d 328 (3d Cir. 2015)        28

*In re Kidwell* (Bankr ED CA 1993) 158 BR 203, 217        2 5

*In re Levin*, No. 10-27946-BKC-RBR, 2011 WL 1469004, at *2

(Bankr. S.D. Fla. Apr. 15, 2011)        18

*In re Macke Intern. Trade Inc.* 370 B.R. 236, 246 (BAP, 9th Cir 2007)        4,13,17

*In re Reed*, 11 B.R. 755, 757 (Bankr. S.D.W.V. 1981)        18

*In re Mi La Sul,* 380 28 B.R. 546, 557 (Bankr. C.D. 2007)        24, 25, 26

*In the Matter of Smith,* 243 B.R. 169, 197-98 (Bankr D. Ga. 1999)        26

*In re Spade*, 269 B.R. 225, 229 (D. Colo. 2001)        25

*In re Torrez* ( USBC E.D. Cal 1991) 132 B.R. 924, 934)        3,16

*In re Wavelength Inc.*, 61 B.R. 614, 619 (9th Cir BAP 1986)        24, 25

*In re WLB-RSK Venture* 296 B.R.509, 513 (Bankr. C.D. Cal. 2003)        24, 25

*Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)        12

*Oasis at Wild Horse Ranch, LLC v. Sholes* 2011 WL 4502102 at 10 (9th Cr. BAP 2011)        27

*Tennant v. Rojas* ( In re Tennant), 318 B.R. 860, 870 (9th Cir. BAP 2004)        12

## FOREIGN CASES

*Hunt v. T & N plc* (1992), [1993] 1 W.W.R. 354 (B.C. S.C.) at p. 358        31

*Westinghouse Electric Corp. v. Duquesne Light Co.* (1977), 16 O.R. (2d)
273 (Ont. H.C.) at p. 291        31

## STATUTES

11 U.S.C. §105        24

11 USC §303        3, 17, 23

Federal Rule of Bankruptcy Procedure 2001        17,18,

## SECONDARY SOURCES

Collier on Bankruptcy ¶ 2001.02[2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.)   18

## FOREIGN STATUTES

Bankruptcy and Insolvency Act section 269                                    29

Bankruptcy and Insolvency Act section 272                                    29

iii

(Motion").

**TPI, A CORPORATION FORMED UNDER THE LAWS OF BRITISH COLUMBIA AND LOCATED IN CANADA WITH NO PRINCIPAL OR OTHER PLACE OF BUSINESS IN CALIFORNIA  OBJECTS TO THE PERSONAL AND SUBJECT MATTER JURISDICTION OF THIS COURT AND THROUGH THIS OPPOSITION IS NOT WAIVING SUCH OBJECTIONS. NEITHER THE MOTION NOR THE SUMMONS AND INVOLUNTARY PETITION ("PETITION") HAVE BEEN SERVED ON TPI AND ITS TIME TO FILE A RESPONSIVE  PLEADING HAS NOT YET BEGUN TO RUN. TPI WILL FILE A MOTION TO DISMISS THIS CASE ON MULTIPLE GROUNDS INCLUDING BUT NOT  LIMITED TO LACK OF JURISDICTION, THE CREDITORS' BAD FAITH, AND THE CREDITORS FAILURE TO SATISFY PROCEDURAL REQUIREMENTS. NOTHING HEREIN SHALL BE INTERPRETED AS AN EXPRESS OR IMPLIED WAIVER OF JURISDICTION.**

**1.0    PRELIMINARY STATEMENT**

The Petitioning Creditors' Motion, like the Petition itself, has been filed in bad faith without substantial justification. Their actions are a fraud on this court and the Motion should be summarily denied. The Motion has never been served on TPI or any other interested party as ordered by this court. The Petitioning Creditors used a known false address for TPI, a Canadian company without a place of business in California, to forum shop. The Petitioning Creditors do not meet the statutory requirements for the filing of an involuntary petition because their claims are clearly disputed as evidenced by the ongoing litigation involving the parties. No evidence has been produced to show that the alleged estate will be irreparably harmed without the appointment of an interim trustee. Finally, the appointment of a trustee would result in unnecessary expenses and a waste of assets because there is no

automatic comity between the United States and Canada and further re-litigation of the same issues would be necessary.

There has been no service of the Motion, timely or otherwise. This Court ordered that the Motion be served "on all interested parties" via overnight mail and electronically no later than August 1, 2023, and that telephonic notice be provided on August 1, 2023 before noon. Petitioning Creditors have failed to serve the Motion on TPI or provide telephonic notice to TPI as mandated by this Court even though Petitioning Creditors were at all times well aware of the contact information for TPI and its counsel in Canada.

The Court ordered that service be made not only on TPI but on all interested parties. Although not defined in the Bankruptcy Code, a party in interest is someone or entity "that has a sufficient stake in the outcome of the proceeding so as to require representation." *In re Torrez* ( USBC E.D. Cal 1991) 132 B.R. 924, 934). At a minimum this would include the firm of Spertus, Landes & Joseph ("Spertus Firm") who Petitioning Creditors mention at length in their Motion as a secured creditor of TPI. This should also include the over 300 shareholders of TPI, both common and preferred. No notice was provided to the Spertus Firm or to TPI's knowledge any of its shareholders. The Motion must be denied.

The Petitioning Creditors intentionally provided this court through the Petition with a known false address for TPI. At no time has TPI ever had a principal place of business, or any business address at 16 Canyonwood, Irvine, CA 92620 (the address listed in the Petition) or anywhere else in California. TPI is a company organized and existing under the laws of British Columbia and maintains its principal place of business in Canada at 1383 West 8th Avenue, Vancouver, B.C., the address that appears on the documents Petitioning Creditors rely upon to support their disputed claims. TPI never received service of the Motion at its principal place of business in Canada or any other location.

Petitioning Creditors did email a copy of the Motion to Jacques Poujade. However, he is neither an officer, director, agent, representative nor responsible party for TPI having resigned from the company before the Petition was filed. Therefore, any attempted electronic service of this Motion on TPI through Jacques Poujade was of no effect. In short, the Motion has not been served on TPI or the parties in interest as ordered by this Court, and no telephonic notice of this Motion has been given to TPI as ordered by this Court. For this reason alone, the Motion must be denied.[1]

There is no evidence of the need for a trustee. As the Ninth Circuit noted, "[B]eing targeted by an involuntary bankruptcy petition is a disruptive and, in many cases, financially traumatic event for the alleged debtor." *In re Macke Intern. Trade Inc.* 370 B.R. 236, 246 (BAP, 9th Cir 2007). Further, the appointment of an interim trustee is "an even more extreme remedy." *In re Diamondhead Casino Corp*, 540 B.R. 499, 505 ( Bankr, D. Delaware 2015). The Bankruptcy Court for the District of Delaware noted that there is limited case law applying Bankruptcy Code § 303(g) because requests for such relief are rare. *Id.* The *Diamondhead* Court further noted that "requests for interim trustees should be denied in the absence of an exceptionally strong need for doing so." *Id.* It further cautioned that such requests should only be granted where a movant shows "a substantial risk of loss to the estate." *Id.*

Here the only asset identified by the Creditors in their Motion is the sum of $948,589.60 (the "TPI Funds")  on deposit with the Los Angeles County Superior Court in *Robb Evans & Associates LLC v. Redwood Scientific Technologies, Inc., et al., and the related cross-actions*, LASC Case No. 22STCV04546, a pending interpleader action ("Interpleader Action"). These funds are under the exclusive control of the Los Angeles County Superior Court, and for the past several years in the face of objections from the Petitioning Creditors, TPI has been trying to secure their release. The funds need no

---

[1] On August 3, 2023 Creditors' attorney was provided with notice of the above via email and a demand to dismiss the motion and the Petition but has refused to do so.

4

protection as they are on deposit with the court and there is no "substantial risk of loss to the estate." A trustee, if appointed, would merely fall into the shoes of TPI in a litigation which has been pending for several years trying to obtain the release of the funds. A trustee could not simply demand the immediate release of the funds from the court. Even if TPI were to obtain the release of the TPI Funds from the Los Angeles Superior Court during the gap period, Petitioning Creditors provide no evidence of a substantial risk of loss to the estate.  It follows that the appointment of a trustee is wholly unnecessary and costly.

TPI has a bona fide dispute with the Petitioning Creditors as demonstrated by the pending Interpleader Action involving the parties, including the opposing cross-complaints against one another. TPI has no dispute with the Spertus Firm and has an agreement in place for payment in full of their charges through the attorney's lien they have on the proceeds of the Interpleader Action. There is no legitimate purpose to the Petition which is merely a litigation ploy. Similarly, there is no legitimate purpose to the Motion as there is nothing for a trustee to monitor. This is a classic two-party dispute where everything can be accomplished through normal state court litigation and debt collection activities.

The Petition is a bad faith filing and a motion to dismiss will soon be forthcoming. At the time the Petition was filed there were three hearing dates set in the Interpleader Action. The first hearing was set for August 2, 2023 on TPI's demurrer to the First Amended Cross-Complaint of the Petitioning Creditors. When the Petition was filed, Petitioning Creditors had already received the Court's tentative sustaining the demurrer without leave to amend. The timing of the Petition shows that its sole purpose was to delay the hearing.

There is a September 14, 2023 hearing on TPI's motion for summary judgment and an upcoming trial. As the Petitioning Creditors intended, these dates will likely moved due to the filing of the Petition. The closeness of these hearings to the Petition filing date demonstrates that the Petition was filed in bad

faith and for an improper purpose. Moreover, the very documents upon which Petitioning Creditors rely to support their disputed claims provides for exclusive jurisdiction in Canada. The Petitioning Creditors simply want to delay the inevitable and forum shop which is no doubt why they provided to this court under penalty of perjury a knowingly false address for TPI.

There is no evidence of dissipation of assets or the need for a trustee to preserve assets. During the past year, TPI parlayed a non-performing asset into agreements with its unsecured creditors to retire over $9,000,000. The Petitioning Creditors declined to participate in the debt resolution agreements leaving them and two other debenture holders as the only unsecured creditors of the company. Instead, they have forced TPI to incur substantial and wholly unnecessary attorney's fees and costs in the Interpleader Action by asserting meritless claims which are the subject of TPI's summary judgment motion and demurrer. The Petition and this Motion are the most recent in a long line of frivolous actions instituted by the Petitioning Creditors against TPI. When their claims fail as they all do, such as their First Amended Cross-Complaint, they move on to other litigation tactics such as the Petition and Motion.

Finally, TPI is a British Columbia company and there is no comity between the United States and Canada. Consequently, even if the Motion were granted, which it should not be, it would have no practical effect. Instead, it would result in exorbitant costs to the estate. The same is true for the Petition itself. If the Petitioning Creditors were truly interested in protecting all creditors and shareholders, they would have filed this case in British Columbia. Instead through the use of a false address they have engaged in forum shopping. This is but one further basis for denial of the Motion.

## 2.0    FACTUAL BACKGROUND

### 2.1    TPI'S FORMATION AND THE FTC ACTION

In July 2018, Jacques Poujade ("Poujade") and Jason Cardiff ("Cardiff") incorporated TPI in British Columbia as a holding company.  (Declaration of Erwin Sui, ( ¶4.)  At all times since the principal place of business of TPI has been in British Columbia, Canada at 1383 West 8th Avenue, Vancouver, B.C. ("TPI Office") (Declaration of Erwin Sui, ( ¶6.)  TPI does not now nor has it ever maintained an office in California. (Declaration of Erwin Sui, ( ¶6.)  TPI is not qualified to do business in California or any other state in the United States. (Declaration of Erwin Sui, ( ¶6.)

In August 2018, TPI opened discussions with a Canadian investment broker about raising capital for TPI through a private offering.  (TPI's Request for Judicial Notice ("RJN") Ex. 1 ¶¶ 8-11.)  The broker learned that the Federal Trade Commission ("FTC") was investigating Cardiff, and informed Jacques Poujade who removed Cardiff as a director and shareholder and severed Cardiff's relationship with TPI.  (*Id.* ¶¶ 11-17; Sui Dec., ¶9.)  Jacques Poujade then took over management of TPI.  (*Id.* ¶¶ 13-18.)  Jason Cardiff's 100 founder shares were canceled effective August 27, 2018. (Sui Decl. ¶¶3-7.)  The Cardiffs also resigned as TPI directors, effective October 8, 2018.  (Sui Dec., ¶9)  The cancelation of Cardiff's shares was recorded in TPI's official registry; notice of the Cardiffs' board resignations was filed with the British Columbia Corporate Registry on November 16, 2018.  (Sui Dec., ¶¶3-7)  Although Jason Cardiff no longer had anything to do with TPI by September 2018, he inadvertently remained a signatory on TPI's checking account after his resignation from TPI. (Sui Decl. ¶3-7.)

In September 2018, TPI received its first capital infusion.  Gundyco IFT XIB Private Capital LP ("XIB") invested $500,000 Canadian Dollars ("CAD") in TPI.  (Sui Dec., ¶10)     That same month, FSD Pharma invested $1,500,000 CAD in TPI.  (Sui Dec., ¶12-13)  After the funds from these transactions were received by TPI's Canadian law firm, the firm wired $500,000 CAD to TPI's account

on September 10, 2018.  (Sui Dec., ¶10-13)   On September 13, 2018, after certain fees and commissions were deducted from the FSD Pharma $1,340,000 CAD more was wired into TPI's account.  (Sui Dec., ¶10-13)  TPI raised additional funds in 2019 from 59 individuals and entities through convertible debentures ("Debenture Holders"). (Sui Dec., ¶13)  In total TPI raised $8.6 million through the debentures. (Id). The Petitioning Creditors are part of the Debenture Holders. *Pursuant to the terms of these agreements the Petitioning Creditors agreed to exclusive jurisdiction in Canada.* (Sui Dec., Ex. 1)

On September 19, 2018, TPI incorporated a wholly-owned subsidiary called Pharmastrip Corp. under the *Canada Business Corporations Act*. (Sui Dec., ¶11)   The sole director and sole officer of Pharmastrip Corp. is Richard Poujade. (Sui Dec., ¶11)  Thereafter on April 4, 2019, TPI acquired a 100% ownership interest in Industrial Court L7 LLC, which company held licenses for the manufacture and sale of cannabis products. (Sui Dec ¶14). Pharmastrip Corp has over $2,000, 000 in fixed assets alone. (Richard Poujade Dec ¶3). Pharmastrip Corp's address is 1199 Grenoble Crescent, Ottawa, ON K1C 2C5 Canada. (Richard Poujade Dec ¶4).  It has never had a California address. (Id)

In October 2018, the FTC brought an action against Jason Cardiff, his wife Eunjung Cardiff, and several of the couple's U.S.-based companies.  In its Complaint filed on October 10, 2018, the FTC alleged that the Cardiffs and their companies, which sold dissolvable oral thin strips marketed to help people stop smoking, lose weight, and improve their sexual performance, committed several violations of consumer protection laws.  (Petitioning Creditors Request for Judicial Notice ("PC RJN") Ex.1)  The FTC also obtained a temporary injunction and preliminary injunction freezing the assets of the Cardiffs. (PC RJN, Ex.2) Even though not named in the FTC action the FTC came after TPI through its then director Jacques Poujade, a California resident, to try and seize all assets of TPI.

TPI disputed the claims of the FTC on multiple grounds. TPI claimed that the FTC's attempted asset grab was an abuse of its power and that it had no right to have any funds transferred to it as they did not belong to the Cardiffs. As a show of good faith TPI transferred the sum of $1,200,000 into a segregated bank account of the receiver until the matter was heard to determine ownership of the funds. (Jacques Poujade Dec., ¶2 ). Contrary to what the Petitioning Creditors claim, the court never ordered the transfer of these funds. This was the amount on deposit in the TPI bank account on which Jason Cardiff was a signatory. (Jacques Poujade Dec., ¶2). On October 1, 2019 TPI pursuant to a written fee agreement retained the firm of Spertus, Landes & Joseph to seek return of the above funds and to oppose the aggressive efforts of the FTC to pursue the assets of TPI. (Jacques Poujade Dec., Ex. 1).

During the pendency of the FTC action the United States Supreme Court in a unanimous decision rebuked the FTC finding that it had no power to seize assets. (*AMG Capital Management LLC v. Federal Trade Commission* 141 S.Ct. 1341 (2021)) Thereafter, the FTC Action concluded with injunctive relief only, and no consumer payments were ordered.  (RJN, Ex.6)

At the conclusion of the FTC's enforcement action, which was ultimately resolved without a restitution order, TPI sought the return of the TPI Funds.  TPI was relying on the return of the funds it had deposited with the FTC to pay its legal fees and other expenses. (Richard Poujade Dec.,¶6) The Spertus Firm agreed to continue to seek return of the deposited funds on condition that it be granted a lien on the deposited funds. (Jacques Poujade Dec., ¶3) On or about May 20, 2021 TPI and the Spertus Firm entered into a written lien agreement and later a further lien agreement. (Jacques Poujade Dec., Exh. 2) At that time TPI owed the Spertus Firm the sum of a little over $505,000. (Id)

In an order issued August 5, 2021, the district court made "preliminary findings that TPI is a corporate entity with a duly constituted board of directors, the Deposited Funds [TPI Funds] were raised

from third-party investors, and neither Jason Cardiff nor Eunjung Cardiff own the funds, though Jason

previously did have access to and control over the funds." (RJN, Ex. 3.)  Indeed, as of the time of TPI's

deposit with the Receiver, TPI's board of directors consisted of five individuals: Jacques Poujade,

former U.S. Congressman Dana Rohrabacher, Ralph Olson, Kamlesh Shah, and Anton Drescher.  (Sui

Dec., ¶19.)  The district court also noted that "the FTC did not provide clear and convincing evidence

that other funds in TPI accounts were subject to the Cardiffs' ownership or control, thereby also

acknowledging that TPI as a whole is not an alter ego of the Cardiffs." (RJN, Ex.2-3.)  Initially, the

district court found "that there will be no monetary judgment and a claims process will not be

necessary." (RJN, Ex.2-3)

    After the court issued the above order, the attorney for the Petitioning Creditors made an

appearance in the FTC action. After the district court made this finding, the Receiver filed its Final

Report with Accompanying Accounting (the "Final Report") in which it provided summary accounting

for the Receivership Estate and set forth its position on a few outstanding issues concerning the

Receivership Estate.  (RJN Ex. 4.)  After determining the amount of Receivership fees, the parties owed

and recommending how those fees should be apportioned between the parties, the Receiver concluded

that there were $948,589.60 (the "TPI Funds") of the funds TPI deposited with the Receiver remaining

in the Receivership Estate for distribution.  (RJN, Ex. 4)  In its order dated December 2, 2021, the

district court ratified the Receiver's recommended apportionment of the Receivership fees, confirming

that, after those fees, $948,589.60 remained of the approximately $1.2 million TPI had originally

deposited with the Receiver.  (RJN, Ex 5)

    Also in its Final Report, based on the claims made by the Petitioning Creditors, the Receiver

recommended that the district court "authorize the Receiver to interplead the Surplus Funds in the Los

Angeles County Superior Court, naming as defendants the various claimants, thereby allowing a state

court to sort out who is entitled to what portion of the Surplus Funds, which would no longer need to be administered in this receivership estate." (RJN, Ex. 4) The Receiver further claimed that "various claimants approached the Receiver directly" claiming they had been "defrauded" into investing in TPI. (RJN, Ex.4)   These "various claimants" to which the Receiver referred are the Petitioning Creditors (RJN, Ex.4)   The Receiver explained that the Debenture Holders' claims "do not seem to involve any acts or communications by the Receiver or the receivership estate[.]" (RJN, Ex 4)   Instead, according to the Receiver, the Petitioning Creditors "seem to be angling to receive the Surplus Funds in the Receivership estate, if any, otherwise claimed by Poujade/TPI." (RJN, Ex.4)    The Receiver then wrongly concluded by recommending that the district court "authorize the Receiver to interplead those funds in the state court for determinations there." (RJN, Ex. 4)

Over TPI's objection, the district court ordered the Receiver to deposit the receivership estate funds into a state court interpleader action, concluding that the "most equitable way to wind up the Receivership" is "[a]n interpleader action that allows all potential claimants an opportunity to assert their claims[.]" (RJN, Ex 5)    The Interpleader Action entitled *Robb Evans & Associates LLC v. Redwood Scientific Technologies, Inc., et al., and the related cross-actions*, LASC Case No. 22STCV04546, was thereafter filed. (PC RJN Ex. 5.)

**2.2    TPI'S CROSS-COMPLAINT FOR RETURN OF THE TPI FUNDS**

The Receiver filed its Complaint-in-Interpleader, initiating this interpleader action.  (RJN, Ex. 5.) TPI filed a Cross-Complaint against all answering defendants who asserted a claim to the TPI Funds. This is the pleading on which TPI now seeks summary judgment in the present motion.  (PC RJN. Ex. 7.)  In the ensuing months, several parties answered TPI's Cross-Complaint, some agreeing to TPI's entitlement to the TPI Funds in those pleadings.  No Cross-Defendant other than the Petitioning

Creditors asserts a material fact in dispute that could create a triable issue of fact related to TPI's entitlement to the immediate return of the TPI Funds.

The Petitioning Creditors purport to dispute TPI's entitlement to the TPI Funds based on their contention that TPI breached contracts between TPI and Debenture Holders in 2021, which is unrelated to the FTC Action or TPI's deposit of funds with the Receivership Estate. TPI disputes these claims as to the amount and enforceability. (Kinney Dec., ¶4). The Petitioning Creditors filed a First Amended Cross-Complaint against TPI on May 1, 2023 claiming $1,000,000 and asking for a declaration that Petitioning Creditors are entitled to this amount. (RJN, Ex. 7). TPI filed a demurrer in response and the court issued its tentative sustaining the demurrer without leave to amend. (RJN, Ex.8)

Petitioning Creditors filed this involuntary case on July 24, 2023. (Dkt. 1). The Petition falsely lists the address of TPI as 16 Canyonwood, Irvine, CA 92620. (Dkt. 1). TPI has no address within California and never has. (Sui Decl. ¶6 ). The debentures and governing subscription agreement clearly identify the address of TPI as 1383 West 8th Avenue, Vancouver, B.C. and provide that all notices be provided to TPI at this registered office in Canada, (Sui Dec., Ex. 1). In fact, counsel for Petitioning Creditors in the Interpleader Action attached to the First Amended Cross-Complaint notices his client sent to TPI at its registered office prior to the filing of the Interpleader Action. (RJN, Ex. 7)

The timing of the Petition is extremely suspect. At the time it was filed TPI's demurrer to the Debenture Holders' Cross-Complaint asserting entitlement to the TPI Funds was set to be heard on August 2, 2023 but was continued due to the filing of the Petition by Petitioning Creditors. (RJN Ex. 9.) The Court issued a tentative ruling sustaining TPI's demurrer to the Debenture Holders' Cross-Complaint on June 26, 2023. (RJN, Ex. 8.) TPI's Motion for Summary Judgment is set to be heard on September 14, 2023 and a trial is scheduled for October 16, 2023 (RJN. Ex. 10) As a result of the filing

of the Petition by Petitioning Creditors the court scheduled a further status conference on the issue of the automatic stay and also stated that the future hearing dates would be continued. (RJN. Ex. 9)  Thereafter, the Spertus Firm sent a letter to counsel for the Petitioning Creditors demanding that both the motion and petition be withdrawn.

### 2.3    RESOLUTION OF DEBENTURE HOLDERS' CLAIMS

After the filing of the Interpleader Action, TPI, spearheaded by its board of directors reached agreement with all the Debenture Holders, except the Petitioning Creditors, for full payment of their claims through the issuance of preferred stock in TPI and the receipt of other stock from Falcon International ("Falcon").  (Sui Dec., ¶18). As part of the transaction, TPI sold its interest in Industrial Court L7 LLC to Falcon. (Sui Dec., ¶18).  Industrial Court L7 LLC was a non-performing entity having never sold any product. (Richard Poujade Dec., ¶8-9) As a result of the above transaction, TPI has no remaining unsecured creditors other than the Petitioning Creditors and two other debenture holders who elected not to participate in the settlement. (Richard Poujade Dec., ¶7)

Prior to the Petitioning Creditors filing their notice of appearance in the FTC Action, and at a time when the court appeared willing to return the TPI Funds to TPI subject to the Final Report of the Receiver. (RJN, Ex. 2). As a direct result of the actions of the Petitioning Creditors, TPI now owes the Spertus Firm in excess of the TPI Funds.  TPI is seeking attorneys' fees and costs from the Petitioning Creditors in the Interpleader Action. (RJN, Ex. 7)

It is evident from the Interpleader Action, TPI has a good faith dispute as to the alleged claims of the Petitioning Creditors. If successful in its summary judgment motion, TPI intends to seek monetary damages against the Petitioning Creditors as well for the damage caused to TPI by the Petitioning Creditors wrongfully asserting claims to the TPI Funds.

**2.4    POUJADE IS NOT A DIRECTOR, OFFICER, EMPLOYEE OR AGENT OF TPI.**

Jacques Poujade was one of the original officers and directors of TPI.  However, he was never an employee of TPI. (Sui Dec., ¶21).  Immediately upon signing the plea agreement, Jacques Poujade resigned as an officer and director of TPI. (Sui Declaration, ¶21). Prior to the filing of the Petition the resignations were submitted for recording in the Official Records of British Columbia. (Sui Declaration, ¶21).

**2.5    ORDER ISSUED FOR HEARING ON MOTION OF PETITIONING CREDITORS**

On July 31, 2023 this court granted the application of Petitioning Creditors for a hearing on shortened notice on their motion for appointment of an interim trustee. (Dkt. No. 17). The court's order ("Order") provided that Petitioning Creditors must provide telephonic notice of the hearing to all interested parties by noon on August 1, 2023. (Id) The Order further provided that the Motion must be sent by overnight mail and electronically to all interested parties by August 1, 2023. (Dkt. No. 17).

No such Motion has ever been received from Petitioning Creditors by TPI. (Sui Dec., ¶19).  No such Motion has ever been received from Petitioning Creditors by the Spertus Firm. (Spertus Dec., ¶43). The Summons and Petition have never been served. (Sui Dec., ¶20 and 23).  This is despite the fact that Marc Graubart, one of the alleged representatives of BPMD Texas Partners LP, one of the Petitioning Creditors, has had multiple pre-petition communications with Erwin Sui, TPI's Canadian counsel. (Sui Dec., ¶21).  Further Marc Graubart was provided with TPI's cap table and interim financials (Kinney Dec., ¶3).

**3.0    THE MOTION SHOULD BE DENIED BECAUSE IT WAS NEVER SERVED AND VIOLATES THE DUE PROCESS RIGHTS OF THE INTERESTED PARTIES**

"Generally speaking, a court must give sufficient notice of an adverse action and the opportunity for interested parties to be heard. See *Tennant v. Rojas* ( In re Tennant), 318 B.R. 860, 870 (9th Cir. BAP 2004) ("the concept of procedural due process requires a notice and an opportunity to be heard")." According to the United States Supreme Court:

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and to afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information ... and it must afford a reasonable time for those interested to make their appearance. "

*Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (citations omitted).

This Court ordered that the Motion be served "on all interested parties" via overnight mail and electronically no later than August 1, 2023, and that telephonic notice be provided on August 1, 2023 before noon. Petitioning Creditors have failed to serve the Motion or provide telephonic notice as mandated by this Court severely prejudicing TPI which has had insufficient time to retain experienced bankruptcy counsel to prepare an opposition.

The Petitioning Creditors through the Petition listed a knowingly false address for TPI as 16 Canyonwood, Irvine, CA 92620. TPI, a company organized and existing under the laws of British Columbia,  maintains and has always maintained its principal place of business in Canada at 1383 West 8th Avenue, Vancouver, B.C. Petitioning Creditors at all times knew this as the debentures and subscription agreements upon which they base their contested claim specify that all notices are to be sent to TPI at this address. Further exhibits attached to Petitioning Creditors' First Amended Cross-

Complaint in the Interpleader Action include copies of "Notice of Default" they sent to TPI at its

Canadian principal place of business. This demonstrates that they made an informed decision not to

serve TPI and to list a false address for TPI in the Petition.

TPI has never had a California address. Accordingly, no purported service of TPI at any California

address was or is effective. TPI never received the Motion at its Canadian principal place of business or

any other place of business. There has been no service on TPI mandating denial of the Motion.

TPI concedes that Petitioning Creditors sent the Motion to Jacques Poujade. However, he is

neither an officer, director, agent, representative nor responsible party for TPI. Such attempted

electronic service of the Motion on TPI through Jacques Poujade was of no effect. For this reason alone,

the Motion must be denied.

The Court ordered that service be made not only on TPI but on all interested parties. Although not

defined in the Bankruptcy Code, a party in interest is someone or entity "that has a sufficient stake in

the outcome of the proceeding so as to require representation." *In re Torrez* ( USBC E.D. Cal 1991) 132

B.R. 924, 934). At a minimum this would include the firm of Spertus, Landes & Joseph ("Spertus

Firm") who Petitioning Creditors mention at length in their Motion as a secured creditor of TPI. This

should also include the over 300 shareholders of TPI, both common and preferred. No notice was

provided to the Spertus Firm or to TPI's knowledge any of its shareholders. This was not an oversight it

was intentional.[2]

It is undisputed that the Petitioning Creditors have not provided notice of the Motion and the

related hearing to TPI. The Petitioning Creditors have not served copies of the Motion or the Hearing

Order on any of the shareholders or potential creditors, including the Spertus Firm. The Petitioning

---

[2] Marc Graubart, one of the principals of one of the Petitioning Creditors was provided with a cap table for TPI so he knew
the identities of the shareholders. He also knew and had repeated communications with Erwin Sui TPI's Canadian counsel.

Creditors are not only attempting to steamroll the rights of TPI but also the rights of the nearly over 300 additional shareholders that have no notice of these proceedings whatsoever. Although the court ordered the Petitioning Creditors to notice all interested parties, the Petitioning Creditors failed to notice a single shareholder. The failure to provide such parties with notice is egregious. The Motion should be denied.[3]

### 4.0    THERE IS NO EVIDENCE OF DANGER TO THE ALLEGED ESTATE

"Being targeted by an involuntary bankruptcy petition is a disruptive and, in many cases, financially traumatic event for the alleged debtor. Resources, including time and money, must be diverted from other commitments to defend against the petition. Moreover, pending a resolution of the issues by the bankruptcy court, the alleged debtor exists in a financial interstice, necessarily uncertain of its future, restricted in its ability to make normal business decisions and plans. The pendency of the bankruptcy petition may cause suppliers, customers and investors to be reluctant to deal with the debtor. And even if adjudication of bankruptcy relief proves unwarranted, and the petition is eventually dismissed, the debtor may suffer considerable loss or damages from the process." *In re Macke Intern. Trade Inc.* 370 B.R. 236, 246 (BAP, 9th Cir 2007).

Federal Rule of Bankruptcy Procedure 2001 provides that a motion requesting the appointment of an interim trustee under § 303(g) "shall set forth the necessity for the appointment and may be granted only after hearing on notice…." Fed. R. Bankr. P. 2001(a). The rule further provides that "[t]he order directing the appointment of an interim trustee shall state the reason the appointment is necessary and shall specify the trustee's duties." Fed. R. Bank. P. 2001(c). 11 U.S.C. § 303(g). Under 11 U.S.C. §303(g) an interim trustee may be appointed only if it is necessary during the gap period "to preserve the property of the estate or to prevent loss to the estate."

---

[3] Petitioning Creditors were notified of the defective service and demand was made that the Motion be withdrawn. They have failed to do so.

As noted by Collier on Bankruptcy, the "contours of the law" under § 303(g) are not well defined: "The case law does not contain detailed discussion of what facts must be alleged and proven to establish that an interim trustee is "necessary to preserve the property of the estate or to prevent loss to the estate" under section 303(g). … One theme emphasized throughout the case law concerns the potentially devastating consequences flowing from the displacement of the debtor from his property prior to a finding that bankruptcy relief is appropriate. "Collier on Bankruptcy ¶ 2001.02[2] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). (See also In re Levin, No. 10-27946-BKC-RBR, 2011 WL 1469004, at *2 (Bankr. S.D. Fla. Apr. 15, 2011) ("The request for interim trustee should not be granted in absence of an exceptionally strong need for doing so."); In re Reed, 11 B.R. 755, 757 (Bankr. S.D.W.V. 1981) (interim trustee will not be appointed unless irreparable harm to estate is likely between time of filing and hearing on contested petition).

It is indisputable that even with proper service and notice (which has not occurred in this case), the relief sought by the Petitioning Creditors is extraordinary. In a case seeking an interim gap period trustee the Bankruptcy Court for the District of Delaware found that the creditor movants had not met the extremely high burden that needed to be satisfied. *In re Diamondhead Casino Corp.*, 540 B.R. 499 (Bankr. D. Del. 2015). As noted by the *Diamondhead* Court, an involuntary petition is an "extreme remedy." *Id.* at 505. The appointment of an interim trustee, however, is "an even more extreme remedy." *Id*. The Bankruptcy Court for the District of Delaware noted that there is limited case law applying Bankruptcy Code § 303(g) because requests for such relief are rare. *Id.* The *Diamondhead* Court further noted that "requests for interim trustees should be denied in the absence of an exceptionally strong need for doing so." *Id.* It further cautioned that such requests should only be granted where a movant shows "a substantial risk of loss to the estate." *Id.*

In *Diamondhead*, the putative debtor began to focus on the development of a land-based

casino resort in Mississippi in the year 2000. *Id.* at 501. From 2000 through 2015, it had no

operations and, aside from a small amount of cash, its only tangible asset was 404 acres of

undeveloped land. *Id.* The property, however, had considerable value. *Id.* at 502. At the time of

the involuntary filing, the putative debtor did not have the funds to develop the property. *Id.* It

needed to either raise funds or find a joint venture partner. *Id.*[10] Prior to the involuntary filing, a

group (including one of the petitioning creditors) undertook an effort to remove the putative

debtor's incumbent board of directors. *Id.* at 504. That effort was unsuccessful. *Id.* Having

failed in that effort, certain investors sought to place the putative debtor in an involuntary

bankruptcy case. *Id.* at 505.

In seeking to appoint an interim trustee, the petitioning creditors in *Diamondhead* made

strikingly similar arguments to those of the Petitioning Creditors in the present case. The

*Diamondhead* Court noted that the crux of the petitioning creditors' argument in that case was

"that management has mismanaged the Property by not developing it in the last 15 years." *Id.* at

507. Similar to the present case, the petitioning creditors in *Diamondhead*, did not cite any loss

that the estate would incur during the gap period. *Id*. The *Diamondhead* Court found that factor

to be critical. *Id.* at 508 ("Diamondhead is (and has been) a non-operating entity for the past 15

years, with a wholly owned subsidiary that owns real estate. There was no testimony that during

the gap period anything different will occur, or that the Property will be sold . . . .").

Furthermore, the Court found that there was no testimony that the equity in the subject property

would decline or that, as a result, an equity cushion would be depleted during the gap period. *Id.*

at 508. "[L]ack of trust in management or frustration with the lack of progress on the development of the

Property, no matter how justified, does not suffice to warrant an interim trustee on the facts of this case."

*Id.*

Here there is a startling lack of evidence to support the Petitioning Creditors substantial

burden of proof. It is undisputed that the TPI Funds are on deposit with the Los Angeles Superior

Court. There is no evidence that those funds would decline or that, as a result, an equity cushion

would be depleted during the gap period. TPI concedes that due to the frivolous claims to the TPI

Funds made by Petitioning Creditors, further legal fees will be necessary to secure the release of the

TPI Funds to TPI. However, these are the same legal expenses that a trustee would need to incur.

There is simply no evidence that any assets of TPI will decrease in value during the gap period.

There is similarly no evidence that there is an "exceptionally strong" for the appointment of

an interim trustee to preserve the property of the estate or to prevent loss to the estate. This is a

mandatory element which has not been established by the Petitioning Creditors. Even with the

appointment of a trustee the TPI Funds will still be on deposit with the Los Angeles Superior Court.

Moreover, assuming that TPI obtains of the release of these funds during the gap period (or in this

case prior to the hearing on TPI's soon to be filed Motion to Dismiss), there is a paucity of evidence

to support appointment of a trustee. What is clear, however, from the moving papers is that the only

reason for the filing of the Petition and Motion is that Petitioning Creditors simply do not like the

idea that the Spertus Firm has an attorney's lien on the TPI Funds. This is no substitute for

exceptionally strong evidence of a need for an interim trustee in a case which should never have been

filed in the first place. Instead of pursuing their state court remedies Petitioning Creditors have run to

this court as a litigation tactic mandating denial of the Motion.

A closer examination of the "evidence" reveals the obvious shortcomings. Through the

declarations submitted by the Petitioning Creditors which are essentially identical they allege as follows:

(a)    In 2019 when the Petitioning Creditors invested in TPI they believed Jason Cardiff

was the owner of TPI.

20

(b)    In 2019 the Petitioning Creditors were not told by John Lemac or Jason Cardiff that Jason Cardiff was a defendant in the FTC action.

(c)    In October 2022 they learned that TPI intended to sell its cannabis business to a company called Falcon International ("Falcon").

(d)    The Petitioning Creditors did not want to participate in the stock exchange with Falcon.

(e)    The TPI Funds are on deposit with the Los Angeles Superior Court.

(f)    It is the Petitioning Creditors "understanding" that the only assets of TPI are the TPI Funds and

(g)    The Spertus Firm claims an attorney's lien on the TPI Funds.

Even if all of the above claims are true, which they are not, they do not come close to satisfying the Petitioning Creditors substantial burden of proof. Jason Cardiff has no affiliation with TPI and has not had any affiliation with the company since October 2018, eight months before the debentures were issued. In 2022 did sell its cannabis business to Falcon International but in the process TPI parlayed a non-performing asset (Industrial Court L7 LLC) into an agreement satisfying $9,000,000 in unsecured debt. This demonstrates substantial business judgment as it significantly improved, not diminished, TPI's value and liquidity and left the Petitioning Creditors and two other non-participating debenture holders as the only unsecured creditors of TPI.

Further this is not a single asset case as the Petitioning Creditors would have this court believe. In addition to the funds on deposit, TPI has a wholly owned subsidiary in Pharmastrip Corp which has unencumbered fixed assets in the form of manufacturing equipment worth in excess of $2,000,000. There is no evidence that any of this unencumbered heavy equipment is in danger of diminishing in value during the gap period.

Contrary to the arguments by the Petitioning Creditors, the Spertus Firm was retained to preserve the assets of TPI against the aggressive, mow rebuked, attacks by the FTC to obtain all the assets of TPI. The FTC was not trying to obtain Jacques Poujade's assets they were focused on bringing all assets of TPI into the receivership estate of Jason Cardiff. Through the efforts of the Spertus Firm, TPI was successful in preventing this and obtaining an August 5, 2021 order from the Court calling for release of the TPI Funds to TPI.

It was not until the Petitioning Creditors intervened in the FTC Action with meritless claims that the release of these funds was delayed and the Interpleader Action filed. TPI has successfully pursued the release of these funds by defeating the First Amended Cross=Complaint of Petitioning Creditors and setting the case up for summary judgment. Unfortunately, this has come at tremendous expense which could have been avoided but for the delay tactics of the Petitioning Creditors. Now TPI is left to pursue the Petitioning Creditors for its fees and costs. The actions of TPI conclusively demonstrate that it is acting to preserve the estate.

This Motion was clearly filed in bad faith. It should be denied.

//

//

//

### 4.1    The Failure to Provide the Requisite Notice is Fatal to the Motion.

The above cases and statutory scheme make clear that no interim trustee may be provided without the required notice. Having failed to provide the notice required by this court, as a matter of law the motion must be denied.

### 4.2    The Court Must Consider the Petitioning Creditor's Likelihood of Success on The Underlying Petition

Important in the court's analysis in *Diamondhead,* was its finding that as a preliminary matter it must weigh the Petitioning Creditors likelihood of success in the involuntary proceeding. *Id.* It naturally follows that given the extreme remedy of an involuntary proceeding and the even more extreme remedy of the appointment of an interim trustee, absent a clear likelihood of success no appointment of an interim trustee should be appointed. The Petitioning Creditors here have no likelihood of success.

There was no legitimate basis for filing the Chapter 7 Petition.  For relief to be granted, the Petitioning Creditors must prove that TPI is not paying its debts as they come due. Section 303(h) of the Bankruptcy Code provides, in relevant part: "after trial the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed only if (1 ) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount…" To succeed on their petition, Petitioning Creditors will have the burden of establishing that the debtor is generally not paying its debts as they become due.

 The claims of Petitioning Creditors are disputed, and creditors cannot file involuntary petitions when the claims are disputed.  For legitimate involuntary filings, the claims must be *completely* undisputed, not partially undisputed.  11 USC 303(b). The existing Interpleader Action alone unequivocally demonstrates that the claims are disputed. The parties have been litigating their alleged right to the TPI Funds for over two years and have asserted competing counter-claims against one another each requesting attorneys' fees and costs. TPI asserts that the Petitioning Creditors have maintained their claims to the TPI Funds in bad faith and intend on pursuing damages against the Petitioning Creditors. It is TPI's position that the award of attorneys' fees and costs alone will completely offset any claims of the Petitioning Creditors. They are not proper parties to an involuntary petition.

In addition, a materially false statement in support of an involuntary petition constitutes bad faith. *In re Kidwell* (Bankr ED CA 1993) 158 BR 203, 217. The Petition identifies the debtor's address as 16 Canyonwood, Irvine, CA 92620, which is a residence. TPI is a Canadian company and does not have, nor has it ever had, an office at this address and conducts no business there. An involuntary petition is filed in objective bad faith when it is not based on "reasonable inquiry," and a simple Google search would reveal these facts as would the very documents upon which Petitioning Creditors are relying to support their disputed claims. As discussed below in Section 4, there are still other reasons for a bad faith finding warranting dismissal and punitive damages against the Petitioning Creditors.

This Court should deny the Motion because the Petitioning Creditors have no probability of success of meeting the statutory requirements for filing an involuntary case against TPI.

### 4.3    The Petitioning Creditors Filed the Petition In Bad Faith

Bankruptcy courts uniformly recognize the authority to dismiss an involuntary case commenced in bad faith. That an involuntary petition can be dismissed is implicit in section 303(i)(2) of the Bankruptcy Code , which authorizes punitive damages against any petitioner that commences a case in bad faith, and is further justified via the use of inherent authority embodied in 11 U.S.C. § 105. *See In re WLB-RSK Venture* 296 B.R.509, 513 (Bankr. C.D. Cal. 2003) ("Since§ 303(i)(2) seems to imply that an involuntary petition can be dismissed for bad faith, and numerous cases support the proposition that bankruptcy petitions of any kind should not be employed for improper purposes,§ 105( a) would seem to authorize the court to dismiss an involuntary based on a finding of bad faith."). In the Ninth Circuit, the existence of bad faith is a question of fact measured by an objective test. *See In re Wavelength Inc.* 61 B.R. 614,620 (B.A.P. 9th Cir. 1986). That is if a reasonable person would believe that the subject

24

conduct constitutes bad faith, then a finding of bad faith is appropriate. *See id.; see also, In re Mi La Sul,* 380 28 B.R. 546, 557 (Bankr. C.D. 2007).

Although "bad faith" is not defined in section 303(b) of the Bankruptcy Code, courts have outlined two prevalent standards for determining whether an involuntary petition is filed in bad faith. *In re Wavelength Inc.*, 61 B.R. 614, 619 (9th Cir BAP 1986). In *Wavelength* the Nonth Circuit held that bad faith exists when a petition is "ill-advised or motivated by spite, malice or a desire to embarrass the debtor." Id. A second line of authority looks to whether the creditor's actions were an improper use of the Bankruptcy Code as a "substitute for customary collection procedures." Id. Ultimately, the BAP held that " [ w ]hether a party acted in bad faith is essentially a question of fact. Bad faith should be measured by an objective test that asks what a reasonable person would have believed." Id. at 620; see also, *In re Mi La Sul*, 380 B.R. 546, 557 (Bankr. C.D. Cal. 2007).]

Although there may be a rebuttable presumption that a petitioning creditor filed an involuntary petition in good faith, so that the alleged involuntary debtor has the burden of proving bad faith, *In re Bayshore Wire Products Corp*., 209 F .3d 100, 105 (2000), that presumption may be rebutted under the instant facts because a reasonable person, with the facts available to the Petitioning Creditors when the Petitioning Creditors filed the involuntary petition, would not have been justified in filing the petition. Under the facts applicable to this case, the specific motivation of the Petitioning Creditors are relevant.

Bad faith exists in this case where the Petitioning Creditors filed the involuntary petition for an improper purpose - as a litigation tactic to gain an advantage in ongoing litigation or to control the forum of the dispute. See e.g*., In re WLB-RSK Venture*, 296 B.R. 509, 514 (Bankr. C.D. Cal. 2003) (dismissing involuntary petition filed "as part of a forum shopping litigation tactic .... "); *In re Spade*, 269 B.R. 225, 229 (D. Colo. 2001) (dismissing involuntary petition filed as "a self-serving litigation

tactic to control the forum and enlist a trustee to conduct and pay for discovery into the Debtor's affairs.")

Similarly, courts have found bad faith where the petitioners used the involuntary process as a collection action prior to exhausting available state law remedies. *See In the Matter a/Smith,* 243 B.R. 169, 197-98 (Bankr D. Ga. 1999). Furthermore, courts have found bad faith where the petitioners used the involuntary process to obtain a disproportionate advantage over other creditors. *See, e.g. In re Mi La Sul,* 380 B.R. at 557. As put by one bankruptcy court:

An improper use of the Bankruptcy Code justifying a finding of bad faith will then exist any time a creditor uses an involuntary bankruptcy to obtain a disproportionate advantage to that particular creditor's position, rather than to protect against other creditors obtaining such a disproportionate advantage. This is especially true where the petitioning creditor could have obtained that advantage in an alternate forum.

*In re Better Care, Ltd*., 97 B.R. 405,411 (Bankr. .D. Ill. 1989).

Here, Petitioning Creditors did not exhaust their state law collection remedies. There were three pending hearing dates in the Interpleader Action scheduled shortly after the filing of the Petition, one of which was the demurrer to the Petitioning Creditors' First Amended Cross-Complaint which the court already indicated it intended to sustain without leave to amend. Counsel for Petitioning Creditors had asked counsel for TPI in the Interpleader Action to accept service of a new lawsuit shortly before the Petition was filed and when he refused Petitioning Creditors filed the Petition as a substitute for state law collection activity. Counsel for Petitioning Creditors also knew that the debenture provided for jurisdiction and venue in Canada. It is also readily apparent from the declaration submitted by Jack Hennignsen and the Motion that Petitioning Creditors are upset that the Spertus Firm is asserting an attorneys' lien on the funds on deposit with the Los Angeles Superior Court. In fact, this is more about a

dispute between the Spertus Firm and the Petitioning Creditors as to their claimed priority over the TPI Funds that a legitimate bankruptcy filing. Petitioning Creditors want a trustee to do their work for them at the estate's expense. The above facts clearly demonstrate that the Petition was filed for spite, malice, or other improper purpose.

Courts that find bad faith based on two party disputes do so where "it is an apparent two party dispute *that can be resolved outside of the Bankruptcy Court's jurisdiction." Oasis at Wild Horse Ranch, LLC v. Sholes (In re Oasis at Wild Horse Ranch, LLC),* 2011 WL 4502102 at *10, 2011 Bankr.LEXIS 4314 at *29 (9th Cir. BAP Aug. 26, 2011) (emphasis added) (citing *N. Cent. Dev. Co. v. Landmark Capital Co. (In re Landmark Capital Co.),* 27 B.R. 273, 279 (D.Ariz.1983)); and *see St. Paul Self Storage Ltd. P'ship,* 185 B.R. at 583 (debtor's only significant asset was a claim against one creditor set to be tried in state court and bankruptcy court supervision of debtor's liquidation was not necessary to protect other creditors). Typical bad faith two party disputes may involve delays on the eve of trial (litigation tactics), forum shopping, new-debtor syndrome (special purpose entities), repeat filers, and repeatedly delayed foreclosure sales. All such common indicators exist here.

The timing of the Petition coincided with three pending hearings. A demurrer to the Petitioning Creditors First Amended Cross-Complaint (which the court already stated it would sustain without leave to amend), a hearing on TPI's motion for summary judgment, and the trial. This is clearly a matter that can be resolved outside of bankruptcy court as the Petitioning Creditors together with two other debenture holders who did not participate in the settlement are the only unsecured creditors and have been involved in litigation with TPI since early 2022.

This also a crystal-clear example of forum shopping. The debentures and governing subscription agreement provide for exclusive jurisdiction and venue in Canada to resolve disputes between TPI and the debenture holders. The Petitioning Creditors used a false address for TPI to gain access to this court.

Various claims of the parties are set to be tried in state court. Jack Henningsen confirms in his declaration that the Petitioning Creditors wanted to file another lawsuit against TPI. They just did not want to go to Canada so they fabricated an address for TPI and filed this Petition. This is a text book bad faith filing made even more so because since there is a bona fide dispute as to the amount of Petitioning Creditors' claims they do not even meet the statutory requirements,[4] This court should not even consider Petitioning Creditors' motion seriously which should be denied as a matter of course.

The Third Circuit in *In re Forever Green Athletic Fields Inc.* 804 F.3d 328 (3d Cir. 2015 adopted the "totality of the circumstances" standard in determining what constitutes a bad faith filing. That standard requires consideration of numerous factors when determining whether an involuntary petition was filed in bad faith. These factors include whether: {i) the creditors satisfied the statutory requirements for filing an involuntary petition, {ii) the involuntary petition was meritorious, (iii) the creditors conducted a reasonable inquiry into the relevant facts and law that justified the involuntary bankruptcy filing against the debtor, (iv) there was evidence of preferential payments to certain creditors and/or a dissipation of the debtor's assets, (v) the filing was motivated by ill will against, or a desire to harass, the debtor, {vi) the petitioning creditors used the filing to obtain a disproportionate advantage for themselves instead of discouraging other creditors from doing the same, {vii) the filing was used as a tactical advantage in a pending action, (viii) the filing was used as a substitute for customary debt-collection procedures, and (ix) the timing of the filing was suspicious.

These factors weigh heavily in favor of a finding of bad faith. There is a bona fide dispute between the parties evidenced by the lengthy litigation and competing cross-complaints. There was no reasonable inquiry into the relevant facts as the creditors do not even mention TPI's wholly owned

---

[4] In the First Amended Cross-Complaint in the Interpleader Action Petitioning Creditors claim they are owed $1,000,000 yet claim $475,000 in the Petition.

subsidiary and its fixed assets which are a matter of public record in the FTC action. There is absolutely no evidence of preferential payments. Further the Declaration of Jack Henningsen demonstrates the Petition was filed in retaliation against TPI because the Spertus Firm refused to accept service of a new lawsuit against TPI and because the Spertus Firm was asserting a lien on the TPI Funds held by the Los Angeles Superior Court. The closeness of the hearing dates in the Interpleader Action, specifically a demurrer to Petitioning Creditors First Amended Cross-Complaint (which the tentative was to grant without leave to amend) and TPI's motion for summary judgment show that ) the filing was used as a tactical advantage in a pending action, and the timing of the filing was suspicious. Finally, Petitioning Creditors refusal to file its threatened lawsuit and properly serve TPI in Canada, coupled with its use of a false address for TPI in this judicial district, show that the filing was used as a substitute for customary debt-collection procedures and forum shopping to avoid jurisdiction and venue in Canada.

TPI requests this court to take the above factors into consideration and deny the pending Motion.

## 4.4    There is no Automatic Comity Between the United States and Canada so Appointment of an Interim Trustee Would Only Create Waste and Unnecessary Expense.

TPI, with its registered office in British Columbia, is not bound by orders of this court until such time as a foreign representative files the appropriate request with the court in Canada. (Bankruptcy and Insolvency Act ("BIA") section 269**)**.  It is then up to the court in Canada to determine if comity will be permitted and the orders of this court recognized. (BIA Section 272**)** It follows that a Canadian court's recognition of the appointment of an interim trustee in an involuntary bankruptcy case filed against a Canadian company in California, where jurisdiction in California was obtained by Petitioning Creditors based on a knowingly false address of the alleged debtor, is questionable at best.

BIA section 272 provides as follows:

(1) If an order recognizing a foreign proceeding is made, the court may, on application by the foreign representative who applied for the order, if the court is satisfied that it is necessary for the protection of the debtor's property or the interests of a creditor or creditors, make any order that it considers appropriate, including an order

(a) if the foreign proceeding is a foreign non-main proceeding, imposing the prohibitions referred to in paragraphs 271(1)(a) to (c) and specifying the exceptions to those prohibitions, taking subsection 271(3) into account;

(b) respecting the examination of witnesses, the taking of evidence or the delivery of information concerning the debtor's property, affairs, debts, liabilities and obligations;

(c) entrusting the administration or realization of all or part of the debtor's property located in Canada to the foreign representative or to any other person designated by the court; and

(d) appointing a trustee as receiver of all or any part of the debtor's property in Canada, for any term that the court considers appropriate and directing the receiver to do all or any of the following, namely,

(i) to take possession of all or part of the debtor's property specified in the appointment and to exercise the control over the property and over the debtor's business that the court considers appropriate, and

(ii) to take any other action that the court considers appropriate.

Therefore, were a trustee in California to ask the Court in Canada for the orders sought in the Motion and seek recognition of the proceeding in Canada, it would have to apply and would risk the Court in

Canada nominating an alternative administrator or receiver.  While the court in Canada could  adopt the terms of the foreign bankruptcy, they are not bound to do so and the ultimate terms restricting the Canadian company can vary significantly from the terms of the foreign proceeding.  Further to that, the subject company would have an opportunity to resist (absent a creditor proceeding without notice after persuading the Court that it has good reason to do so) and so each order and issue would be the subject of proof and objection.  "Domesticating" the bankruptcy order in Canada would, to a good degree, amount to re-litigation of the bankruptcy.

The existence of comity has its limits. See Hunt v. T & N plc (1992), [1993] 1 W.W.R. 354 (B.C. S.C.) at p. 358 adopting what Robins J. stated in Westinghouse Electric Corp. v. Duquesne Light Co. (1977), 16 O.R. (2d) 273 (Ont. H.C.) at p. 291:

> "It is also fundamental that comity will not be exercised in violation of the public policy of the state to which the appeal [for assistance re comity] is made or at the expense of injustice to its citizens; and comity leaves to the court whose power is invoked the determination of the legality, propriety or rightfulness of its exercise: see generally" 15A Corp. Jur. Sec., pp 391-7; Szaszy, International Civil Procedure (1967), pp 652-3. [Emphasis in original.]

There is no way of predicting what a court in Canada will do if or when a petition is filed in Canada asking the court to recognize and/or enforce this court's orders. What cannot be disputed is that it is not automatic and may require re-litigation of the issues here. By its vary nature re-litigation of the issues costs money and would operate as a financial drain on the estate. Moreover, it is extremely doubtful that any such action could be completed within the gap period. This weighs heavily against appointment of an interim trustee as such appointment will serve no purpose.

**4.5    The Petitioning Creditor's Purported Issues with Management are Irrelevant**

Petitioning Creditors' Motion is all mudslinging and no merit. First, they focus on the FTC Action brought against Jason Cardifff, Eunjung Cardiff and their related entities. As is evident from the complaint filed by the FTC, neither TPI nor Jacques Poujade was a defendant. As to Jason Cardiff and Eunjung Cardiff while they were original directors of TPI they were ousted from TPI over eight months before the Petitioning Creditors entered into the debentures. Jason Cardifff and Eunjung Cardiff have absolutely no involvement or relationship with TPI at this time. The claims raised against them for their activities before the formation of TPI are completely unrelated to TPI. They serve as no basis for the appointment of an interim trustee "to preserve the property of the estate or to prevent loss to the estate."

Petitioning Creditors next focus on Jacques Poujade. TPI acknowledges that Mr. Poujade executed the plea agreement relating to his activities with an unrelated company in 2015-2016. Upon learning of this, TPI promptly moved to remove Mr. Poujade from the board and as an officer of the company. He is neither an officer, director, employee, agent or representative of TPI. TPI's prompt actions demonstrate the strength of its corporate management. No interim trustee is necessary.

Regarding the FTC Action, the evidence establishes that Mr. Poujade's actions in not turning over all assets of TPI to the Receiver were completely justified and designed to protect TPI. The Receiver sought the turnover of all records and assets of TPI under the TRO. Instead of proceeding against TPI itself the Receiver and FTC focused on Jacques Poujade because he was a California resident and board member. Mr. Poujade opposed the turnover of the TPI assets on behalf of TPI and was vindicated by the United States Supreme Court who strongly rebuked the FTC in a unanimous decision. His actions were without question in the best interests of TPI, its shareholders and creditors and irrefutably designed to preserve the assets of the company, in and of itself a compelling reason to deny the appointment of an interim trustee.

Thereafter, through the efforts of Mr. Poujade, TPI negotiated the resolution of over $9,000,000 in unsecured debt through the sale of its wholly owned non-performing limited liability company, Industrial Court L7, LLC. This settlement preserved the assets and value of TPI for all of its shareholders. In contrast, absent the settlement TPI could likely have been liquidated.  This alone weighs heavily against the appointment of a trustee.

Petitioning Creditors' Motion is an exercise in hypocrisy.  The Petitioning Creditors asserted meritless claims to the TPI Funds originally deposited with the Receiver in the FTC Action. As the court indicated in its August 5, 2021 order it intended to return these funds to TPI. It was only after the issuance of that order that Petitioning Creditors asserted false claims to the TPI Funds directly resulting in the Receiver recommending and then filing the Interpleader Action. Petitioning Creditors' actions cost TPI over $400,000 in legal fees and costs and access to needed capital. The pending motion for summary judgment in the Interpleader Action, which Petitioning Creditors are trying so desperately to avoid by the filing of the Petition, would conclusively establish the frivolousness of Petitioning Creditors' claims. It is thus the Petitioning Creditors who have caused a loss to TPI, and who continue to force TPI to spend money in legal fees, which TPI claims as a setoff against any alleged Petitioning Creditors' claims.

## 5.0    IF THIS COURT GRANTS THE MOTION PETITIONING CREDITORS SHOULD BE REQUIRED TO POST A BOND IN THE AMOUNT OF $2,000,000.

Federal Rule of Bankruptcy Procedure section 2001(b) provides that "an interim trustee may not be appointed under this rule unless the movant furnishes a bond in an amount approved by the court, conditioned to indemnify the debtor for costs, attorney's fee, expenses, and damages allowable under §303(i) of the Code."  Bankruptcy Code section 303(i) provides as follows:

"If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment—

**(1)**against the petitioners and in favor of the debtor for—

**(A)** costs; or

**(B)** a reasonable attorney's fee; or

**(2)**against any petitioner that filed the petition in bad faith, for—

**(A)** any damages proximately caused by such filing; or

**(B)** punitive damages."

The evidence demonstrates that TPI has a substantial likelihood of prevailing on its intended motion for dismissal for bad faith. **The Petitioning Creditors used a known false address for TPI, a Canadian company without a place of business in California, to forum shop.** The Petitioning Creditors do not meet the statutory requirements for the filing of an involuntary petition because their claims are clearly disputed as evidenced by the ongoing litigation involving the parties. And this is a two-party dispute where the Petitioning Creditors are using bankruptcy as a substitute for state court action and to avoid the jurisdiction of Canada.

If an interim trustee is appointed, TPI will clearly incur substantial fees and costs, and it already has, in defending against this motion. Additional fees and costs will be incurred in opposing the involuntary case, and defending against any proceedings in Canada to have orders of this court recognized. Further, TPI will pursue punitive damages against the Petitioning Creditors. For these reasons TPI requests that a bond be posted in the amount of at least $2,000,000.

1

2    Dated    August 9, 2023                    LITIGATION AND BUSINESS LAW GROUP INC.

3

4

5                                              *Michael Kinney*

6                                    _____

7                                    Michael W. Kinney, specially appearing for alleged debtor  True

8                                    Pharmastrip, Inc.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28