**LITIGATION AND BUSINESS LAW GROUP, INC.**
 Michael W. Kinney, Esq. (106781)
73-745 El Paseo Drive, Suite 12B
Palm Desert, California 92260
Telephone:  760.341.1100
Email:       mkinney@lblglaw.com

Attorneys Specially Appearing for
True Pharmastrip Inc.

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SANTA ANA DIVISION

|  |  |
|---|---|
| IN RE TRUE PHARMASTRIP INC., A Canadian Corporation | ) Case No. 8:23-bk-11489-SC<br>)<br>)<br>)<br>) **REQUEST FOR JUDICIALNOTICE IN**<br>) **SUPPORT OF TRUE PHARMASTRIP,**<br>) **INC'S  OPPOSITION TO PETITIONING**<br>) **CREDITORS MOTION FOR**<br>) **APPOINTMENT OF AN INTERIM**<br>) **TRUSTEE**<br>)<br>)<br>) **Date:   August 24, 2023**<br>) **Time: 8:30 a.m.**<br>) **Ctrm.**<br>)<br>)<br>)<br>)<br>)<br>) |

———————————————————

        True Pharmastrip Inc. ("TPI") hereby submits the following Request For Judicial Notice in support of its opposition to the Petitioning Creditors motion for appointment of an Interim Trustee. TPI hereby request, pursuant to Rule 201 of the Federal Rules of Evidence, that the Court take judicial notice of the following items:

1. The declaration of Jacques Poujade, filed in *Federal Trade Commission v. Jason Cardiff, et al.*, United States District Court for the Central District of California, Case No. 5:18-cv-02104 (the "FTC Action"). A true and correct coy of the foregoing document is attached hereto as Exhibit 1.

2. Minute Order dated August 5, 2021 filed in the FTC Action. A true and correct coy of the foregoing document is attached hereto as Exhibit 2.

3. Minute Order dated August 26, 2021 filed in the FTC Action. A true and correct coy of the foregoing document is attached hereto as Exhibit 3.

4. Receiver's Final Report filed in the FTC Action. A true and correct coy of the foregoing document is attached hereto as Exhibit 4.

5. Minute Order dated December 2, 2021 filed in the FTC Action. A true and correct coy of the foregoing document is attached hereto as Exhibit 5.

6. Final Judgment filed in the FTC Action. A true and correct coy of the foregoing document is attached hereto as Exhibit 6.

7. Petitioning Creditors' First Amended Cross-Complaint filed in *Robb Evans & Associates LLC v. Redwood Scientific Technologies, Inc., et al., and the related cross-actions*, LASC Case No. 22STCV04546, a pending interpleader action ("Interpleader Action"). A true and correct coy of the foregoing document is attached hereto as Exhibit 7.

8. Tentative on TPI's demurrer to the First Amended Cross-Complaint filed in the Interpleader Action. A true and correct coy of the foregoing document is attached hereto as Exhibit 8.

9. Notice of Ruling on Demurrer filed in the Interpleader Action. A true and correct coy of the foregoing document is attached hereto as Exhibit 9.

10.

Facts subject to judicial notice include those that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). Courts regularly take judicial notice of "undisputed matters of public record, including documents on file in federal or state courts." *Harris v. Cty. of Orange*, 682 F.3d 1126, 1131-

32 (9th Cir. 2012) (internal citations omitted); *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001); *Kurtz v. Intelius, Inc*., 2011 U.S.Dist.LEXIS 101922, *3-*4 (E.D.Cal. Sept. 9, 2011). Exhibits 1 through 6 are court records from the FTC Action. Items 7 through 9 are court documents from the Interpleader Action.

Information made publicly available by government entities, including data, is also subject to judicial notice. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010); *Teixeira v. Cty. of Alameda*, 873 F.3d 670, 676 n.6 (9th Cir. 2017).

Dated August 9, 2023                          LITIGATION AND BUSINESS LAW GROUP, INC.

_Michael Kinney_
_____

Michael W. Kinney, specially appearing for alleged debtor
True Pharmastrip, Inc.

# EXHIBIT 7

1 | Jack L. Henningsen (SBN 200062)
jhenningsen@thwvlaw.com
2 | TURNER HENNINGSEN WOLF & VANDENBURG, LLP
8383 Wilshire Boulevard, Suite 935
3 | Beverly Hills, California 90211
Tel: 323-653-3900
4 | Fax: 323-653-3021

Electronically FILED by
Superior Court of California,
County of Los Angeles
5/01/2023 5:48 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By V. Delgadillo, Deputy Clerk

5 | Attorneys for Cross-Complainants
RICKY   LYONS;   GORDON   SMITH;   ROBERT
6 | CHAIKIN;
BMPD TEXAS PARTNERS, LP and LEJOS
7 | INVESTMENTS

8

### SUPERIOR COURT OF THE STATE OF CALIFORNIA

9

### FOR THE COUNTY OF LOS ANGELES

10

| | |
|---|---|
| 11  ROBB EVANS & ASSOCIATES LLC., a California limited liability company, acting 12  solely in its capacity as a duly appointed Receiver, 13 | Case No.: 22STCV04546 *Assigned for All Purposes to:* Hon. Barbara M. Scheper, Dept. 30 |
| Plaintiff-In-Interpleader, 14  vs. 15  REDWOOD SCIENTIFIC TECHNOLOGIES, 16  INC., a California corporation, et. al. | **CROSS-COMPLAINT OF LEJOS INVESTMENTS, LLC; GORDON SMITH; RICKY LYONS; ROBERT CHAIKIN AND BPMD TEXAS PARTNERS, LP** |
| 17  Defendants. TRUE PHARMASTRIP INC., a Canadian 18  corporation, | Compl. Filed:        February 4, 2022 Cross-Compl. Filed:   April 15, 2022 |
| 19  Cross-Complainants, 20  vs. 21  MERCHANTS FINANCIAL GUARDIAN, INC., a California corporation; EXTREME 22  REACH, INC., a Delaware corporation; AMERICAN EXPRESS NATIONAL BANK, 23  a Utah corporation; Amy Cardiff, an individual; VPL MEDICAL, INC., a 24  California Corporation; and ROES 1-100, 25  Cross-Defendants. | |

26

27 | ///

28 | ///

1

Cross-Complainants BMPD Texas Partners, LP, Robert Chaikin, Ricky Lyons, Gordon Smith, and Lejos Investments, LLC (hereinafter "THE DEBENTURE HOLDERS") plead the following facts in support of their Cross-Complaint:

1.      On or about June 12, 2019, the DEBENTURE HOLDERS (identified individually below) pursuant to Subscription Agreements accepted by True Pharmastrip, Inc. ("TPI") whereby the DEBENTURE HOLDERS agreed to provide loans to TPI in return for issuance of various debentures that documented TPI's promise to repay said loans on terms consistent with the various debentures.  The DEBENTURE HOLDERS consist of the following persons and entities who assert claims herein:

a.      BMPD TEXAS PARTNERS LP, a Texas limited partnership ("BMPD");

b.      ROBERT CHAIKIN, an individual ("CHAIKIN").

c.      RICKY LYONS, an individual ("LYONS");

d.      GORDON SMITH, an individual ("SMITH"); and

e.      LEJOS Investments LLC ("Lejos")

2.      Each Debenture issued to the aforementioned DEBENTURE HOLDERS (subparagraphs a to e) to secure TPI's promise to repay the debt owed was materially identical except for the amount of the money invested by the individual Debenture Holder, as identified below, the issuance date and the corresponding maturity date, which was due two years after the issuance date, per the following:

a.      BPMD: $200,000, Issuance date July 31, 2019

b.      Chaikin: $50,000, Issuance date July 31, 2019

c.      Lyons: $25,000, Issuance date July 31, 2019

d.      Smith: $50,000, Issuance date July 31, 2019

e.      Lejos Investments: $150,000, Issuance date June 12, 2019

3.      Each Debenture bore an interest rate of 8% and was an unsecured Senior Convertible Redeemable Debenture.  Under Terms of Repayment each of the aforementioned Debentures provided the following: "The Company, . . . [incorporated under the laws of the Province of British Columbia, for value received hereby acknowledges itself indebted for the

1   above mentioned principal sum and promises to pay to or to the order of the Lender . . . "interest

2   at a rate of 8% per annum, calculated in the U.S. dollars" and provided that the principal sum

3   would be "payable in full on the Maturity Date."

4         4.     Each Debenture was signed by Jacques Poujade, the Chief Executive officer of

5   TPI, a duly authorized signatory with respect to the corporation TPI and authorized to commit TPI

6   to its legal obligations.

7         5.     TPI defaulted on its repayment obligations under each Debenture by failing to

8   make any of the required interest or principal repayments.   On or about June 25, 2021, attorney

9   Gregory Harris, Harris + Harris LLP, solicitors for each of the Debenture Holders wrote to the

10   CEO of True Pharmastrip Inc. to give notice of the Default and to demand that TPI acknowledge

11   and cure the default (and the anticipated default with regard to the second tranche of Debentures).

12   Mr. Harris on  behalf of all Debenture Holders stated the following:

13          "We have been engaged by Bill Esping (on behalf of JEK

14          SEP/Property, LP and WPE Kids Partners LP) and Marc Graubart

15          (on behalf of BPMD Texas Partners LP). They are holders of

16          convertible debentures issued pursuant to a form of subscription

17          Agreement dated March 20, 2019 (the "Subscription Agreement").

18          The debentures issued to Mr. Esping, copies of which are annexed

19          hereto as Schedule "A" to this correspondence (the "Debentures")

20          had a maturity date of June 11, 2021 and were not repaid as

21          scheduled. The debenture issued to Mr. Graubart has a maturity

22          date in July and are is [sic] [not] . . . technically in default; although

23          we suspect that such debenture will not be repaid on its scheduled

24          maturity. Attached to this correspondence as Schedule "B" is a copy

25          of the formal notice of default issued by the debenture holders and

26          delivered in accordance with the notice provisions in the

27          Debentures." (See Exhibits A & B hereto, Debenture issued to

28          Esping, aka WPE KIDS PARTNERS LP and "B" Letter to TPI

1     dated June 25 ,2021 giving notice of default).

2         6.    TPI subsequently defaulted on its repayment obligations with respect to all the

3   Debenture Holders, including those in Tranche II, and has never offered, promised or indicated

4   how its default might be cured.  Each default as described herein has not been cured or remediated

5   by TPI which entails under Section 5 of each Debenture (detailing events of "Default") that the

6   "Lender" may at its option, demand immediate payment of the entire outstand Principal Amount

7   of the Debenture and all due and accrued interest."  Each of the DEBENTURE HOLDERS, as

8   "Lenders" have made that demand on TPI which remains unsatisfied.

9         7.    Each "Lender" or DEBENTURE HOLDER has demanded full payment

10  of the Principal Amount and accrued interest, which demands TPI has failed to

11  satisfy.

12                    **PRAYER FOR RELIEF**

13      WHEREFORE, DEBENTURE HOLDERS respectfully pray for judgment as

14  follows:

15        1.    That DEBENTURE HOLDERS be awarded $1,000,000 from the Interpleader

16  Funds as Senior debt holders on TPI's default obligations.

17        2.    That the Court issue declaratory relief that $1,000,0000 from the Interpleader funds

18  are, in fact, rightfully the property of the DEBENTURE HOLDERS;

19        3.    That DEBENTURE HOLDERS be awarded its costs incurred in this action;

20        4.    That no costs or fees be awarded to Plaintiff in this action; and

21        5.    For such other and further legal or equitable relief as the Court deems just and

22  proper.

23  Dated:  May 1, 2023          TURNER HENNINGSEN WOLF & VANDENBURG, LLP

24

25                       By:    /s/ Jack L. Henningsen
                         JACK L. HENNINGSEN
                         Attorneys for Cross-Complainants,

26                       RICKY LYONS; GORDON SMITH; ROBERT
                         CHAIKIN; BPMD TEXAS PARTNERS, LP; and

27                       LEJOS INVESTMENTS, LLC

28

THE SECURITIES REPRESENTED HEREBY HAVE NOT BEEN REGISTERED UNDER THE UNITED STATES
SECURITIES ACT OF 1933, AS AMENDED (THE "U.S. SECURITIES ACT") OR ANY STATE SECURITIES LAWS.
THE HOLDER HEREOF, BY PURCHASING SUCH SECURITIES, AGREES FOR THE BENEFIT OF THE ISSUER
THAT SUCH SECURITIES MAY BE OFFERED, SOLD, PLEDGED OR OTHERWISE TRANSFERRED, DIRECTLY
OR INDIRECTLY, ONLY (A) TO THE ISSUER, (B) OUTSIDE THE UNITED STATES PURSUANT TO RULE 904
OF REGULATION S UNDER THE U.S. SECURITIES ACT AND IN ACCORDANCE WITH APPLICABLE LOCAL
LAWS, AND REGULATONS, (C) PURSUANT TO THE EXEMPTIONS FROM REGISTRATION UNDER THE U.S.
SECURITIES ACT PROVIDED BY RULE 144 OR RULE 144A THEREUNDER, IF AVAILABLE, AND IN
ACCORDANCE WITH APPLICABLE STATE SECURITIES LAWS, OR (D) PURSUANT TO ANOTHER
APPLICABLE EXEMPTION UNDER THE U.S. SECURITIES ACT AND ANY APPLICABLE STATE SECURITIES
LAWS, AFTER, IN THE CASE OF TRANSFERS PURSUANT TO CLAUSE (C) OR (D), PROVIDING TO THE
COMPANY A LEGAL OPINION OR OTHER EVIDENCE IN FORM AND SUBSTANCE REASONABLY
SATISFACTORY TO THE ISSUER, TO THE EFFECT THAT SUCH TRANSFER DOES NOT REQUIRE
REGISTRATION UNDER THE U.S. SECURITIES ACT. DELIVERY OF THIS CERTIFICATE MAY NOT
CONSTITUTE GOOD DELIVERY IN SETTLEMENT OF TRANSACTIONS ON STOCK EXCHANGES IN
CANADA.

# TRUE PHARMASTRIP INC.

## 8.0% UNSECURED SENIOR CONVERTIBLE REDEEMABLE DEBENTURE

**2019 CB#030**

| | |
|---|---|
| Date: | June 12, 2019 |
| Principal Amount: | US $2,150,000 (the "**Principal Amount**") |
| Maturity Date: | June 11, 2021 |
| Lender: | **WPE KIDS PARTNERS LP** (the "**Lender**") |
| Lender's Address: | 500 N. Akard Street, Suite 1500, Dallas, Texas 75201 |

Pursuant to the Subscription Agreement accepted by True Pharmastrip Inc. (the "**Company**") on June 12th, 2019 between the Company and WPE Kids Partners LP (the "**Subscription Agreement**"), the Company hereby issues this 8.0% Unsecured Senior Convertible Redeemable Debenture in the principal aggregate amount of US $2,150,000 (the "**Debenture**") to the Lender.

1.    **TERMS OF REPAYMENT**

The Company, a corporation incorporated under the laws of the Province of British Columbia, for value received hereby acknowledges itself indebted for the above mentioned principal sum and promises to pay to or to the order of the Lender as follows:

i)    interest at a rate of 8.0% per annum, calculated in United States dollars, payable semi-annually in arrears on June 30 and December 31 of each year, commencing December 31, 2019;

ii)    interest shall be paid in the form of common shares ("Shares") of the Company at an issue price of CAN$1.00 per Share; and

iii)    principal payable in full on the Maturity Date.

EXHIBIT A

- 2 -

Payment of both the Principal Amount and accrued interest thereon shall be made at the Lender's address, set out above, or at such other place in British Columbia as the Lender may designate in writing to the Company.

The Company waives presentment for payment, demand, or notice of non-payment of this Debenture in collection, and consents to all extensions of time, renewals, waivers or modifications that may be granted by the holder with respect to the payment or any other provision of this Debenture.

**See Section 3 below, "Exchange Rate" regarding currency conversions.**

2.    **CONVERSION**

(a)    **Conversion Privilege and Conversion Price**

Upon and subject to the provisions and conditions of this section, the holder of this Debenture shall have the right, at his option, to convert, at any time and from time to time up to the close of business on the Maturity Date (the **"Expiry Time"**), up to the entire Principal Amount of this Debenture, into Shares of the Company, at a conversion price of CDN$1.00 per Share (the **"Conversion Price"**). No fractional Shares will be issued.

**See Section 3 below, "Exchange Rate" regarding currency conversions.**

The number of Shares issuable to the holder of this Debenture hereunder shall be equal to the aggregate Principal Amount being converted divided by the Conversion Price. Such right of conversion shall extend only to the maximum number of Shares into which the aggregate principal amount of this Debenture surrendered for conversion may be converted into Shares at the time of such conversion. No fractional Shares will be issued.

(b)    **Registration; Book-Entry**

The Company shall maintain a register (the **"Register"**) for the recordation of the names and addresses of the holders of each Debenture and the Principal amount of the Debentures (and stated interest thereon) held by such holders (the **"Registered Debentures"**). The entries in the Register, made in good faith, shall be conclusive and binding for all purposes absent manifest error. The Company and the holders of the Debentures shall treat each Person whose name is recorded in the Register as the owner of a Debenture for all purposes, including, without limitation, the right to receive payments of Principal and Interest, if any, hereunder, notwithstanding notice to the contrary. A Registered Debenture may be assigned or sold in whole or in part only by registration of such assignment or sale on the Register. Upon its receipt of a request to assign or sell all or part of any Registered Debentures by the Lender, the Company shall record the information contained therein in the Register and issue one or more new Registered Debentures in the same aggregate Principal amount as the Principal amount of the surrendered Registered Debenture to the designated assignee or transferee pursuant to **Section 6**. Notwithstanding anything to the contrary in this Section 2(b), the Lender may assign any Debenture or any portion thereof to an Affiliate (as such term is defined in the *Business Corporations Act* (British Columbia)) of such Lender without delivering a request to assign or sell such Debenture to the Company and the recordation of such assignment or sale in the Register (a **"Related Party Assignment"**); provided, that (x)

EXHIBIT A

- 3 -

the Company may continue to deal solely with such assigning or selling Lender unless and until such Lender has delivered a request to assign or sell such Debenture or portion thereof to the Company for recordation in the Register; (y) the failure of such assigning or selling Lender to deliver a request to assign or sell such Debenture or portion thereof to the Company shall not affect the legality, validity, or binding effect of such assignment or sale and (z) such assigning or selling Lender shall, acting solely for this purpose as a non-fiduciary agent of the Company, maintain a register (the "**Related Party Register**") comparable to the Register on behalf of the Company, and any such assignment or sale shall be effective upon recordation of such assignment or sale in the Related Party Register. Notwithstanding anything to the contrary set forth herein, upon conversion of any portion of this Debenture in accordance with the terms hereof, the Lender shall not be required to physically surrender this Debenture to the Company unless (A) the full Conversion Amount represented by this Debenture is being converted or (B) the Lender has provided the Company with prior written notice (which notice may be included in a *Conversion Notice*) requesting reissuance of this Debenture upon physical surrender of this Debenture. The Lender and the Company shall maintain records showing the Principal and Interest, converted and the dates of such conversions or shall use such other method, reasonably satisfactory to the Lender and the Company, so as not to require physical surrender of this Debenture upon conversion.

(c)     Conversion Procedure

The holder of this Debenture desiring to convert such Debenture shall provide the Company with a Notice of Conversion, in the form attached hereto as Schedule "A", duly executed by the registered holder or his legal representatives or his attorney duly appointed by an instrument in writing in form and execution satisfactory to the Company exercising his right to convert this Debenture in accordance with the provisions of this Section. The Lender shall also specify the name or names, with addresses in which the certificate or certificates representing the Shares issuable upon conversion shall be registered. Thereupon the Lender or his nominee or assignee shall be entitled to be entered in the books of the Company as at the date of conversion (being the date upon which the Company receives a Notice of Conversion) as the holder of that number of Shares into which this Debenture is convertible in accordance with the provisions of this Section and, as soon as practicable thereafter, the Company shall deliver to the holder, or his nominee or assignee, certificates for such Shares, but in any event, within three (3) business days of receipt of the notice of conversion. If the Company fails to transmit to the Lender the Shares within 3 Business Days of receipt of the notice of conversion, then the Lender will have the right to rescind such conversion. The Company shall be responsible for any and all taxes that may be payable with respect to the issuance or delivery of the Shares; provided, however, that the Lender shall not be obligated to pay any transfer taxes resulting from any transfer requested by any Lender in connection with any such conversion. No fractional Shares or scrip representing fractional Shares shall be issued upon the conversion of this Debenture. As to any fraction of a Share which the Lender would otherwise be entitled to purchase upon such conversion, the Company shall, at its election, either pay a cash adjustment in respect of such final fraction in an amount equal to such fraction multiplied by the Conversion Price or round up to the next whole Unit. The Company covenants and agrees to indemnify the Lender for any losses it suffers, directly or indirectly, as a result of the Lender failing to provide the certificates as stipulated in this Section 2(c). Partial exercises of this Debenture resulting in purchases of a portion of the total number of Shares available hereunder shall have the effect of lowering the outstanding number of Shares purchasable hereunder in an amount equal to

**EXHIBIT A**

- 4 -

the applicable number of Shares purchased. If this Debenture shall have been exercised in part, the Company shall, at the request of a Lender and upon surrender of this Debenture, at the time of delivery of the Shares, deliver to the Lender a new Debenture evidencing the rights of the Lender to purchase the unpurchased Shares called for by this Debenture, which new Debenture shall in all other respects be identical with this Debenture. The Lender and the Company shall maintain records showing the number of Shares purchased and the date of such purchases. The Company shall deliver any objection to any notice of conversion within one (1) Business Day of receipt of such notice. **The Lender and any assignee, by acceptance of this Debenture, acknowledge and agree that, by reason of the provisions of this paragraph, following the purchase of a portion of the Shares hereunder, the number of Shares available for purchase hereunder at any given time may be less than the amount stated on the face hereof.**

(d)     **Adjustments**

   (i)     **Stock Dividends and Splits.** Subject to subsection (ii) below, the Conversion Price shall be subject to adjustment from time to time in the events and in the manner provided in this section.

      (A)     If and whenever at any time after the date hereof and prior to the Expiry Time the Company shall:

         (1)     issue common shares or otherwise makes a distribution or distributions on its Shares (as defined in the Subscription Agreement) or any other equity or equity equivalent securities payable in Shares (which, for avoidance of doubt, shall not include any Shares issued by the Company upon conversion of this Debenture) to all or substantially all the holders of the Shares as a stock dividend;

         (2)     subdivide its outstanding common shares into a greater number of shares;

         (3)     consolidate (including by way of reverse stock split) its outstanding common shares into a smaller number of shares: or

         (4)     issues by reclassification any Shares of the Company,

         (any of such events in (1), (2) (3) and (4) being called a "**Common Share Reorganization**"), then the Conversion Price shall be adjusted, effective immediately after the record date at which the holders of Shares are determined for the purpose of the Common Share Reorganization, by multiplying the Conversion Price in effect immediately prior to such record date by a fraction, the numerator of which shall be the number of common shares outstanding on such record date before giving effect to such Common Share Reorganization and the denominator of which shall be the number of Common Shares (excluding treasury shares, if any) outstanding immediately after giving effect to such Common Share Reorganization (including, in the case where securities exchangeable for or convertible into common shares are distributed, the number of common shares that would have been outstanding had all such securities

**EXHIBIT A**

- 5 -

been exchanged for or converted into common shares on such record date), and the number of Shares issuable upon conversion of this Debenture shall be proportionately adjusted such that the aggregate Conversion Price of this Debenture shall remain unchanged.

(B)     **Subsequent Rights Offerings.** In addition to any adjustments pursuant to Section 2(c)(i) above, if and whenever at any time after the date hereof and prior to the Maturity Date the Company shall fix a record date for the issuance of rights, options, warrants, securities or other property to all or substantially all of the holders of any class of securities under which such holders are entitled to acquire common shares or securities ("Purchase Rights"), then the Lender will be entitled to acquire, upon the terms applicable to such Purchase Rights, the aggregate Purchase Rights which the Lender could have acquired if the Lender had held the number of Shares acquirable upon complete conversion of this Debenture immediately before the date on which a record is taken for the grant, issuance or sale of such Purchase Rights, or, if no such record is taken, the date as of which the record holders of Common Shares are to be determined for the grant, issue or sale of such Purchase Rights.

(C)     **Pro Rata Distributions.** During such time as this Debenture is outstanding, if the Company (or any successor corporation), as applicable, shall declare or make any dividend or other distribution of its assets (or rights to acquire its assets) to holders of Shares, by way of return of capital or otherwise (including, without limitation, any distribution of cash, stock or other securities, property or options by way of a dividend, spin off, reclassification, corporate rearrangement, scheme of arrangement or other similar transaction) (a **"Distribution"**), at any time after the issuance of this Debenture, then, in each such case, the Lender shall be entitled to participate in such Distribution to the same extent that the Lender would have participated therein if the Lender had held the number of Shares acquirable upon complete conversion of this Debenture immediately before the date of which a record is taken for such Distribution, or, if no such record is taken, the date as of which the record holders of Shares are to be determined for the participation in such Distribution.

(D)     **Fundamental Transaction.** If, at any time while this Debenture is outstanding, (i) the Company, directly or indirectly, in one or more related transactions effects any merger or consolidation of the Company with or into another Person, (ii) the Company, directly or indirectly, effects any sale, lease, license, assignment, transfer, conveyance or other disposition of all or substantially all of its assets in one or a series of related transactions, (iii) any, direct or indirect, purchase offer, tender offer or exchange offer (whether by the Company or another Person) is completed pursuant to which holders of Shares are permitted to sell, tender or exchange their Shares for other securities, cash or property and has been accepted by the holders of 50% or more of the outstanding Shares (iv) the Company, directly or indirectly, in one or more related transactions effects any reclassification, reorganization or recapitalization of the Shares or any compulsory share exchange

EXHIBIT A

- 6 -

pursuant to which the Shares are effectively converted into or exchanged for other securities, cash or property, or (v) the Company, directly or indirectly, in one or more related transactions consummates a securities purchase agreement or other business combination (including, without limitation, a reorganization, recapitalization, spin-off or scheme of arrangement) with another Person or group of Persons whereby such other Person or group acquires more than 50% of the outstanding Shares (not including any Shares held by the other Person or other Persons making or party to, or associated or affiliated with the other Persons making or party to, such stock or share purchase agreement or other business combination) (each a "**Fundamental Transaction**"), then, upon any subsequent conversion of this Debenture, the Lender shall have the right to receive, for each Share that would have been issuable upon such exercise immediately prior to the occurrence of such Fundamental Transaction, at the option of the Lender, the number of Shares of the successor or acquiring corporation or of the Company, if it is the surviving corporation, and any additional consideration (the "**Alternate Consideration**") receivable as a result of such Fundamental Transaction by a holder of the number of Shares for which this Debenture is convertible immediately prior to such Fundamental Transaction. For purposes of any such conversion, the determination of the Conversion Price shall be appropriately adjusted to apply to such Alternate Consideration based on the amount of Alternate Consideration issuable in respect of one Share in such Fundamental Transaction, and the Company shall apportion the Conversion Price among the Alternate Consideration in a reasonable manner reflecting the relative value of any different components of the Alternate Consideration. If holders of Shares are given any choice as to the securities, cash or property to be received in a Fundamental Transaction, then the Lender shall be given the same choice as to the Alternate Consideration it receives upon any conversion of this Debenture following such Fundamental Transaction. The Company shall cause any successor entity in a Fundamental Transaction in which the Company (or any successor corporation), as applicable, is not the survivor (the "**Successor Entity**") to assume in writing all of the obligations of the Company under this Debenture in accordance with the provisions of this Section 2(D). At the option of the Successor Entity, it may deliver to the Lender in exchange for this Debenture a security of the Successor Entity evidenced by a written instrument substantially similar in form and substance to this Debenture which is convertible for a corresponding number of Shares, as applicable, of such Successor Entity (or its parent entity) equivalent to the Shares acquirable and receivable upon conversion of this Debenture prior to such Fundamental Transaction, and with a conversion price which applies the Conversion Price hereunder to such Shares (but taking into account the relative value of the Shares pursuant to such Fundamental Transaction and the value of such Shares, such number of Shares and such conversion price being for the purpose of protecting the economic value of this Debenture immediately prior to the consummation of such Fundamental Transaction). Upon the occurrence of any such Fundamental Transaction, the Successor Entity shall succeed to, and be substituted for (so that from and after the date of such Fundamental Transaction, the provisions of this

**EXHIBIT A**

- 7 -

Debenture referring to the "Company" shall refer instead to the Successor Entity), and may exercise every right and power of the Company, and shall assume all of the obligations of the Company under this Debenture with the same effect as if such Successor Entity had been named as the Company herein. **"Person"** means any individual, partnership, joint venture, firm, corporation, association, limited liability company, trust or other enterprise or any governmental or political subdivision or any agency, department or instrumentality thereof.

(ii)     Rules for Calculating Adjustments (For the purpose of subsection (i)):

(A)     The adjustments provided for in subsection (i) are cumulative and such adjustments shall be made successively whenever an event referred to therein shall occur, subject to the following subsections of this subsection (ii).

(B)     No adjustment in the Conversion Price shall be required unless such adjustment would result in a change of at least 1% in the prevailing Conversion Price, provided, however, that any adjustments which, except for the provisions of this subsection (ii)(B), would otherwise have been required to be made shall be carried forward and taken into account in any subsequent adjustment.

(C)     If a dispute shall at any time arise with respect to adjustments provided for in subsection (i), such dispute shall be determined by the Company's auditors, or if they are unable or unwilling to act, by such other firm of independent chartered accountants as may be selected by the directors and any such determination shall be final and conclusive and binding upon the Company and the holder.

(D)     If the Company shall set a record date to determine the holders of the common shares for the purpose of entitling them to receive any dividend or distribution or any subscription or purchase rights and shall, thereafter and before the distribution to such shareholders of any such dividend, distribution or subscription or purchase rights, legally abandon its plan to pay or deliver such dividend, distribution or subscription or purchase rights, then no adjustment in the Conversion Price or the number of Shares issuable upon conversion of the Debenture shall be required by reason of the setting of such record date.

(E)     In the absence of resolution of the directors fixing a record date for a Common Share Reorganization, Capital Reorganization, Rights Offering or Special Distribution, the Company shall be deemed to have fixed as the record date therefor the date on which the Common Share Reorganization, Capital Reorganization, Rights Offering or Special Distribution is effected.

(F)     As a condition precedent to the taking of any action which would require any adjustment in any of the conversion rights pursuant to the Debenture, including the Conversion Price and the number or class of shares or other securities which are to be received upon the conversion thereof, the

**EXHIBIT A**

- 8 -

Company shall take any corporate action which may, in the opinion of counsel, be necessary in order that the Company have unissued and reserved in its authorized share capital and may validly and legally issue as fully paid and non-assessable all the shares or other securities which the holder is entitled to receive on the total conversion thereof in accordance with the provisions thereof.

(G)    If, in the opinion of the board of directors, the provisions of subsection (i) are not strictly applicable, or if strictly applicable would not fairly protect the rights of the holder in accordance with the intent and purposes hereof, the board of directors shall make any adjustment in such provisions for the benefit of the holder as the board of directors deems appropriate.

(H)    If at any time a question or dispute arises with respect to adjustments provided for in subsection 2(C)(i) such question or dispute will be conclusively determined by the auditor of the Company or, if they are unable or unwilling to act, by such other firm of chartered accountants as may be selected by action of directors of the Company and any such determination, subject to regulatory approval and absent manifest error, will be binding upon the Company and the Borrower. The Company will provide such auditor or chartered accountant with access to all necessary records of the Company.

(iii)    Whenever the number or class of shares or other securities which are to be received upon the conversion of this Debenture or the Conversion Price shall require an adjustment pursuant to subsection (ii), the Company shall forthwith obtain a certificate signed by a senior officer of the Company, setting forth in reasonable detail, the event requiring the adjustment and the method by which such adjustment was calculated (including an opinion on the fair value, as determined by the board of directors of the Company, of any evidences of indebtedness, shares of stock, other securities or property or warrants, options or other subscription or purchase rights referred to in subsection (ii)) and specifying the number or class of shares or other securities which are to be received upon the conversion hereof and describing the numbers and kind of any other securities issuable upon conversion of this Debenture, and any change in the Conversion Price thereof, after giving effect to such adjustment or change. The Company shall promptly, and in any case within 30 days after the making of such adjustment, cause a signed copy of such certificate to be delivered to the Lender. The Company shall keep at its office or agency copies of all such certificates and cause the same to be available for inspection upon receipt of reasonable notice at said office during normal business hours by the Lender.

(iv)    If (A) the Company shall declare a dividend (or any other distribution in whatever form) on its common shares, (B) the Company shall declare a special nonrecurring cash dividend on or a redemption of its common shares, (C) the Company shall authorize the granting to all holders of its common shares rights or warrants to subscribe for or purchase any shares of capital stock of any class or of any rights, (D) the approval of any stockholders of the Company shall be required in connection with any reclassification of its common shares, any consolidation or merger to which the Company is a party, any sale or transfer of

EXHIBIT A

- 9 -

all or substantially all of the assets of the Company, or any compulsory share exchange whereby the Common Stock is converted into other securities, cash or property, or (E) the Company shall authorize the voluntary or involuntary dissolution, liquidation or winding up of the affairs of the Company, then, in each case, the Company shall cause to be delivered by facsimile or email to the Lender at its last facsimile number or email address as it shall appear upon the Register of the Company, at least 20 calendar days prior to the applicable record or effective date hereinafter specified, a notice stating (x) the date on which a record is to be taken for the purpose of such dividend, distribution, redemption, rights or warrants, or if a record is not to be taken, the date as of which the holders of its common shares of record are to be entitled to such dividend, distributions, redemption, rights or warrants are to be determined or (y) the date on which such reclassification, consolidation, merger, sale, transfer or share exchange is expected to become effective or close, and the date as of which it is expected that holders of its common shares of record shall be entitled to exchange their common shares for securities, cash or other property deliverable upon such reclassification, consolidation, merger, sale, transfer or share exchange; provided that the failure to deliver such notice or any defect therein or in the delivery thereof shall not affect the validity of the corporate action required to be specified in such notice.  The Lender shall remain entitled to convert this Debenture during the period commencing on the date of such notice to the effective date of the event triggering such notice except as may otherwise be expressly set forth herein.

(d)     **Reservation of Securities**

The Company covenants and agrees that, so long as any part of the Principal Amount or interest under this Debenture is outstanding and entitled to the right of conversion herein provided, it will at all times ensure that all of the Shares upon a Conversion and Shares issuable in lieu of interest payable on this Debenture, have been duly created, reserved, allotted for issuance and authorized for issuance, so as to enable all of such outstanding Principal Amount of the Debenture to be converted into Shares upon the basis and upon the terms and conditions herein provided in this section 2, and that upon being issued, all such securities will be validly issued as fully paid and non-assessable securities in the capital of the Company.

(e)     **Regulatory Approvals and Filing in Connection with Conversion**

If any Shares of the Company allotted or to be allotted for the purpose of conversion of this Debenture require registration with or approval of any governmental or other authority under any laws of Canada or a province of Canada before such securities may be validly issued upon conversion and traded on any stock exchange on which the common shares are then listed and posted for trading, the Company will take such action as may be necessary to secure such registration or approval, as the case may be.

3.     **EXCHANGE RATE**

The exchange rate for the purpose of converting this Debenture into Shares or the payment of interest in Shares shall be fixed at $1.330 Canadian dollars for one (1) United States. By way of illustration, a US$1,000 Debenture shall have an equivalent Canadian dollar value of $1,330 and be convertible into 1,330 Shares. Alternatively, an interest payment of US$60 dollars shall have

EXHIBIT A

- 10 -

an equivalent Canadian dollar value of $79.80 pursuant to which 79 Shares are issuable. No fractional Shares will be issued.

**4.**      **REDEMPTION**

Subject to the provisions of this Section, if at any time after the date that is the later of (i) four months from the issuance date of the Debenture or (ii) the date the Company becomes a reporting issuer under applicable Canadian securities legislation, the VWAP for each of any 10 consecutive Trading Days (such period the "Threshold Period"), exceeds CDN$1.50 (subject to adjustment for reverse and forward stock splits, stock dividends, stock combinations and other similar transactions of the Common Stock that occur after the original issue date), the Company may, within 1 Trading Day after the end of any such Threshold Period, deliver a written notice to the Lender (an "Optional Redemption Notice" and the date such notice is deemed delivered hereunder, the "Optional Redemption Notice Date") of its irrevocable election to redeem all (and not less than all) of the then outstanding principal amount of this Debenture for cash in an amount equal to principal amount of the Debenture plus any accrued interest on the 20th Trading Day following the Optional Redemption Notice Date (such date, the "Optional Redemption Date", such 10 Trading Day period, the "Optional Redemption Period" and such redemption, the "Optional Redemption"). The Optional Redemption Amount is payable in full on the Optional Redemption Date. The Company covenants and agrees that it will honor all Notices of Conversion tendered from the time of delivery of the Optional Redemption Notice through the date all amounts owing thereon are due and paid in full. The Company's determination to pay an Optional Redemption in cash shall be applied ratably to all of the holders of the then outstanding Debentures based on their (or their predecessor's) initial purchases of Debentures. If any portion of the payment pursuant to an Optional Redemption shall not be paid by the Company by the applicable due date, interest shall accrue thereon at an interest rate equal to the lesser of 18% per annum or the maximum rate permitted by applicable law until such amount is paid in full. Notwithstanding anything herein contained to the contrary, if any portion of the Optional Redemption Amount remains unpaid after such date, the Lender may elect, by written notice to the Company given at any time thereafter, to invalidate such Optional Redemption, *ab initio*, and, the Company shall have no further right to exercise such Optional Redemption. Notwithstanding anything to the contrary in this Section, the Company's determination to redeem in cash shall be applied ratably among the Lenders. The Lender may elect to convert the outstanding principal amount of the Debenture prior to actual payment in cash for any redemption under this Section by the delivery of a Notice of Conversion to the Company in accordance with section 2(c) above.

**5.**      **DEFAULT**

If any of the following events shall occur and be continuing unremedied for a period of thirty (30) days (an "**Event of Default**"), the Lender may, at its option, demand immediate payment of the entire outstanding Principal Amount of this Debenture and all due and accrued interest thereon, and all other indebtedness of the Company to the Lender hereunder or otherwise shall thereupon become immediately due and payable, namely:

(a)      the non-payment when due (whether at stated maturity, upon acceleration, upon required prepayment or otherwise) of any amounts owing to the Lender under this Debenture and such non-payment continues for five (5) Business Days;

(b)      the Company becomes insolvent, or generally does not pay its debts as they become due, or admits in writing its inability to pay its debts, or makes a general assignment for the benefit of creditors;

EXHIBIT A

- 11 -

(c)     the Company initiates proceedings under the *Companies' Creditors Arrangement Act*;

(d)     insolvency, receivership or bankruptcy proceedings are commenced against the Company;

(e)     Upon a **"Change in Control"** of the Company, meaning: (i) an acquisition of any voting securities of the Company (the **"Voting Securities"**) by any "person" (as the term "person" is used for purposes of Section 13(d) or Section 14(d) of the Securities Exchange Act of 1934, as amended (the **"Exchange Act"**), immediately after which such person has "beneficial ownership" (within the meaning of Rule 13d-3 promulgated under the Exchange Act) of 50% or more of the combined voting power of the Company's then outstanding Voting Securities without the approval of the Company's Board of Directors (the **"Board"**); (ii) a merger or consolidation that results in more than 50% of the combined voting power of the Company's then outstanding Voting Securities of the Company or its successor *changing ownership* (whether *or not* approved by the Board); (iii) the sale of all or substantially all of the Company's assets in one or a series of related transactions; or (iv) approval by the members of the Company of a plan of complete liquidation of the Company. The Company shall give the Lender no less than thirty (30) days written notice of a potential Change in Control;

(f)     if any final judgment for the payment of money in excess of $100,000 is rendered against the Company and the Company does not discharge the same or cause it to be discharged or vacated within ninety (90) days from the entry thereof, or does not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and does not secure a stay of execution pending such appeal within ninety (90) days after the entry thereof;

(g)     if the Company defaults in any material respect under any other secured or unsecured material indebtedness for borrowed money, other than any indebtedness owed to officers, directors or stockholders of the Company, mortgage or security agreement covering any part of its property;

(h)     if the Company defaults in the observance or performance of any other material term, agreement, covenant or condition of this Debenture, and the Company fails to remedy such default within fifteen (15) days after notice by the Lender to the Company of such default, or, if such default is of such a nature that it cannot with due diligence be cured within said fifteen (15) day period, if the Company fails, within said fifteen (15) days, to commence all steps necessary to cure such default, and fails to complete such cure within forty five (45) days after the end of such fifteen (15) day period;

(i)     except for specific defaults set forth in this Section, if the Company defaults in the observance or performance of any material term, agreement or condition of the Debenture, and such default continues after the end of any applicable cure period provided for therein; or

(j)     if any of the following exist uncured for fifteen (15) days following written notice to the Company: (i) the failure, subject to applicable survival periods, of any representation or warranty made by the Company to the Lender pursuant to the Subscription Agreement to be true and correct in all material respects or (ii) the Company fails to provide the Lender with any certification or evidence required to be provided pursuant to the terms of this Debenture;

EXHIBIT A

- 12 -

Commencing 5 days after the occurrence of any Event of Default that results in the eventual acceleration of this Debenture, the interest rate on this Debenture shall accrue at an interest rate equal to the lesser of 18% per annum or the maximum rate permitted under applicable law. Upon the payment in full, the Lender shall promptly surrender this Debenture to or as directed by the Company. In connection with such acceleration described herein, the Lender need not provide, and the Company hereby waives, any presentment, demand, protest or other notice of any kind, and the Lender may immediately and without expiration of any grace period enforce any and all of its rights and remedies hereunder and all other remedies available to it under applicable law.

6.    **COVENANTS**

As long as any portion of this Debenture remains outstanding, unless the holders of at least 51% in principal amount of the then outstanding Debentures shall have otherwise given prior written consent, the Company shall not, directly or indirectly, enter into, create, incur, assume, guarantee or suffer to exist any indebtedness for borrowed money of any kind, including, but not limited to, a guarantee, on or with respect to any of its property or assets now owned or hereafter acquired or any income or profits therefrom.

7.    **TRANSFER AND ASSIGNMENT**

The Lender is the person entitled to receive the principal of this Debenture and all other monies payable hereunder and to give a discharge hereof. Subject to compliance with any applicable securities laws, this Debenture and all rights hereunder (including, without limitation, any registration rights) are transferable, in whole or in part, upon surrender of this Debenture at the principal office of the Company or its designated agent, together with a written assignment of this Debenture duly executed by the Lender or its agent or attorney and funds sufficient to pay any transfer taxes payable upon the making of such transfer. Upon such surrender and, if required, such payment, the Company shall execute and deliver a new Debenture or Debentures in the name of the assignee or assignees, as applicable, and in the denomination or denominations specified in such instrument of assignment, and shall issue to the assignor a new Debenture evidencing the portion of this Debenture not so assigned, and this Debenture shall promptly be cancelled. Notwithstanding anything herein to the contrary, the Lender shall not be required to physically surrender this Warrant to the Company unless the Lender has assigned this Debenture in full, in which case, the Lender shall surrender this Debenture to the Company within three (3) Business Days of the date the Lender delivers an assignment form to the Company assigning this Debenture full. The Debenture, if properly assigned in accordance herewith, may be exercised by a new holder for the purchase of Shares without having a new Debenture issued.

8.    **MUTILATED, DESTROYED, LOST OR STOLEN DEBENTURES.**

In case this Debenture shall become mutilated or defaced, or be destroyed, lost or stolen, the Company shall execute and deliver a new debenture of like principal amount in exchange and substitution for the mutilated or defaced Debenture, or in lieu of and in substitution for the destroyed, lost or stolen Debenture. In the case of a mutilated or defaced Debenture, the Lender shall surrender such Debenture to the Company for exchange. In the case of any destroyed, lost or stolen Debenture, the Lender shall furnish to the Company: (a) evidence to the Company's satisfaction of the destruction, loss or theft of such Debenture and (b) such security or indemnity as may be reasonably required by the Company to hold the Company harmless with respect to the replacement of such Debenture.

**EXHIBIT A**

- 13 -

9.    **WAIVER OF DEMAND, PRESENTMENT, ETC.**

The Company hereby expressly waives demand and presentment for payment, notice of nonpayment, protest, notice of protest, notice of dishonor, notice of acceleration or intent to accelerate, bringing of suit and diligence in taking any action to collect amounts called for hereunder and shall be directly and primarily liable for the payment of all sums owing and to be owing hereunder, regardless of and without any notice, diligence, act or omission as or with respect to the collection of any amount called for hereunder.

10.    **PAYMENT**

Except as otherwise provided for herein, all payments with respect to this Debenture shall be made in lawful currency of the United States of America by cheque or wire transfer of immediately available funds, at the option of the Lender, at the principal office of the Lender or such other place or places or designated accounts as may be reasonably specified by the Lender in a written notice to the Company at least one (1) business day prior to payment. Payment shall be credited first to the accrued interest then due and payable and the remainder applied to principal.

11.    **ASSIGNMENT**

The rights and obligations of the Company and the Lender of this Debenture shall be binding upon, and inure to the benefit of, the permitted successors, assigns, heirs, administrators and transferees of the parties hereto. This Debenture is not assignable by the Lender without the written consent of the Company.

12.    **WAIVER AND AMENDMENT**

Any provision of this Debenture, including, without limitation, the due date hereof, and the observance of any term hereof, may be amended, waived or modified (either generally or in a particular instance and either retroactively or prospectively) only with the written consent of the Company and the holders of greater than 50% of the face amount of all then outstanding Debenture.

13.    **NOTICES**

Any notice, request or other communication required or permitted hereunder shall be in writing and shall be deemed to have been duly given if personally delivered or mailed by registered or certified mail, postage prepaid, or delivered by facsimile transmission, to the Company at 1383 West 8th Avenue, Vancouver, B.C. V6H 3W4, Attention: Chief Executive Officer, or to the Lender at its address or facsimile number set forth in the records of the Company. Any party hereto may by notice so given change its address for future notice hereunder. Notice shall conclusively be deemed to have been given when personally delivered or when deposited in the mail in the manner set forth above and shall be deemed to have been received when delivered or, if notice is given by facsimile transmission, when delivered with confirmation of receipt.

14.    **CONSENT TO JURISDICTION**

The Company irrevocably consents and agrees for the benefit of the Lender that any legal action, suite or proceeding against it with respect to its legislations, liabilities or any other matter arising out of or in connection with this Convertible Redeemable Debenture may be brought in the courts of the Province of British Columbia and, until all amounts due and to become due in respect of

**EXHIBIT A**

- 14 -

the Convertible Redeemable Debenture have been paid, or until any such legal action, suit or proceeding  commenced prior to such payment has been concluded, hereby irrevocably consents and irrevocably submits to the non-exclusive jurisdiction of each such court in person and, generally and unconditionally with respect to any action, suit or proceeding for themselves and in respect of their properties, assets and revenues.

## 15.    GOVERNING LAW

This Debenture shall be governed by and construed in accordance with the laws of the Province of British Columbia and the federal laws of Canada applicable therein.

## 16.    SEVERABILITY

If one or more provisions of this Debenture are held to be unenforceable under applicable law, such provisions shall be excluded from this Debenture, and the balance of this Debenture shall be interpreted as if such provisions were so excluded and shall be enforceable in accordance with its terms.

## 17.    HEADINGS

Section headings in this Debenture are for convenience only and shall not be used in the construction of this Debenture.

[REMAINDER OF THIS PAGE HAS BEEN INTENTIONALLY LEFT BLANK]

EXHIBIT A

- 15 -

**IN WITNESS WHEREOF** the Company has duly executed this Debenture.

**TRUE PHARMASTRIP INC.**

per:

Name:
Title:

*Jacques Poulade*
*Chief Executive Officer*

EXHIBIT A

- 16 -

## Schedule "A"

### CONVERSION NOTICE

**2019 CB#030**

**TO:**    **TRUE PHARMASTRIP INC.** (the "Company")

This Conversion Notice shall be delivered pursuant to the terms and conditions of a 8.0% Unsecured Senior Convertible Redeemable Debenture (the "Debenture") dated June 12, 2019 between the Company and WPE Kids Partners LP, as Lender.

The undersigned Lender hereby irrevocable elects to convert either (i) the entire Principal Amount, or (ii) $ _____ of the Principal Amount, into_____ Shares of the Company at a deemed conversion price of CDN $1.00 per Share in accordance with the terms and conditions contained in the Debenture. The Lender directs that the Shares issuable and deliverable upon the conversion be issued and delivered to the person indicated below. Capitalized terms used herein and not otherwise defined herein which are defined in the Debenture shall have the respective meanings given to such terms in the Debenture.

Dated this            day of              , 20____.


_____
(Signature of Lender)

Print name in which Shares issued on conversion are to be issued, delivered and registered. Note: If Shares are to be issued in the name of a person other than the Lender, the signature must be notarized.

Name                              Address of Registered Lender

_____        _____

                                 _____

                                 _____

**EXHIBIT A**



**HARRIS ✢ HARRIS** LLP
BARRISTERS AND SOLICITORS

June 25, 2021

***DELIVERED VIA COURIER/REGISTERED MAIL:***

1383 West 8th Avenue
Vancouver, B.C. V6H 3W4

**Attention: Chief Executive Officer**

***DELIVERED VIA EMAIL TO:***

*jacques@dislvs.com*

***DELIVERED VIA FACSMILE TO:***

**416-360-3761**
**True Pharmastrip Inc. c/o Sui & Company**

### True Pharmastrip Inc. (the "Company"): Default in Repayment of Convertible Debentures

We have been engaged by Bill Esping (on behalf of JEK SEP/Property, LP and WPE Kids Partners LP) and Marc Graubart (on behalf of BPMD Texas Partners LP).

They are holders of convertible debentures issued pursuant to a form of subscription agreement dated March 20, 2019 (the **"Subscription Agreement"**).

The debentures issued to Mr. Esping, copies of which are annexed hereto as Schedule "A" to this correspondence (the **"Debentures"**), had a maturity date of June 11, 2021 and were not repaid as scheduled.

The debenture issued to Mr. Graubart has a maturity date in July and are is yet technically in default; although we suspect that such debenture will not be repaid on its scheduled maturity.

Attached to this correspondence as Schedule "B" is a copy of the formal notice of default issued by the debenture holders and delivered in accordance with the notice provisions in the Debentures.

We have concerns regarding the failure by the Company to repay the Debentures, the manner of the original offering and the representations and other terms in the Subscription Agreement, as well as the ongoing failure of the Company to comply with its statutory obligations under the provisions of the *Business Corporations Act* (British Columbia).

EXHIBIT B

-2-

We also understand that both Mr. Esping and Mr. Graubart have tried to engage the Company in a process to determine the basis on which the debentures can be repaid and what alternative cure actions could be taken to cure the existing defaults of the Company in failing to repay certain of the debentures that have matured, including the Debentures. We have been advised that despite the efforts of Mr. Esping and Mr. Graubart to engage the Company in such negotiations, the Company appears unwilling to be cooperative. We have been further advised that Mr. Mark Martino and John Lemak, persons who assisted the Company in relation to the initial offering of the convertible debentures, have also tried to propose terms upon which the debentures could be extended and thereby cure the ongoing default; again, without success.

At this point, Mr. Esping and Mr. Graubart, having tried to deal directly with the Company to no avail, have engaged the services of our firm.

We can advise that neither Mr. Esping nor Mr. Graubart relishes the idea of commencing litigation or insolvency proceedings against the Company (or other culpable parties) to determine whether their investments can be repaid; and they remain committed to pursuing a negotiated resolution with the Company; however, any negotiated resolution is going to require some cooperation by the Company and its board of directors.

Accordingly, if, during the thirty day cure period, the Company wishes to make any bona fide and good faith efforts to attempt to avoid a crystalized default of the Debentures, we would encourage a representative of the Company to contact us as soon as possible so that we can engage in discussions to determine the basis upon which the Debentures can be repaid or whether any modification to the terms of the Debentures should be considered. We had understood that Haywood Securities had possibly been engaged for the purposes of such negotiations and we would be pleased to hear from any representative of Haywood in this regard.

Our goal is to find a mutually acceptable resolution to the default under the Debentures; however, if the Company, for whatever reason, is unwilling to even entertain such discussions, please so advise and we will pursue all other remedies available to our clients.

If you prefer us to contact your legal counsel or any other person regarding this matter, please provide the appropriate contact information to us and we will initiate such contact.

Please govern yourselves accordingly.

Yours very truly,

**HARRIS + HARRIS LLP**

Gregory H. Harris

GHH/nc
G:\WP51\H 17001-18000\17249\Correspondence\Letter to True Pharmastrip Inc.HH.June 25, 2021.docx

EXHIBIT B

## SCHEDULE "A"

## COPY OF DEBENTURES

EXHIBIT B

THE SECURITIES REPRESENTED HEREBY HAVE NOT BEEN REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (THE "U.S. SECURITIES ACT") OR ANY STATE SECURITIES LAWS. THE HOLDER HEREOF, BY PURCHASING SUCH SECURITIES, AGREES FOR THE BENEFIT OF THE ISSUER THAT SUCH SECURITIES MAY BE OFFERED, SOLD, PLEDGED OR OTHERWISE TRANSFERRED, DIRECTLY OR INDIRECTLY, ONLY (A) TO THE ISSUER, (B) OUTSIDE THE UNITED STATES PURSUANT TO RULE 904 OF REGULATION S UNDER THE U.S. SECURITIES ACT AND IN ACCORDANCE WITH APPLICABLE LOCAL LAWS AND REGULATONS, (C) PURSUANT TO THE EXEMPTIONS FROM REGISTRATION UNDER THE U.S. SECURITIES ACT PROVIDED BY RULE 144 OR RULE 144A THEREUNDER, IF AVAILABLE, AND IN ACCORDANCE WITH APPLICABLE STATE SECURITIES LAWS, OR (D) PURSUANT TO ANOTHER APPLICABLE EXEMPTION UNDER THE U.S. SECURITIES ACT AND ANY APPLICABLE STATE SECURITIES LAWS, AFTER, IN THE CASE OF TRANSFERS PURSUANT TO CLAUSE (C) OR (D), PROVIDING TO THE COMPANY A LEGAL OPINION OR OTHER EVIDENCE IN FORM AND SUBSTANCE REASONABLY SATISFACTORY TO THE ISSUER, TO THE EFFECT THAT SUCH TRANSFER DOES NOT REQUIRE REGISTRATION UNDER THE U.S. SECURITIES ACT. DELIVERY OF THIS CERTIFICATE MAY NOT CONSTITUTE GOOD DELIVERY IN SETTLEMENT OF TRANSACTIONS ON STOCK EXCHANGES IN CANADA.

## TRUE PHARMASTRIP INC.

### 8.0% UNSECURED SENIOR CONVERTIBLE REDEEMABLE DEBENTURE

2019 CB#023

| | |
|---|---|
| Date: | June 12, 2019 |
| Principal Amount: | US $500,000 (the "Principal Amount") |
| Maturity Date: | June 11, 2021 |
| Lender: | JEK SEP/PROPERTY, LP (the "Lender") |
| Lender's Address: | 500 N. Akard Street, Suite 1500, Dallas, Texas 75201 |

Pursuant to the Subscription Agreement accepted by True Pharmastrip Inc. (the "Company") on June 12th, 2019 between the Company and JEK SEP/Property, LP (the "Subscription Agreement"), the Company hereby issues this 8.0% Unsecured Senior Convertible Redeemable Debenture in the principal aggregate amount of US $500,000 (the "Debenture") to the Lender.

1. **TERMS OF REPAYMENT**

    The Company, a corporation incorporated under the laws of the Province of British Columbia, for value received hereby acknowledges itself indebted for the above mentioned principal sum and promises to pay to or to the order of the Lender as follows:

    i)    interest at a rate of 8.0% per annum, calculated in United States dollars, payable semi-annually in arrears on June 30 and December 31 of each year, commencing December 31, 2019;

    ii)   interest shall be paid in the form of common shares ("Shares") of the Company at an issue price of CAN$1.00 per Share; and

    iii)  principal payable in full on the Maturity Date.

EXHIBIT B

- 2 -

Payment of both the Principal Amount and accrued interest thereon shall be made at the Lender's address, set out above, or at such other place in British Columbia as the Lender may designate in writing to the Company.

The Company waives presentment for payment, demand, or notice of non-payment of this Debenture in collection, and consents to all extensions of time, renewals, waivers or modifications that may be granted by the holder with respect to the payment or any other provision of this Debenture.

See Section 3 below, "Exchange Rate" regarding currency conversions.

2.    **CONVERSION**

(a)    **Conversion Privilege and Conversion Price**

Upon and subject to the provisions and conditions of this section, the holder of this Debenture shall have the right, at his option, to convert, at any time and from time to time up to the close of business on the Maturity Date (the "Expiry Time"), up to the entire Principal Amount of this Debenture, into Shares of the Company, at a conversion price of CDN$1.00 per Share (the "**Conversion Price**"). No fractional Shares will be issued.

See Section 3 below, "Exchange Rate" regarding currency conversions.

The number of Shares issuable to the holder of this Debenture hereunder shall be equal to the aggregate Principal Amount being converted divided by the Conversion Price. Such right of conversion shall extend only to the maximum number of Shares into which the aggregate principal amount of this Debenture surrendered for conversion may be converted into Shares at the time of such conversion. No fractional Shares will be issued.

(b)    **Registration; Book-Entry**

The Company shall maintain a register (the "Register") for the recordation of the names and addresses of the holders of each Debenture and the Principal amount of the Debentures (and stated interest thereon) held by such holders (the "**Registered Debentures**"). The entries in the Register, made in good faith, shall be conclusive and binding for all purposes absent manifest error. The Company and the holders of the Debentures shall treat each Person whose name is recorded in the Register as the owner of a Debenture for all purposes, including, without limitation, the right to receive payments of Principal and Interest, if any, hereunder, notwithstanding notice to the contrary. A Registered Debenture may be assigned or sold in whole or in part only by registration of such assignment or sale on the Register. Upon its receipt of a request to assign or sell all or part of any Registered Debentures by the Lender, the Company shall record the information contained therein in the Register and issue one or more new Registered Debentures in the same aggregate Principal amount as the Principal amount of the surrendered Registered Debenture to the designated assignee or transferee pursuant to Section 6. Notwithstanding anything to the contrary in this Section 2(b), the Lender may assign any Debenture or any portion thereof to an Affiliate (as such term is defined in the *Business Corporations Act* (British Columbia)) of such Lender without delivering a request to assign or sell such Debenture to the Company and the recordation of such assignment or sale in the Register (a "**Related Party Assignment**"); provided, that (x)

EXHIBIT B

- 3 -

the Company may continue to deal solely with such assigning or selling Lender unless and until such Lender has delivered a request to assign or sell such Debenture or portion thereof to the Company for recordation in the Register; (y) the failure of such assigning or selling Lender to deliver a request to assign or sell such Debenture or portion thereof to the Company shall not affect the legality, validity, or binding effect of such assignment or sale and (z) such assigning or selling Lender shall, acting solely for this purpose as a non-fiduciary agent of the Company, maintain a register (the "Related Party Register") comparable to the Register on behalf of the Company, and any such assignment or sale shall be effective upon recordation of such assignment or sale in the Related Party Register. Notwithstanding anything to the contrary set forth herein, upon conversion of any portion of this Debenture in accordance with the terms hereof, the Lender shall not be required to physically surrender this Debenture to the Company unless (A) the full Conversion Amount represented by this Debenture is being converted or (B) the Lender has provided the Company with prior written notice (which notice may be included in a Conversion Notice) requesting reissuance of this Debenture upon physical surrender of this Debenture. The Lender and the Company shall maintain records showing the Principal and Interest, converted and the dates of such conversions or shall use such other method, reasonably satisfactory to the Lender and the Company, so as not to require physical surrender of this Debenture upon conversion.

(c)    Conversion Procedure

The holder of this Debenture desiring to convert such Debenture shall provide the Company with a Notice of Conversion, in the form attached hereto as Schedule "A", duly executed by the registered holder or his legal representatives or his attorney duly appointed by an instrument in writing in form and execution satisfactory to the Company exercising his right to convert this Debenture in accordance with the provisions of this Section. The Lender shall also specify the name or names, with addresses in which the certificate or certificates representing the Shares issuable upon conversion shall be registered. Thereupon the Lender or his nominee or assignee shall be entitled to be entered in the books of the Company as at the date of conversion (being the date upon which the Company receives a Notice of Conversion) as the holder of that number of Shares into which this Debenture is convertible in accordance with the provisions of this Section and, as soon as practicable thereafter, the Company shall deliver to the holder, or his nominee or assignee, certificates for such Shares, but in any event, within three (3) business days of receipt of the notice of conversion. If the Company fails to transmit to the Lender the Shares within 3 Business Days of receipt of the notice of conversion, then the Lender will have the right to rescind such conversion. The Company shall be responsible for any and all taxes that may be payable with respect to the issuance or delivery of the Shares; provided, however, that the Lender shall not be obligated to pay any transfer taxes resulting from any transfer requested by any Lender in connection with any such conversion. No fractional Shares or scrip representing fractional Shares shall be issued upon the conversion of this Debenture. As to any fraction of a Share which the Lender would otherwise be entitled to purchase upon such conversion, the Company shall, at its election, either pay a cash adjustment in respect of such final fraction in an amount equal to such fraction multiplied by the Conversion Price or round up to the next whole Unit. The Company covenants and agrees to indemnify the Lender for any losses it suffers, directly or indirectly, as a result of the Lender failing to provide the certificates as stipulated in this Section 2(c). Partial exercises of this Debenture resulting in purchases of a portion of the total number of Shares available hereunder shall have the effect of lowering the outstanding number of Shares purchasable hereunder in an amount equal to

EXHIBIT B

- 4 -

the applicable number of Shares purchased.  If this Debenture shall have been exercised in part, the Company shall, at the request of a Lender and upon surrender of this Debenture, at the time of delivery of the Shares, deliver to the Lender a new Debenture evidencing the rights of the Lender to purchase the unpurchased Shares called for by this Debenture, which new Debenture shall in all other respects be identical with this Debenture.  The Lender and the Company shall maintain records showing the number of Shares purchased and the date of such purchases. The Company shall deliver any objection to any notice of conversion within one (1) Business Day of receipt of such notice. The Lender and any assignee, by acceptance of this Debenture, acknowledge and agree that, by reason of the provisions of this paragraph, following the purchase of a portion of the Shares hereunder, the number of Shares available for purchase hereunder at any given time may be less than the amount stated on the face hereof.

(d)     **Adjustments**

(i)     **Stock Dividends and Splits**. Subject to subsection (ii) below, the Conversion Price shall be subject to adjustment from time to time in the events and in the manner provided in this section.

(A)     If and whenever at any time after the date hereof and prior to the Expiry Time the Company shall:

(1)     issue common shares or otherwise makes a distribution or distributions on its Shares (as defined in the Subscription Agreement) or any other equity or equity equivalent securities payable in Shares (which, for avoidance of doubt, shall not include any Shares issued by the Company upon conversion of this Debenture) to all or substantially all the holders of the Shares as a stock dividend;

(2)     subdivide its outstanding common shares into a greater number of shares;

(3)     consolidate (including by way of reverse stock split) its outstanding common shares into a smaller number of shares; or

(4)     issues by reclassification any Shares of the Company,

(any of such events in (1), (2) (3) and (4) being called a "**Common Share Reorganization**"), then the Conversion Price shall be adjusted, effective immediately after the record date at which the holders of Shares are determined for the purpose of the Common Share Reorganization, by multiplying the Conversion Price in effect immediately prior to such record date by a fraction, the numerator of which shall be the number of common shares outstanding on such record date before giving effect to such Common Share Reorganization and the denominator of which shall be the number of Common Shares (excluding treasury shares, if any) outstanding immediately after giving effect to such Common Share Reorganization (including, in the case where securities exchangeable for or convertible into common shares are distributed, the number of common shares that would have been outstanding had all such securities

EXHIBIT B

- 5 -

been exchanged for or converted into common shares on such record date), and the number of Shares issuable upon conversion of this Debenture shall be proportionately adjusted such that the aggregate Conversion Price of this Debenture shall remain unchanged.

(B)     **Subsequent Rights Offerings.** In addition to any adjustments pursuant to Section 2(c)(i) above, if and whenever at any time after the date hereof and prior to the Maturity Date the Company shall fix a record date for the issuance of rights, options, warrants, securities or other property to all or substantially all of the holders of any class of securities under which such holders are entitled to acquire common shares or securities ("Purchase Rights"), then the Lender will be entitled to acquire, upon the terms applicable to such Purchase Rights, the aggregate Purchase Rights which the Lender could have acquired if the Lender had held the number of Shares acquirable upon complete conversion of this Debenture immediately before the date on which a record is taken for the grant, issuance or sale of such Purchase Rights, or, if no such record is taken, the date as of which the record holders of Common Shares are to be determined for the grant, issue or sale of such Purchase Rights.

(C)     **Pro Rata Distributions.** During such time as this Debenture is outstanding, if the Company (or any successor corporation), as applicable, shall declare or make any dividend or other distribution of its assets (or rights to acquire its assets) to holders of Shares, by way of return of capital or otherwise (including, without limitation, any distribution of cash, stock or other securities, property or options by way of a dividend, spin off, reclassification, corporate rearrangement, scheme of arrangement or other similar transaction) (a "**Distribution**"), at any time after the issuance of this Debenture, then, in each such case, the Lender shall be entitled to participate in such Distribution to the same extent that the Lender would have participated therein if the Lender had held the number of Shares acquirable upon complete conversion of this Debenture immediately before the date of which a record is taken for such Distribution, or, if no such record is taken, the date as of which the record holders of Shares are to be determined for the participation in such Distribution.

(D)     **Fundamental Transaction.** If, at any time while this Debenture is outstanding, (i) the Company, directly or indirectly, in one or more related transactions effects any merger or consolidation of the Company with or into another Person, (ii) the Company, directly or indirectly, effects any sale, lease, license, assignment, transfer, conveyance or other disposition of all or substantially all of its assets in one or a series of related transactions, (iii) any, direct or indirect, purchase offer, tender offer or exchange offer (whether by the Company or another Person) is completed pursuant to which holders of Shares are permitted to sell, tender or exchange their Shares for other securities, cash or property and has been accepted by the holders of 50% or more of the outstanding Shares (iv) the Company, directly or indirectly, in one or more related transactions effects any reclassification, reorganization or recapitalization of the Shares or any compulsory share exchange

EXHIBIT B

- 6 -

pursuant to which the Shares are effectively converted into or exchanged for other securities, cash or property, or (v) the Company, directly or indirectly, in one or more related transactions consummates a securities purchase agreement or other business combination (including, without limitation, a reorganization, recapitalization, spin-off or scheme of arrangement) with another Person or group of Persons whereby such other Person or group acquires more than 50% of the outstanding Shares (not including any Shares held by the other Person or other Persons making or party to, or associated or affiliated with the other Persons making or party to, such stock or share purchase agreement or other business combination) (each a "**Fundamental Transaction**"), then, upon any subsequent conversion of this Debenture, the Lender shall have the right to receive, for each Share that would have been issuable upon such exercise immediately prior to the occurrence of such Fundamental Transaction, at the option of the Lender, the number of Shares of the successor or acquiring corporation or of the Company, if it is the surviving corporation, and any additional consideration (the "**Alternate Consideration**") receivable as a result of such Fundamental Transaction by a holder of the number of Shares for which this Debenture is convertible immediately prior to such Fundamental Transaction. For purposes of any such conversion, the determination of the Conversion Price shall be appropriately adjusted to apply to such Alternate Consideration based on the amount of Alternate Consideration issuable in respect of one Share in such Fundamental Transaction, and the Company shall apportion the Conversion Price among the Alternate Consideration in a reasonable manner reflecting the relative value of any different components of the Alternate Consideration. If holders of Shares are given any choice as to the securities, cash or property to be received in a Fundamental Transaction, then the Lender shall be given the same choice as to the Alternate Consideration it receives upon any conversion of this Debenture following such Fundamental Transaction. The Company shall cause any successor entity in a Fundamental Transaction in which the Company (or any successor corporation), as applicable, is not the survivor (the "**Successor Entity**") to assume in writing all of the obligations of the Company under this Debenture in accordance with the provisions of this Section 2(D). At the option of the Successor Entity, it may deliver to the Lender in exchange for this Debenture a security of the Successor Entity evidenced by a written instrument substantially similar in form and substance to this Debenture which is convertible for a corresponding number of Shares, as applicable, of such Successor Entity (or its parent entity) equivalent to the Shares acquirable and receivable upon conversion of this Debenture prior to such Fundamental Transaction, and with a conversion price which applies the Conversion Price hereunder to such Shares (but taking into account the relative value of the Shares pursuant to such Fundamental Transaction and the value of such Shares, such number of Shares and such conversion price being for the purpose of protecting the economic value of this Debenture immediately prior to the consummation of such Fundamental Transaction). Upon the occurrence of any such Fundamental Transaction, the Successor Entity shall succeed to, and be substituted for (so that from and after the date of such Fundamental Transaction, the provisions of this

**EXHIBIT B**

- 7 -

Debenture referring to the "Company" shall refer instead to the Successor Entity), and may exercise every right and power of the Company, and shall assume all of the obligations of the Company under this Debenture with the same effect as if such Successor Entity had been named as the Company herein. "Person" means any individual, partnership, joint venture, firm, corporation, association, limited liability company, trust or other enterprise or any governmental or political subdivision or any agency, department or instrumentality thereof.

(ii)    Rules for Calculating Adjustments (For the purpose of subsection (i)):

(A)    The adjustments provided for in subsection (i) are cumulative and such adjustments shall be made successively whenever an event referred to therein shall occur, subject to the following subsections of this subsection (ii).

(B)    No adjustment in the Conversion Price shall be required unless such adjustment would result in a change of at least 1% in the prevailing Conversion Price, provided, however, that any adjustments which, except for the provisions of this subsection (ii)(R), would otherwise have been required to be made shall be carried forward and taken into account in any subsequent adjustment.

(C)    If a dispute shall at any time arise with respect to adjustments provided for in subsection (i), such dispute shall be determined by the Company's auditors, or if they are unable or unwilling to act, by such other firm of independent chartered accountants as may be selected by the directors and any such determination shall be final and conclusive and binding upon the Company and the holder.

(D)    If the Company shall set a record date to determine the holders of the common shares for the purpose of entitling them to receive any dividend or distribution or any subscription or purchase rights and shall, thereafter and before the distribution to such shareholders of any such dividend, distribution or subscription or purchase rights, legally abandon its plan to pay or deliver such dividend, distribution or subscription or purchase rights, then no adjustment in the Conversion Price or the number of Shares issuable upon conversion of the Debenture shall be required by reason of the setting of such record date.

(E)    In the absence of resolution of the directors fixing a record date for a Common Share Reorganization, Capital Reorganization, Rights Offering or Special Distribution, the Company shall be deemed to have fixed as the record date therefor the date on which the Common Share Reorganization, Capital Reorganization, Rights Offering or Special Distribution is effected.

(F)    As a condition precedent to the taking of any action which would require any adjustment in any of the conversion rights pursuant to the Debenture, including the Conversion Price and the number or class of shares or other securities which are to be received upon the conversion thereof, the

EXHIBIT B

- 8 -

Company shall take any corporate action which may, in the opinion of counsel, be necessary in order that the Company have unissued and reserved in its authorized share capital and may validly and legally issue as fully paid and non-assessable all the shares or other securities which the holder is entitled to receive on the total conversion thereof in accordance with the provisions thereof.

(G) If, in the opinion of the board of directors, the provisions of subsection (i) are not strictly applicable, or if strictly applicable would not fairly protect the rights of the holder in accordance with the intent and purposes hereof, the board of directors shall make any adjustment in such provisions for the benefit of the holder as the board of directors deems appropriate.

(H) If at any time a question or dispute arises with respect to adjustments provided for in subsection 2(C)(i) such question or dispute will be conclusively determined by the auditor of the Company or, if they are unable or unwilling to act, by such other firm of chartered accountants as may be selected by action of directors of the Company and any such determination, subject to regulatory approval and absent manifest error, will be binding upon the Company and the Borrower. The Company will provide such auditor or chartered accountant with access to all necessary records of the Company.

(iii) Whenever the number or class of shares or other securities which are to be received upon the conversion of this Debenture or the Conversion Price shall require an adjustment pursuant to subsection (ii), the Company shall forthwith obtain a certificate signed by a senior officer of the Company, setting forth in reasonable detail, the event requiring the adjustment and the method by which such adjustment was calculated (including an opinion on the fair value, as determined by the board of directors of the Company, of any evidences of indebtedness, shares of stock, other securities or property or warrants, options or other subscription or purchase rights referred to in subsection (ii)) and specifying the number or class of shares or other securities which are to be received upon the conversion hereof and describing the numbers and kind of any other securities issuable upon conversion of this Debenture, and any change in the Conversion Price thereof, after giving effect to such adjustment or change. The Company shall promptly, and in any case within 30 days after the making of such adjustment, cause a signed copy of such certificate to be delivered to the Lender. The Company shall keep at its office or agency copies of all such certificates and cause the same to be available for inspection upon receipt of reasonable notice at said office during normal business hours by the Lender.

(iv) If (A) the Company shall declare a dividend (or any other distribution in whatever form) on its common shares, (B) the Company shall declare a special nonrecurring cash dividend on or a redemption of its common shares, (C) the Company shall authorize the granting to all holders of its common shares rights or warrants to subscribe for or purchase any shares of capital stock of any class or of any rights, (D) the approval of any stockholders of the Company shall be required in connection with any reclassification of its common shares, any consolidation or merger to which the Company is a party, any sale or transfer of

EXHIBIT B

- 9 -

all or substantially all of the assets of the Company, or any compulsory share exchange whereby the Common Stock is converted into other securities, cash or property, or (E) the Company shall authorize the voluntary or involuntary dissolution, liquidation or winding up of the affairs of the Company, then, in each case, the Company shall cause to be delivered by facsimile or email to the Lender at its last facsimile number or email address as it shall appear upon the Register of the Company, at least 20 calendar days prior to the applicable record or effective date hereinafter specified, a notice stating (x) the date on which a record is to be taken for the purpose of such dividend, distribution, redemption, rights or warrants, or if a record is not to be taken, the date as of which the holders of its common shares of record to be entitled to such dividend, distributions, redemption, rights or warrants are to be determined or (y) the date on which such reclassification, consolidation, merger, sale, transfer or share exchange is expected to become effective or close, and the date as of which it is expected that holders of its common shares of record shall be entitled to exchange their common shares for securities, cash or other property deliverable upon such reclassification, consolidation, merger, sale, transfer or share exchange; provided that the failure to deliver such notice or any defect therein or in the delivery thereof shall not affect the validity of the corporate action required to be specified in such notice.  The Lender shall remain entitled to convert this Debenture during the period commencing on the date of such notice to the effective date of the event triggering such notice except as may otherwise be expressly set forth herein.

(d)  **Reservation of Securities**

The Company covenants and agrees that, so long as any part of the Principal Amount or interest under this Debenture is outstanding and entitled to the right of conversion herein provided, it will at all times ensure that all of the Shares upon a Conversion and Shares issuable in lieu of interest payable on this Debenture, have been duly created, reserved, allotted for issuance and authorized for issuance, so as to enable all of such outstanding Principal Amount of the Debenture to be converted into Shares upon the basis and upon the terms and conditions herein provided in this section 2, and that upon being issued, all such securities will be validly issued as fully paid and non-assessable securities in the capital of the Company.

(e)  **Regulatory Approvals and Filing in Connection with Conversion**

If any Shares of the Company allotted or to be allotted for the purpose of conversion of this Debenture require registration with or approval of any governmental or other authority under any laws of Canada or a province of Canada before such securities may be validly issued upon conversion and traded on any stock exchange on which the common shares are then listed and posted for trading, the Company will take such action as may be necessary to secure such registration or approval, as the case may be.

3.  **EXCHANGE RATE**

The exchange rate for the purpose of converting this Debenture into Shares or the payment of interest in Shares shall be fixed at $1.330 Canadian dollars for one (1) United States. By way of illustration, a US$1,000 Debenture shall have an equivalent Canadian dollar value of $1,330 and be convertible into 1,330 Shares. Alternatively, an interest payment of US$60 dollars shall have

**EXHIBIT B**

- 10 -

an equivalent Canadian dollar value of $79.80 pursuant to which 79 Shares are issuable. No fractional Shares will be issued.

4.    **REDEMPTION**

Subject to the provisions of this Section, if at any time after the date that is the later of (i) four months from the issuance date of the Debenture or (ii) the date the Company becomes a reporting issuer under applicable Canadian securities legislation, the VWAP for each of any 10 consecutive Trading Days (such period the "Threshold Period"), exceeds CDN$1.50 (subject to adjustment for reverse and forward stock splits, stock dividends, stock combinations and other similar transactions of the Common Stock that occur after the original issue date), the Company may, within 1 Trading Day after the end of any such Threshold Period, deliver a written notice to the Lender (an "Optional Redemption Notice" and the date such notice is deemed delivered hereunder, the "Optional Redemption Notice Date") of its irrevocable election to redeem all (and not less than all) of the then outstanding principal amount of this Debenture for cash in an amount equal to principal amount of the Debenture plus any accrued interest on the 20th Trading Day following the Optional Redemption Notice Date (such date, the "Optional Redemption Date", such 10 Trading Day period, the "Optional Redemption Period" and such redemption, the "Optional Redemption"). The Optional Redemption Amount is payable in full on the Optional Redemption Date. The Company covenants and agrees that it will honor all Notices of Conversion tendered from the time of delivery of the Optional Redemption Notice through the date all amounts owing thereon are due and paid in full. The Company's determination to pay an Optional Redemption in cash shall be applied ratably to all of the holders of the then outstanding Debentures based on their (or their predecessor's) initial purchases of Debentures. If any portion of the payment pursuant to an Optional Redemption shall not be paid by the Company by the applicable due date, interest shall accrue thereon at an interest rate equal to the lesser of 18% per annum or the maximum rate permitted by applicable law until such amount is paid in full. Notwithstanding anything herein contained to the contrary, if any portion of the Optional Redemption Amount remains unpaid after such date, the Lender may elect, by written notice to the Company given at any time thereafter, to invalidate such Optional Redemption, *ab initio*, and, the Company shall have no further right to exercise such Optional Redemption. Notwithstanding anything to the contrary in this Section, the Company's determination to redeem in cash shall be applied ratably among the Lenders. The Lender may elect to convert the outstanding principal amount of the Debenture prior to actual payment in cash for any redemption under this Section by the delivery of a Notice of Conversion to the Company in accordance with section 2(c) above.

5.    **DEFAULT**

If any of the following events shall occur and be continuing unremedied for a period of thirty (30) days (an **"Event of Default"**), the Lender may, at its option, demand immediate payment of the entire outstanding Principal Amount of this Debenture and all due and accrued interest thereon, and all other indebtedness of the Company to the Lender hereunder or otherwise shall thereupon become immediately due and payable, namely:

(a)    the non-payment when due (whether at stated maturity, upon acceleration, upon required prepayment or otherwise) of any amounts owing to the Lender under this Debenture and such non-payment continues for five (5) Business Days;

(b)    the Company becomes insolvent, or generally does not pay its debts as they become due, or admits in writing its inability to pay its debts, or makes a general assignment for the benefit of creditors;

EXHIBIT B

- 11 -

(c)     the Company initiates proceedings under the *Companies' Creditors Arrangement Act;*

(d)     insolvency, receivership or bankruptcy proceedings are commenced against the Company;

(e)     Upon a "**Change in Control**" of the Company, meaning: (i) an acquisition of any voting securities of the Company (the "**Voting Securities**") by any "person" (as the term "person" is used for purposes of Section 13(d) or Section 14(d) of the Securities Exchange Act of 1934, as amended (the "**Exchange Act**"), immediately after which such person has "beneficial ownership" (within the meaning of Rule 13d-3 promulgated under the Exchange Act) of 50% or more of the combined voting power of the Company's then outstanding Voting Securities without the approval of the Company's Board of Directors (the "**Board**"); (ii) a merger or consolidation that results in more than 50% of the combined voting power of the Company's then outstanding Voting Securities of the Company or its successor changing ownership (whether or not approved by the Board); (iii) the sale of all or substantially all of the Company's assets in one or a series of related transactions; or (iv) approval by the members of the Company of a plan of complete liquidation of the Company. The Company shall give the Lender no less than thirty (30) days written notice of a potential Change in Control;

(f)     if any final judgment for the payment of money in excess of $100,000 is rendered against the Company and the Company does not discharge the same or cause it to be discharged or vacated within ninety (90) days from the entry thereof, or does not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and does not secure a stay of execution pending such appeal within ninety (90) days after the entry thereof;

(g)     if the Company defaults in any material respect under any other secured or unsecured material indebtedness for borrowed money, other than any indebtedness owed to officers, directors or stockholders of the Company, mortgage or security agreement covering any part of its property;

(h)     if the Company defaults in the observance or performance of any other material term, agreement, covenant or condition of this Debenture, and the Company fails to remedy such default within fifteen (15) days after notice by the Lender to the Company of such default, or, if such default is of such a nature that it cannot with due diligence be cured within said fifteen (15) day period, if the Company fails, within said fifteen (15) days, to commence all steps necessary to cure such default, and fails to complete such cure within forty five (45) days after the end of such fifteen (15) day period;

(i)     except for specific defaults set forth in this Section, if the Company defaults in the observance or performance of any material term, agreement or condition of the Debenture, and such default continues after the end of any applicable cure period provided for therein; or

(j)     if any of the following exist uncured for fifteen (15) days following written notice to the Company: (i) the failure, subject to applicable survival periods, of any representation or warranty made by the Company to the Lender pursuant to the Subscription Agreement to be true and correct in all material respects or (ii) the Company fails to provide the Lender with any certification or evidence required to be provided pursuant to the terms of this Debenture;

**EXHIBIT B**

- 12 -

Commencing 5 days after the occurrence of any Event of Default that results in the eventual acceleration of this Debenture, the interest rate on this Debenture shall accrue at an interest rate equal to the lesser of 18% per annum or the maximum rate permitted under applicable law. Upon the payment in full, the Lender shall promptly surrender this Debenture to or as directed by the Company. In connection with such acceleration described herein, the Lender need not provide, and the Company hereby waives, any presentment, demand, protest or other notice of any kind, and the Lender may immediately and without expiration of any grace period enforce any and all of its rights and remedies hereunder and all other remedies available to it under applicable law.

6.    COVENANTS

As long as any portion of this Debenture remains outstanding, unless the holders of at least 51% in principal amount of the then outstanding Debentures shall have otherwise given prior written consent, the Company shall not, directly or indirectly, enter into, create, incur, assume, guarantee or suffer to exist any indebtedness for borrowed money of any kind, including, but not limited to, a guarantee, on or with respect to any of its property or assets now owned or hereafter acquired or any income or profits therefrom.

7.    TRANSFER AND ASSIGNMENT

The Lender is the person entitled to receive the principal of this Debenture and all other monies payable hereunder and to give a discharge hereof. Subject to compliance with any applicable securities laws, this Debenture and all rights hereunder (including, without limitation, any registration rights) are transferable, in whole or in part, upon surrender of this Debenture at the principal office of the Company or its designated agent, together with a written assignment of this Debenture duly executed by the Lender or its agent or attorney and funds sufficient to pay any transfer taxes payable upon the making of such transfer. Upon such surrender and, if required, such payment, the Company shall execute and deliver a new Debenture or Debentures in the name of the assignee or assignees, as applicable, and in the denomination or denominations specified in such instrument of assignment, and shall issue to the assignor a new Debenture evidencing the portion of this Debenture not so assigned, and this Debenture shall promptly be cancelled. Notwithstanding anything herein to the contrary, the Lender shall not be required to physically surrender this Warrant to the Company unless the Lender has assigned this Debenture in full, in which case, the Lender shall surrender this Debenture to the Company within three (3) Business Days of the date the Lender delivers an assignment form to the Company assigning this Debenture full. The Debenture, if properly assigned in accordance herewith, may be exercised by a new holder for the purchase of Shares without having a new Debenture issued.

8.    MUTILATED, DESTROYED, LOST OR STOLEN DEBENTURES.

In case this Debenture shall become mutilated or defaced, or be destroyed, lost or stolen, the Company shall execute and deliver a new debenture of like principal amount in exchange and substitution for the mutilated or defaced Debenture, or in lieu of and in substitution for the destroyed, lost or stolen Debenture. In the case of a mutilated or defaced Debenture, the Lender shall surrender such Debenture to the Company for exchange. In the case of any destroyed, lost or stolen Debenture, the Lender shall furnish to the Company: (a) evidence to the Company's satisfaction of the destruction, loss or theft of such Debenture and (b) such security or indemnity as may be reasonably required by the Company to hold the Company harmless with respect to the replacement of such Debenture.

EXHIBIT B

- 13 -

9.  **WAIVER OF DEMAND, PRESENTMENT, ETC.**

The Company hereby expressly waives demand and presentment for payment, notice of nonpayment, protest, notice of protest, notice of dishonor, notice of acceleration or intent to accelerate, bringing of suit and diligence in taking any action to collect amounts called for hereunder and shall be directly and primarily liable for the payment of all sums owing and to be owing hereunder, regardless of and without any notice, diligence, act or omission as or with respect to the collection of any amount called for hereunder.

10.  **PAYMENT**

Except as otherwise provided for herein, all payments with respect to this Debenture shall be made in lawful currency of the United States of America by cheque or wire transfer of immediately available funds, at the option of the Lender, at the principal office of the Lender or such other place or places or designated accounts as may be reasonably specified by the Lender in a written notice to the Company at least one (1) business day prior to payment. Payment shall be credited first to the accrued interest then due and payable and the remainder applied to principal.

11.  **ASSIGNMENT**

The rights and obligations of the Company and the Lender of this Debenture shall be binding upon, and inure to the benefit of, the permitted successors, assigns, heirs, administrators and transferees of the parties hereto. This Debenture is not assignable by the Lender without the written consent of the Company.

12.  **WAIVER AND AMENDMENT**

Any provision of this Debenture, including, without limitation, the due date hereof, and the observance of any term hereof, may be amended, waived or modified (either generally or in a particular instance and either retroactively or prospectively) only with the written consent of the Company and the holders of greater than 50% of the face amount of all then outstanding Debenture.

13.  **NOTICES**

Any notice, request or other communication required or permitted hereunder shall be in writing and shall be deemed to have been duly given if personally delivered or mailed by registered or certified mail, postage prepaid, or delivered by facsimile transmission, to the Company at 1383 West 8th Avenue, Vancouver, B.C. V6H 3W4, Attention: Chief Executive Officer, or to the Lender at its address or facsimile number set forth in the records of the Company. Any party hereto may by notice so given change its address for future notice hereunder. Notice shall conclusively be deemed to have been given when personally delivered or when deposited in the mail in the manner set forth above and shall be deemed to have been received when delivered or, if notice is given by facsimile transmission, when delivered with confirmation of receipt.

14.  **CONSENT TO JURISDICTION**

The Company irrevocably consents and agrees for the benefit of the Lender that any legal action, suite or proceeding against it with respect to its legislations, liabilities or any other matter arising out of or in connection with this Convertible Redeemable Debenture may be brought in the courts of the Province of British Columbia and, until all amounts due and to become due in respect of

**EXHIBIT B**

- 14 -

the Convertible Redeemable Debenture have been paid, or until any such legal action, suit or proceeding commenced prior to such payment has been concluded, hereby irrevocably consents and irrevocably submits to the non-exclusive jurisdiction of each such court in person and, generally and unconditionally with respect to any action, suit or proceeding for themselves and in respect of their properties, assets and revenues.

15.   **GOVERNING LAW**

This Debenture shall be governed by and construed in accordance with the laws of the Province of British Columbia and the federal laws of Canada applicable therein.

16.   **SEVERABILITY**

If one or more provisions of this Debenture are held to be unenforceable under applicable law, such provisions shall be excluded from this Debenture, and the balance of this Debenture shall be interpreted as if such provisions were so excluded and shall be enforceable in accordance with its terms.

17.   **HEADINGS**

Section headings in this Debenture are for convenience only and shall not be used in the construction of this Debenture.

**[REMAINDER OF THIS PAGE HAS BEEN INTENTIONALLY LEFT BLANK]**

**EXHIBIT B**

- 15 -

IN WITNESS WHEREOF the Company has duly executed this Debenture.

TRUE PHARMASTRIP INC.

per:

Name:
Title:

*Jacques Poujade*
*Chief Executive officer*

EXHIBIT B

- 16 -

Schedule "A"

## CONVERSION NOTICE

2019 CB#023

**TO:   TRUE PHARMASTRIP INC.** (the "Company")

This Conversion Notice shall be delivered pursuant to the terms and conditions of a 8.0% Unsecured Senior Convertible Redeemable Debenture (the "Debenture") dated June 12, 2019 between the Company and JEK SEP/Property, LP, as Lender.

The undersigned Lender hereby irrevocable elects to convert either (i) the entire Principal Amount, or (ii) $ _____ of the Principal Amount, into_____ Shares of the Company at a deemed conversion price of CDN $1.00 per Share in accordance with the terms and conditions contained in the Debenture. The Lender directs that the Shares issuable and deliverable upon the conversion be issued and delivered to the person indicated below. Capitalized terms used herein and not otherwise defined herein which are defined in the Debenture shall have the respective meanings given to such terms in the Debenture.

Dated this            day of              , 20___.


_____
(Signature of Lender)

Print name in which Shares issued on conversion are to be issued, delivered and registered. Note: If Shares are to be issued in the name of a person other than the Lender, the signature must be notarized.

Name                        Address of Registered Lender

**EXHIBIT B**

THE SECURITIES REPRESENTED HEREBY HAVE NOT BEEN REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (THE "U.S. SECURITIES ACT") OR ANY STATE SECURITIES LAWS. THE HOLDER HEREOF, BY PURCHASING SUCH SECURITIES, AGREES FOR THE BENEFIT OF THE ISSUER THAT SUCH SECURITIES MAY BE OFFERED, SOLD, PLEDGED OR OTHERWISE TRANSFERRED, DIRECTLY OR INDIRECTLY, ONLY (A) TO THE ISSUER, (B) OUTSIDE THE UNITED STATES PURSUANT TO RULE 904 OF REGULATION S UNDER THE U.S. SECURITIES ACT AND IN ACCORDANCE WITH APPLICABLE LOCAL LAWS AND REGULATONS, (C) PURSUANT TO THE EXEMPTIONS FROM REGISTRATION UNDER THE U.S. SECURITIES ACT PROVIDED BY RULE 144 OR RULE 144A THEREUNDER, IF AVAILABLE, AND IN ACCORDANCE WITH APPLICABLE STATE SECURITIES LAWS, OR (D) PURSUANT TO ANOTHER APPLICABLE EXEMPTION UNDER THE U.S. SECURITIES ACT AND ANY APPLICABLE STATE SECURITIES LAWS, AFTER, IN THE CASE OF TRANSFERS PURSUANT TO CLAUSE (C) OR (D), PROVIDING TO THE COMPANY A LEGAL OPINION OR OTHER EVIDENCE IN FORM AND SUBSTANCE REASONABLY SATISFACTORY TO THE ISSUER, TO THE EFFECT THAT SUCH TRANSFER DOES NOT REQUIRE REGISTRATION UNDER THE U.S. SECURITIES ACT. DELIVERY OF THIS CERTIFICATE MAY NOT CONSTITUTE GOOD DELIVERY IN SETTLEMENT OF TRANSACTIONS ON STOCK EXCHANGES IN CANADA.

## TRUE PHARMASTRIP INC.

### 8.0% UNSECURED SENIOR CONVERTIBLE REDEEMABLE DEBENTURE

2019 CB#030

| | |
|---|---|
| Date: | June 12, 2019 |
| Principal Amount: | US $2,150,000 (the "Principal Amount") |
| Maturity Date: | June 11, 2021 |
| Lender: | WPE KIDS PARTNERS LP (the "Lender") |
| Lender's Address: | 500 N. Akard Street, Suite 1500, Dallas, Texas 75201 |

Pursuant to the Subscription Agreement accepted by True Pharmastrip Inc. (the "Company") on June 12th, 2019 between the Company and WPE Kids Partners LP (the "Subscription Agreement"), the Company hereby issues this 8.0% Unsecured Senior Convertible Redeemable Debenture in the principal aggregate amount of US $2,150,000 (the "Debenture") to the Lender.

1.    TERMS OF REPAYMENT

The Company, a corporation incorporated under the laws of the Province of British Columbia, for value received hereby acknowledges itself indebted for the above mentioned principal sum and promises to pay to or to the order of the Lender as follows:

i)      interest at a rate of 8.0% per annum, calculated in United States dollars, payable semi-annually in arrears on June 30 and December 31 of each year, commencing December 31, 2019;

ii)     interest shall be paid in the form of common shares ("Shares") of the Company at an issue price of CAN$1.00 per Share; and

iii)    principal payable in full on the Maturity Date.

EXHIBIT B

- 2 -

Payment of both the Principal Amount and accrued interest thereon shall be made at the Lender's address, set out above, or at such other place in British Columbia as the Lender may designate in writing to the Company.

The Company waives presentment for payment, demand, or notice of non-payment of this Debenture in collection, and consents to all extensions of time, renewals, waivers or modifications that may be granted by the holder with respect to the payment or any other provision of this Debenture.

**See Section 3 below, "Exchange Rate" regarding currency conversions.**

2.  **CONVERSION**

    (a)    **Conversion Privilege and Conversion Price**

    Upon and subject to the provisions and conditions of this section, the holder of this Debenture shall have the right, at his option, to convert, at any time and from time to time up to the close of business on the Maturity Date (the "**Expiry Time**"), up to the entire Principal Amount of this Debenture, into Shares of the Company, at a conversion price of CDN$1.00 per Share (the "**Conversion Price**"). No fractional Shares will be issued.

    **See Section 3 below, "Exchange Rate" regarding currency conversions.**

    The number of Shares issuable to the holder of this Debenture hereunder shall be equal to the aggregate Principal Amount being converted divided by the Conversion Price. Such right of conversion shall extend only to the maximum number of Shares into which the aggregate principal amount of this Debenture surrendered for conversion may be converted into Shares at the time of such conversion. No fractional Shares will be issued.

    (b)    **Registration; Book-Entry**

    The Company shall maintain a register (the "**Register**") for the recordation of the names and addresses of the holders of each Debenture and the Principal amount of the Debentures (and stated interest thereon) held by such holders (the "**Registered Debentures**"). The entries in the Register, made in good faith, shall be conclusive and binding for all purposes absent manifest error. The Company and the holders of the Debentures shall treat each Person whose name is recorded in the Register as the owner of a Debenture for all purposes, including, without limitation, the right to receive payments of Principal and Interest, if any, hereunder, notwithstanding notice to the contrary. A Registered Debenture may be assigned or sold in whole or in part only by registration of such assignment or sale on the Register. Upon its receipt of a request to assign or sell all or part of any Registered Debentures by the Lender, the Company shall record the information contained therein in the Register and issue one or more new Registered Debentures in the same aggregate Principal amount as the Principal amount of the surrendered Registered Debenture to the designated assignee or transferee pursuant to Section 6. Notwithstanding anything to the contrary in this Section 2(b), the Lender may assign any Debenture or any portion thereof to an Affiliate (as such term is defined in the *Business Corporations Act* (British Columbia)) of such Lender without delivering a request to assign or sell such Debenture to the Company and the recordation of such assignment or sale in the Register (a "**Related Party Assignment**"); provided, that (x)

EXHIBIT B

- 3 -

the Company may continue to deal solely with such assigning or selling Lender unless
and until such Lender has delivered a request to assign or sell such Debenture or portion
thereof to the Company for recordation in the Register; (y) the failure of such assigning
or selling Lender to deliver a request to assign or sell such Debenture or portion thereof
to the Company shall not affect the legality, validity, or binding effect of such
assignment or sale and (z) such assigning or selling Lender shall, acting solely for this
purpose as a non-fiduciary agent of the Company, maintain a register (the "Related
Party Register") comparable to the Register on behalf of the Company, and any such
assignment or sale shall be effective upon recordation of such assignment or sale in the
Related Party Register. Notwithstanding anything to the contrary set forth herein, upon
conversion of any portion of this Debenture in accordance with the terms hereof, the
Lender shall not be required to physically surrender this Debenture to the Company
unless (A) the full Conversion Amount represented by this Debenture is being converted
or (B) the Lender has provided the Company with prior written notice (which notice may
be included in a Conversion Notice) requesting reissuance of this Debenture upon
physical surrender of this Debenture. The Lender and the Company shall maintain
records showing the Principal and Interest, converted and the dates of such conversions
or shall use such other method, reasonably satisfactory to the Lender and the Company,
so as not to require physical surrender of this Debenture upon conversion.

(c)    Conversion Procedure

The holder of this Debenture desiring to convert such Debenture shall provide the
Company with a Notice of Conversion, in the form attached hereto as Schedule "A", duly
executed by the registered holder or his legal representatives or his attorney duly
appointed by an instrument in writing in form and execution satisfactory to the Company
exercising his right to convert this Debenture in accordance with the provisions of this
Section. The Lender shall also specify the name or names, with addresses in which the
certificate or certificates representing the Shares issuable upon conversion shall be
registered. Thereupon the Lender or his nominee or assignee shall be entitled to be
entered in the books of the Company as at the date of conversion (being the date upon
which the Company receives a Notice of Conversion) as the holder of that number of
Shares into which this Debenture is convertible in accordance with the provisions of this
Section and, as soon as practicable thereafter, the Company shall deliver to the holder, or
his nominee or assignee, certificates for such Shares, but in any event, within three (3)
business days of receipt of the notice of conversion. If the Company fails to transmit to
the Lender the Shares within 3 Business Days of receipt of the notice of conversion, then
the Lender will have the right to rescind such conversion. The Company shall be
responsible for any and all taxes that may be payable with respect to the issuance or
delivery of the Shares; provided, however, that the Lender shall not be obligated to pay
any transfer taxes resulting from any transfer requested by any Lender in connection with
any such conversion. No fractional Shares or scrip representing fractional Shares shall be
issued upon the conversion of this Debenture. As to any fraction of a Share which the
Lender would otherwise be entitled to purchase upon such conversion, the Company
shall, at its election, either pay a cash adjustment in respect of such final fraction in an
amount equal to such fraction multiplied by the Conversion Price or round up to the next
whole Unit. The Company covenants and agrees to indemnify the Lender for any losses
it suffers, directly or indirectly, as a result of the Lender failing to provide the certificates
as stipulated in this Section 2(c). Partial exercises of this Debenture resulting in purchases
of a portion of the total number of Shares available hereunder shall have the effect of
lowering the outstanding number of Shares purchasable hereunder in an amount equal to

**EXHIBIT B**

- 4 -

the applicable number of Shares purchased. If this Debenture shall have been exercised in part, the Company shall, at the request of a Lender and upon surrender of this Debenture, at the time of delivery of the Shares, deliver to the Lender a new Debenture evidencing the rights of the Lender to purchase the unpurchased Shares called for by this Debenture, which new Debenture shall in all other respects be identical with this Debenture. The Lender and the Company shall maintain records showing the number of Shares purchased and the date of such purchases. The Company shall deliver any objection to any notice of conversion within one (1) Business Day of receipt of such notice. The Lender and any assignee, by acceptance of this Debenture, acknowledge and agree that, by reason of the provisions of this paragraph, following the purchase of a portion of the Shares hereunder, the number of Shares available for purchase hereunder at any given time may be less than the amount stated on the face hereof.

(d)    Adjustments

    (i)    Stock Dividends and Splits. Subject to subsection (ii) below, the Conversion Price shall be subject to adjustment from time to time in the events and in the manner provided in this section.

        (A)    If and whenever at any time after the date hereof and prior to the Expiry Time the Company shall:

           (1)    issue common shares or otherwise makes a distribution or distributions on its Shares (as defined in the Subscription Agreement) or any other equity or equity equivalent securities payable in Shares (which, for avoidance of doubt, shall not include any Shares issued by the Company upon conversion of this Debenture) to all or substantially all the holders of the Shares as a stock dividend;

           (2)    subdivide its outstanding common shares into a greater number of shares;

           (3)    consolidate (including by way of reverse stock split) its outstanding common shares into a smaller number of shares: or

           (4)    issues by reclassification any Shares of the Company,

(any of such events in (1), (2) (3) and (4) being called a "Common Share Reorganization"), then the Conversion Price shall be adjusted, effective immediately after the record date at which the holders of Shares are determined for the purpose of the Common Share Reorganization, by multiplying the Conversion Price in effect immediately prior to such record date by a fraction, the numerator of which shall be the number of common shares outstanding on such record date before giving effect to such Common Share Reorganization and the denominator of which shall be the number of Common Shares (excluding treasury shares, if any) outstanding immediately after giving effect to such Common Share Reorganization (including, in the case where securities exchangeable for or convertible into common shares are distributed, the number of common shares that would have been outstanding had all such securities

EXHIBIT B

- 5 -

been exchanged for or converted into common shares on such record date), and the number of Shares issuable upon conversion of this Debenture shall be proportionately adjusted such that the aggregate Conversion Price of this Debenture shall remain unchanged.

(B) **Subsequent Rights Offerings.** In addition to any adjustments pursuant to Section 2(c)(i) above, if and whenever at any time after the date hereof and prior to the Maturity Date the Company shall fix a record date for the issuance of rights, options, warrants, securities or other property to all or substantially all of the holders of any class of securities under which such holders are entitled to acquire common shares or securities ("Purchase Rights"), then the Lender will be entitled to acquire, upon the terms applicable to such Purchase Rights, the aggregate Purchase Rights which the Lender could have acquired if the Lender had held the number of Shares acquirable upon complete conversion of this Debenture immediately before the date on which a record is taken for the grant, issuance or sale of such Purchase Rights, or, if no such record is taken, the date as of which the record holders of Common Shares are to be determined for the grant, issue or sale of such Purchase Rights.

(C) **Pro Rata Distributions.** During such time as this Debenture is outstanding, if the Company (or any successor corporation), as applicable, shall declare or make any dividend or other distribution of its assets (or rights to acquire its assets) to holders of Shares, by way of return of capital or otherwise (including, without limitation, any distribution of cash, stock or other securities, property or options by way of a dividend, spin off, reclassification, corporate rearrangement, scheme of arrangement or other similar transaction) (a "**Distribution**"), at any time after the issuance of this Debenture, then, in each such case, the Lender shall be entitled to participate in such Distribution to the same extent that the Lender would have participated therein if the Lender had held the number of Shares acquirable upon complete conversion of this Debenture immediately before the date of which a record is taken for such Distribution, or, if no such record is taken, the date as of which the record holders of Shares are to be determined for the participation in such Distribution.

(D) **Fundamental Transaction.** If, at any time while this Debenture is outstanding, (i) the Company, directly or indirectly, in one or more related transactions effects any merger or consolidation of the Company with or into another Person, (ii) the Company, directly or indirectly, effects any sale, lease, license, assignment, transfer, conveyance or other disposition of all or substantially all of its assets in one or a series of related transactions, (iii) any, direct or indirect, purchase offer, tender offer or exchange offer (whether by the Company or another Person) is completed pursuant to which holders of Shares are permitted to sell, tender or exchange their Shares for other securities, cash or property and has been accepted by the holders of 50% or more of the outstanding Shares (iv) the Company, directly or indirectly, in one or more related transactions effects any reclassification, reorganization or recapitalization of the Shares or any compulsory share exchange

**EXHIBIT B**

- 6 -

pursuant to which the Shares are effectively converted into or exchanged for other securities, cash or property, or (v) the Company, directly or indirectly, in one or more related transactions consummates a securities purchase agreement or other business combination (including, without limitation, a reorganization, recapitalization, spin-off or scheme of arrangement) with another Person or group of Persons whereby such other Person or group acquires more than 50% of the outstanding Shares (not including any Shares held by the other Person or other Persons making or party to, or associated or affiliated with the other Persons making or party to, such stock or share purchase agreement or other business combination) (each a "**Fundamental Transaction**"), then, upon any subsequent conversion of this Debenture, the Lender shall have the right to receive, for each Share that would have been issuable upon such exercise immediately prior to the occurrence of such Fundamental Transaction, at the option of the Lender, the number of Shares of the successor or acquiring corporation or of the Company, if it is the surviving corporation, and any additional consideration (the "**Alternate Consideration**") receivable as a result of such Fundamental Transaction by a holder of the number of Shares for which this Debenture is convertible immediately prior to such Fundamental Transaction. For purposes of any such conversion, the determination of the Conversion Price shall be appropriately adjusted to apply to such Alternate Consideration based on the amount of Alternate Consideration issuable in respect of one Share in such Fundamental Transaction, and the Company shall apportion the Conversion Price among the Alternate Consideration in a reasonable manner reflecting the relative value of any different components of the Alternate Consideration. If holders of Shares are given any choice as to the securities, cash or property to be received in a Fundamental Transaction, then the Lender shall be given the same choice as to the Alternate Consideration it receives upon any conversion of this Debenture following such Fundamental Transaction. The Company shall cause any successor entity in a Fundamental Transaction in which the Company (or any successor corporation), as applicable, is not the survivor (the "**Successor Entity**") to assume in writing all of the obligations of the Company under this Debenture in accordance with the provisions of this Section 2(D). At the option of the Successor Entity, it may deliver to the Lender in exchange for this Debenture a security of the Successor Entity evidenced by a written instrument substantially similar in form and substance to this Debenture which is convertible for a corresponding number of Shares, as applicable, of such Successor Entity (or its parent entity) equivalent to the Shares acquirable and receivable upon conversion of this Debenture prior to such Fundamental Transaction, and with a conversion price which applies the Conversion Price hereunder to such Shares (but taking into account the relative value of the Shares pursuant to such Fundamental Transaction and the value of such Shares, such number of Shares and such conversion price being for the purpose of protecting the economic value of this Debenture immediately prior to the consummation of such Fundamental Transaction). Upon the occurrence of any such Fundamental Transaction, the Successor Entity shall succeed to, and be substituted for (so that from and after the date of such Fundamental Transaction, the provisions of this

EXHIBIT B

- 7 -

Debenture referring to the "Company" shall refer instead to the Successor Entity), and may exercise every right and power of the Company, and shall assume all of the obligations of the Company under this Debenture with the same effect as if such Successor Entity had been named as the Company herein. "Person" means any individual, partnership, joint venture, firm, corporation, association, limited liability company, trust or other enterprise or any governmental or political subdivision or any agency, department or instrumentality thereof.

(ii)    Rules for Calculating Adjustments (For the purpose of subsection (i)):

(A)    The adjustments provided for in subsection (i) are cumulative and such adjustments shall be made successively whenever an event referred to therein shall occur, subject to the following subsections of this subsection (ii).

(B)    No adjustment in the Conversion Price shall be required unless such adjustment would result in a change of at least 1% in the prevailing Conversion Price, provided, however, that any adjustments which, except for the provisions of this subsection (ii)(B), would otherwise have been required to be made shall be carried forward and taken into account in any subsequent adjustment.

(C)    If a dispute shall at any time arise with respect to adjustments provided for in subsection (i), such dispute shall be determined by the Company's auditors, or if they are unable or unwilling to act, by such other firm of independent chartered accountants as may be selected by the directors and any such determination shall be final and conclusive and binding upon the Company and the holder.

(D)    If the Company shall set a record date to determine the holders of the common shares for the purpose of entitling them to receive any dividend or distribution or any subscription or purchase rights and shall, thereafter and before the distribution to such shareholders of any such dividend, distribution or subscription or purchase rights, legally abandon its plan to pay or deliver such dividend, distribution or subscription or purchase rights, then no adjustment in the Conversion Price or the number of Shares issuable upon conversion of the Debenture shall be required by reason of the setting of such record date.

(E)    In the absence of resolution of the directors fixing a record date for a Common Share Reorganization, Capital Reorganization, Rights Offering or Special Distribution, the Company shall be deemed to have fixed as the record date therefor the date on which the Common Share Reorganization, Capital Reorganization, Rights Offering or Special Distribution is effected.

(F)    As a condition precedent to the taking of any action which would require any adjustment in any of the conversion rights pursuant to the Debenture, including the Conversion Price and the number or class of shares or other securities which are to be received upon the conversion thereof, the

EXHIBIT B

- 8 -

Company shall take any corporate action which may, in the opinion of counsel, be necessary in order that the Company have unissued and reserved in its authorized share capital and may validly and legally issue as fully paid and non-assessable all the shares or other securities which the holder is entitled to receive on the total conversion thereof in accordance with the provisions thereof.

(G)    If, in the opinion of the board of directors, the provisions of subsection (i) are not strictly applicable, or if strictly applicable would not fairly protect the rights of the holder in accordance with the intent and purposes hereof, the board of directors shall make any adjustment in such provisions for the benefit of the holder as the board of directors deems appropriate.

(H)    If at any time a question or dispute arises with respect to adjustments provided for in subsection 2(C)(i) such question or dispute will be conclusively determined by the auditor of the Company or, if they are unable or unwilling to act, by such other firm of chartered accountants as may be selected by action of directors of the Company and any such determination, subject to regulatory approval and absent manifest error, will be binding upon the Company and the Borrower. The Company will provide such auditor or chartered accountant with access to all necessary records of the Company.

(iii)    Whenever the number or class of shares or other securities which are to be received upon the conversion of this Debenture or the Conversion Price shall require an adjustment pursuant to subsection (ii), the Company shall forthwith obtain a certificate signed by a senior officer of the Company, setting forth in reasonable detail, the event requiring the adjustment and the method by which such adjustment was calculated (including an opinion on the fair value, as determined by the board of directors of the Company, of any evidences of indebtedness, shares of stock, other securities or property or warrants, options or other subscription or purchase rights referred to in subsection (ii)) and specifying the number or class of shares or other securities which are to be received upon the conversion hereof and describing the numbers and kind of any other securities issuable upon conversion of this Debenture, and any change in the Conversion Price thereof, after giving effect to such adjustment or change. The Company shall promptly, and in any case within 30 days after the making of such adjustment, cause a signed copy of such certificate to be delivered to the Lender. The Company shall keep at its office or agency copies of all such certificates and cause the same to be available for inspection upon receipt of reasonable notice at said office during normal business hours by the Lender.

(iv)    If (A) the Company shall declare a dividend (or any other distribution in whatever form) on its common shares, (B) the Company shall declare a special nonrecurring cash dividend on or a redemption of its common shares, (C) the Company shall authorize the granting to all holders of its common shares rights or warrants to subscribe for or purchase any shares of capital stock of any class or of any rights, (D) the approval of any stockholders of the Company shall be required in connection with any reclassification of its common shares, any consolidation or merger to which the Company is a party, any sale or transfer of

EXHIBIT B

- 9 -

all or substantially all of the assets of the Company, or any compulsory share exchange whereby the Common Stock is converted into other securities, cash or property, or (E) the Company shall authorize the voluntary or involuntary dissolution, liquidation or winding up of the affairs of the Company, then, in each case, the Company shall cause to be delivered by facsimile or email to the Lender at its last facsimile number or email address as it shall appear upon the Register of the Company, at least 20 calendar days prior to the applicable record or effective date hereinafter specified, a notice stating (x) the date on which a record is to be taken for the purpose of such dividend, distribution, redemption, rights or warrants, or if a record is not to be taken, the date as of which the holders of its common shares of record to be entitled to such dividend, distributions, redemption, rights or warrants are to be determined or (y) the date on which such reclassification, consolidation, merger, sale, transfer or share exchange is expected to become effective or close, and the date as of which it is expected that holders of its common shares of record shall be entitled to exchange their common shares for securities, cash or other property deliverable upon such reclassification, consolidation, merger, sale, transfer or share exchange; provided that the failure to deliver such notice or any defect therein or in the delivery thereof shall not affect the validity of the corporate action required to be specified in such notice.  The Lender shall remain entitled to convert this Debenture during the period commencing on the date of such notice to the effective date of the event triggering such notice except as may otherwise be expressly set forth herein.

(d)    Reservation of Securities

The Company covenants and agrees that, so long as any part of the Principal Amount or interest under this Debenture is outstanding and entitled to the right of conversion herein provided, it will at all times ensure that all of the Shares upon a Conversion and Shares issuable in lieu of interest payable on this Debenture, have been duly created, reserved, allotted for issuance and authorized for issuance, so as to enable all of such outstanding Principal Amount of the Debenture to be converted into Shares upon the basis and upon the terms and conditions herein provided in this section 2, and that upon being issued, all such securities will be validly issued as fully paid and non-assessable securities in the capital of the Company.

(e)    Regulatory Approvals and Filing in Connection with Conversion

If any Shares of the Company allotted or to be allotted for the purpose of conversion of this Debenture require registration with or approval of any governmental or other authority under any laws of Canada or a province of Canada before such securities may be validly issued upon conversion and traded on any stock exchange on which the common shares are then listed and posted for trading, the Company will take such action as may be necessary to secure such registration or approval, as the case may be.

3.    EXCHANGE RATE

The exchange rate for the purpose of converting this Debenture into Shares or the payment of interest in Shares shall be fixed at $1.330 Canadian dollars for one (1) United States. By way of illustration, a US$1,000 Debenture shall have an equivalent Canadian dollar value of $1,330 and be convertible into 1,330 Shares. Alternatively, an interest payment of US$60 dollars shall have

EXHIBIT B

- 10 -

an equivalent Canadian dollar value of $79.80 pursuant to which 79 Shares are issuable. No fractional Shares will be issued.

4.     REDEMPTION

Subject to the provisions of this Section, if at any time after the date that is the later of (i) four months from the issuance date of the Debenture or (ii) the date the Company becomes a reporting issuer under applicable Canadian securities legislation, the VWAP for each of any 10 consecutive Trading Days (such period the "Threshold Period"), exceeds CDN$1.50 (subject to adjustment for reverse and forward stock splits, stock dividends, stock combinations and other similar transactions of the Common Stock that occur after the original issue date), the Company may, within 1 Trading Day after the end of any such Threshold Period, deliver a written notice to the Lender (an "Optional Redemption Notice" and the date such notice is deemed delivered hereunder, the "Optional Redemption Notice Date") of its irrevocable election to redeem all (and not less than all) of the then outstanding principal amount of this Debenture for cash in an amount equal to principal amount of the Debenture plus any accrued interest on the 20th Trading Day following the Optional Redemption Notice Date (such date, the "Optional Redemption Date", such 10 Trading Day period, the "Optional Redemption Period" and such redemption, the "Optional Redemption"). The Optional Redemption Amount is payable in full on the Optional Redemption Date. The Company covenants and agrees that it will honor all Notices of Conversion tendered from the time of delivery of the Optional Redemption Notice through the date all amounts owing thereon are due and paid in full. The Company's determination to pay an Optional Redemption in cash shall be applied ratably to all of the holders of the then outstanding Debentures based on their (or their predecessor's) initial purchases of Debentures. If any portion of the payment pursuant to an Optional Redemption shall not be paid by the Company by the applicable due date, interest shall accrue thereon at an interest rate equal to the lesser of 18% per annum or the maximum rate permitted by applicable law until such amount is paid in full. Notwithstanding anything herein contained to the contrary, if any portion of the Optional Redemption Amount remains unpaid after such date, the Lender may elect, by written notice to the Company given at any time thereafter, to invalidate such Optional Redemption, *ab initio*, and, the Company shall have no further right to exercise such Optional Redemption. Notwithstanding anything to the contrary in this Section, the Company's determination to redeem in cash shall be applied ratably among the Lenders. The Lender may elect to convert the outstanding principal amount of the Debenture prior to actual payment in cash for any redemption under this Section by the delivery of a Notice of Conversion to the Company in accordance with section 2(c) above.

5.     DEFAULT

If any of the following events shall occur and be continuing unremedied for a period of thirty (30) days (an "Event of Default"), the Lender may, at its option, demand immediate payment of the entire outstanding Principal Amount of this Debenture and all due and accrued interest thereon, and all other indebtedness of the Company to the Lender hereunder or otherwise shall thereupon become immediately due and payable, namely:

(a)     the non-payment when due (whether at stated maturity, upon acceleration, upon required prepayment or otherwise) of any amounts owing to the Lender under this Debenture and such non-payment continues for five (5) Business Days;

(b)     the Company becomes insolvent, or generally does not pay its debts as they become due, or admits in writing its inability to pay its debts, or makes a general assignment for the benefit of creditors;

**EXHIBIT B**

- 11 -

(c)      the Company initiates proceedings under the *Companies' Creditors Arrangement Act;*

(d)      insolvency, receivership or bankruptcy proceedings are commenced against the Company;

(e)      Upon a "**Change in Control**" of the Company, meaning: (i) an acquisition of any voting securities of the Company (the "**Voting Securities**") by any "person" (as the term "person" is used for purposes of Section 13(d) or Section 14(d) of the Securities Exchange Act of 1934, as amended (the "**Exchange Act**"), immediately after which such person has "beneficial ownership" (within the meaning of Rule 13d-3 promulgated under the Exchange Act) of 50% or more of the combined voting power of the Company's then outstanding Voting Securities without the approval of the Company's Board of Directors (the "**Board**"); (ii) a merger or consolidation that results in more than 50% of the combined voting power of the Company's then outstanding Voting Securities of the Company or its successor changing ownership (whether or not approved by the Board); (iii) the sale of all or substantially all of the Company's assets in one or a series of related transactions; or (iv) approval by the members of the Company of a plan of complete liquidation of the Company. The Company shall give the Lender no less than thirty (30) days written notice of a potential Change in Control;

(f)      if any final judgment for the payment of money in excess of $100,000 is rendered against the Company and the Company does not discharge the same or cause it to be discharged or vacated within ninety (90) days from the entry thereof, or does not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and does not secure a stay of execution pending such appeal within ninety (90) days after the entry thereof;

(g)      if the Company defaults in any material respect under any other secured or unsecured material indebtedness for borrowed money, other than any indebtedness owed to officers, directors or stockholders of the Company, mortgage or security agreement covering any part of its property;

(h)      if the Company defaults in the observance or performance of any other material term, agreement, covenant or condition of this Debenture, and the Company fails to remedy such default within fifteen (15) days after notice by the Lender to the Company of such default, or, if such default is of such a nature that it cannot with due diligence be cured within said fifteen (15) day period, if the Company fails, within said fifteen (15) days, to commence all steps necessary to cure such default, and fails to complete such cure within forty five (45) days after the end of such fifteen (15) day period;

(i)      except for specific defaults set forth in this Section, if the Company defaults in the observance or performance of any material term, agreement or condition of the Debenture, and such default continues after the end of any applicable cure period provided for therein; or

(j)      if any of the following exist uncured for fifteen (15) days following written notice to the Company: (i) the failure, subject to applicable survival periods, of any representation or warranty made by the Company to the Lender pursuant to the Subscription Agreement to be true and correct in all material respects or (ii) the Company fails to provide the Lender with any certification or evidence required to be provided pursuant to the terms of this Debenture;

**EXHIBIT B**

– 12 –

Commencing 5 days after the occurrence of any Event of Default that results in the eventual acceleration of this Debenture, the interest rate on this Debenture shall accrue at an interest rate equal to the lesser of 18% per annum or the maximum rate permitted under applicable law. Upon the payment in full, the Lender shall promptly surrender this Debenture to or as directed by the Company. In connection with such acceleration described herein, the Lender need not provide, and the Company hereby waives, any presentment, demand, protest or other notice of any kind, and the Lender may immediately and without expiration of any grace period enforce any and all of its rights and remedies hereunder and all other remedies available to it under applicable law.

6.    COVENANTS

As long as any portion of this Debenture remains outstanding, unless the holders of at least 51% in principal amount of the then outstanding Debentures shall have otherwise given prior written consent, the Company shall not, directly or indirectly, enter into, create, incur, assume, guarantee or suffer to exist any indebtedness for borrowed money of any kind, including, but not limited to, a guarantee, on or with respect to any of its property or assets now owned or hereafter acquired or any income or profits therefrom.

7.    TRANSFER AND ASSIGNMENT

The Lender is the person entitled to receive the principal of this Debenture and all other monies payable hereunder and to give a discharge hereof. Subject to compliance with any applicable securities laws, this Debenture and all rights hereunder (including, without limitation, any registration rights) are transferable, in whole or in part, upon surrender of this Debenture at the principal office of the Company or its designated agent, together with a written assignment of this Debenture duly executed by the Lender or its agent or attorney and funds sufficient to pay any transfer taxes payable upon the making of such transfer. Upon such surrender and, if required, such payment, the Company shall execute and deliver a new Debenture or Debentures in the name of the assignee or assignees, as applicable, and in the denomination or denominations specified in such instrument of assignment, and shall issue to the assignor a new Debenture evidencing the portion of this Debenture not so assigned, and this Debenture shall promptly be cancelled. Notwithstanding anything herein to the contrary, the Lender shall not be required to physically surrender this Warrant to the Company unless the Lender has assigned this Debenture in full, in which case, the Lender shall surrender this Debenture to the Company within three (3) Business Days of the date the Lender delivers an assignment form to the Company assigning this Debenture full. The Debenture, if properly assigned in accordance herewith, may be exercised by a new holder for the purchase of Shares without having a new Debenture issued.

8.    MUTILATED, DESTROYED, LOST OR STOLEN DEBENTURES.

In case this Debenture shall become mutilated or defaced, or be destroyed, lost or stolen, the Company shall execute and deliver a new debenture of like principal amount in exchange and substitution for the mutilated or defaced Debenture, or in lieu of and in substitution for the destroyed, lost or stolen Debenture. In the case of a mutilated or defaced Debenture, the Lender shall surrender such Debenture to the Company for exchange. In the case of any destroyed, lost or stolen Debenture, the Lender shall furnish to the Company: (a) evidence to the Company's satisfaction of the destruction, loss or theft of such Debenture and (b) such security or indemnity as may be reasonably required by the Company to hold the Company harmless with respect to the replacement of such Debenture.

EXHIBIT B

- 13 -

9.    **WAIVER OF DEMAND, PRESENTMENT, ETC.**

The Company hereby expressly waives demand and presentment for payment, notice of nonpayment, protest, notice of protest, notice of dishonor, notice of acceleration or intent to accelerate, bringing of suit and diligence in taking any action to collect amounts called for hereunder and shall be directly and primarily liable for the payment of all sums owing and to be owing hereunder, regardless of and without any notice, diligence, act or omission as or with respect to the collection of any amount called for hereunder.

10.    **PAYMENT**

Except as otherwise provided for herein, all payments with respect to this Debenture shall be made in lawful currency of the United States of America by cheque or wire transfer of immediately available funds, at the option of the Lender, at the principal office of the Lender or such other place or places or designated accounts as may be reasonably specified by the Lender in a written notice to the Company at least one (1) business day prior to payment. Payment shall be credited first to the accrued interest then due and payable and the remainder applied to principal.

11.    **ASSIGNMENT**

The rights and obligations of the Company and the Lender of this Debenture shall be binding upon, and inure to the benefit of, the permitted successors, assigns, heirs, administrators and transferees of the parties hereto. This Debenture is not assignable by the Lender without the written consent of the Company.

12.    **WAIVER AND AMENDMENT**

Any provision of this Debenture, including, without limitation, the due date hereof, and the observance of any term hereof, may be amended, waived or modified (either generally or in a particular instance and either retroactively or prospectively) only with the written consent of the Company and the holders of greater than 50% of the face amount of all then outstanding Debenture.

13.    **NOTICES**

Any notice, request or other communication required or permitted hereunder shall be in writing and shall be deemed to have been duly given if personally delivered or mailed by registered or certified mail, postage prepaid, or delivered by facsimile transmission, to the Company at 1383 West 8th Avenue, Vancouver, B.C. V6H 3W4, Attention: Chief Executive Officer, or to the Lender at its address or facsimile number set forth in the records of the Company. Any party hereto may by notice so given change its address for future notice hereunder. Notice shall conclusively be deemed to have been given when personally delivered or when deposited in the mail in the manner set forth above and shall be deemed to have been received when delivered or, if notice is given by facsimile transmission, when delivered with confirmation of receipt.

14.    **CONSENT TO JURISDICTION**

The Company irrevocably consents and agrees for the benefit of the Lender that any legal action, suite or proceeding against it with respect to its legislations, liabilities or any other matter arising out of or in connection with this Convertible Redeemable Debenture may be brought in the courts of the Province of British Columbia and, until all amounts due and to become due in respect of

**EXHIBIT B**

- 14 -

the Convertible Redeemable Debenture have been paid, or until any such legal action, suit or proceeding commenced prior to such payment has been concluded, hereby irrevocably consents and irrevocably submits to the non-exclusive jurisdiction of each such court in person and, generally and unconditionally with respect to any action, suit or proceeding for themselves and in respect of their properties, assets and revenues.

15.    **GOVERNING LAW**

This Debenture shall be governed by and construed in accordance with the laws of the Province of British Columbia and the federal laws of Canada applicable therein.

16.    **SEVERABILITY**

If one or more provisions of this Debenture are held to be unenforceable under applicable law, such provisions shall be excluded from this Debenture, and the balance of this Debenture shall be interpreted as if such provisions were so excluded and shall be enforceable in accordance with its terms.

17.    **HEADINGS**

Section headings in this Debenture are for convenience only and shall not be used in the construction of this Debenture.

[REMAINDER OF THIS PAGE HAS BEEN INTENTIONALLY LEFT BLANK]

EXHIBIT B

- 45 -

IN WITNESS WHEREOF the Company has duly executed this Debenture.

TRUE PHARMASTRIP INC.

per:

Name:
Title:

Jacques Poujade
Chief Executive Officer

EXHIBIT B

- 16 -

## Schedule "A"

## CONVERSION NOTICE

2019 CB#030

**TO:    TRUE PHARMASTRIP INC.** (the "Company")

This Conversion Notice shall be delivered pursuant to the terms and conditions of a 8.0% Unsecured Senior Convertible Redeemable Debenture (the "Debenture") dated June 12, 2019 between the Company and WPE Kids Partners LP, as Lender.

The undersigned Lender hereby irrevocable elects to convert either (i) the entire Principal Amount, or (ii) $ _____ of the Principal Amount, into _____ Shares of the Company at a deemed conversion price of CDN $1.00 per Share in accordance with the terms and conditions contained in the Debenture. The Lender directs that the Shares issuable and deliverable upon the conversion be issued and delivered to the person indicated below. Capitalized terms used herein and not otherwise defined herein which are defined in the Debenture shall have the respective meanings given to such terms in the Debenture.

Dated this _____    day of _____    , 20____.


_____
(Signature of Lender)

Print name in which Shares issued on conversion are to be issued, delivered and registered. Note: If Shares are to be issued in the name of a person other than the Lender, the signature must be notarized.

Name                    Address of Registered Lender

EXHIBIT B

## SCHEDULE "B"

## COPY OF NOTICE OF DEFAULT

EXHIBIT B

## NOTICE OF DEFAULT

**TO:**            **True Pharmastrip Inc. (the "Company")**

**DELIVERY BY:**   **Courier to:**              **1383 West 8th Avenue**
                                             **Vancouver, B.C. V6H 3W4**
                                             **Attention: Chief Executive Officer**

                   **Registered Mail to:**      **1383 West 8th Avenue**
                                             **Vancouver, B.C. V6II 3W4**
                                             **Attention: Chief Executive Officer**

                   **Facsimile Transmission to**   **416-360-3761**
                   **True Pharmastrip Inc. c/o**
                   **Sui & Company:**

                   **Email to:**                jacques@dislvs.com

**FROM:**          **JEK SEP/Property, LP and WPE Kids Partners LP**

**RE:**            **Issuance of convertible debentures pursuant to a subscription agreement
                   dated March 29, 2019  and as evidenced by convertible debentures dated
                   June 12, 2019 (the "Debentures")**

**AND RE:**        **Default in repayment of US $2,650,000 principal amount of Debentures on
                   maturity date of June 11, 2021 (the "Maturity Date")**

---

You are hereby notified that the Debentures referenced in Schedule "A" annexed hereto were not repaid as scheduled on the Maturity Date of such Debentures and, accordingly, the Debentures are now in default.

You are hereby advised that failing repayment or any other cure to the Event of Default (as such term is defined in the Debentures) arising as a result of the non-payment of the principal amount of the Debentures on the Maturity Date, being completed on or before July 19, 2021, being the date which shall be thirty (30) days from June 19, 2021 (the date which was five business days following the scheduled Maturity Date), the undersigned shall commence any enforcement proceedings available to the undersigned to obtain repayment of the principal amount of the Debentures, including, but not limited to, insolvency or litigation proceedings in any applicable court or jurisdiction.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK –
SIGNATURE PAGE TO FOLLOW]*

G:\WP51\H 17001-18000\17249\Documents\Notice of Default\Notice of Default.HH.BlkIn.June 24, 2021.docx

**EXHIBIT B**

Dated at _DALLAS, TX_____, this _25th_ day of June, 2021.

**JEK SEP/PROPERTY, LP**

BY: JEK SEP/property MANAGEMENT, LLC, its general partner

Name: JENNIFER E. Kirtland
Title: MANAGER

I HAVE AUTHORITY TO BIND THE LIMITED
PARTNERSHIP

**WPE KIDS PARTNERS LP**

_____

Name:
Title:

I HAVE AUTHORITY TO BIND THE LIMITED
PARTNERSHIP

*[SIGNATURE PAGE TO NOTICE OF DEFAULT]*

EXHIBIT B

Dated at _Dallas, TX_____, this _24th_ day of June, 2021.

JEK SEP/PROPERTY, LP

_____
Name: Jennifer E. Kirtland
Title: Manager

I HAVE AUTHORITY TO BIND THE LIMITED
PARTNERSHIP

**WPE KIDS PARTNERS LP**
By: WPE Genpar, LLC, its general partner
By: Entity Manager, Inc., its manager

_____
Name: Julie Krupala
Title: President of Manager of General Partner

I HAVE AUTHORITY TO BIND THE LIMITED
PARTNERSHIP

*[SIGNATURE PAGE TO NOTICE OF DEFAULT]*

EXHIBIT B

SCHEDULE "A"

| Debenture Holder Name | Debenture Principal Amount | Debenture Number | Maturity Date |
|---|---|---|---|
| JEK SP/PROPERTY, LP | US $500,000 | 2019 CB#023 | June 11, 2021 |
| WPE KIDS Partners LP | US $2,150,000 | 2019 CB#030 | June 11, 2021 |

EXHIBIT B

PROOF OF SERVICE

State of California          )
County of Los Angeles          )

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action.  My business address is 8383 Wilshire Blvd., Ste. 935, Beverly Hills CA 90211. On May 1, 2023 I served the within document(s):

CROSS-COMPLAINT OF LEJOS INVESTMENTS, LLC; GORDON SMITH; RICKY LYONS; ROBERT CHAIKIN AND BPMD TEXAS PARTNERS, LP

by placing true  copies thereof in sealed envelopes as stated on the attached mailing list.

_____

**BY FACSIMILE TRANSMISSION**  I transmitted said document(s) via facsimile machine pursuant to C.R.C. rule 2.306  to fax number FACSIMILE NUMBER.  The facsimile machine I used complied with rule 2.306 and no error was reported by the machine.  Pursuant to rule 2.306, I caused the machine to print a transmission record of the transmission, a copy of which is attached to this declaration.

**BY MAIL**  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice a true copy would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

**BY PERSONAL SERVICE**  I caused personal delivery of  said document(s) to the offices of the addressee(s) as set forth on the attached mailing list.

**BY 2-DAY DELIVERY SERVICE**  I caused such envelope to be deposited with a 2-day delivery service for delivery on the individuals listed on the attached service list.

_xx_   **BY E-MAIL OR ELECTRONIC TRANSMISSION**.  Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed on the service list.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

_xx_   (State)  I declare under penalty of perjury under the laws of the State of California that  the above is true and correct.

(Federal)  I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on May 1, 2023, at Beverly Hills, California.

_Amy Arnold_
Amy Arnold

1

**SPERTUS, LANDES & UMHOFER, LLP**

2   James Spertus

    M. Anthony Brown

3   1990 South Bundy Dr., Suite 705

    Los Angeles, CA 90025

4   Telephone: (310) 826-4700

    Facsimile: (310) 826-4711

5   Email: jspertus@spertuslaw.com

    tbrown@spertuslaw.com

6

7   *Attorneys for True Pharmastrip Inc.*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE

# EXHIBIT 8

Case Number: 22STCV04546   Hearing Date: June 27, 2023   Dept: 30

Dept. 30

Calendar No.

Robb Evans & Associates, LLC vs. Redwood Scientific Technologies, Inc., et. al., Case No. 22STCV04546

Tentative Ruling re: Demurrer to Cross-Complaint of Ricky Lyons, Gordon Smith, Robert Chaikin, BMPD Texas Partners, LP, Lejos Investments, LLC

Defendant/Cross-Complainant True Pharmastrip, Inc. (TPI) demurs to the Cross-Complaint of Ricky Lyons, Gordon Smith, Robert Chaikin, BMPD Texas Partners, LP, and Lejos Investments, LLC (collectively, Cross-Complainants). The demurrer is sustained without leave to amend.

In reviewing the legal sufficiency of a complaint against a demurrer, a court will treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of law. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*), *C & H Foods Co. v. Hartford Ins. Co.* (1984) 163 Cal.App.3d 1055, 1062.) It is well settled that a "demurrer lies only for defects appearing on the face of the complaint[.]" (*Stevens v. Superior Court* (1999) 75 Cal.App.4th 594, 601.) "The rules by which the sufficiency of a complaint is tested against a general demurrer are well settled. We not only treat the demurrer as admitting all material facts properly pleaded, but also give the complaint a reasonable interpretation, reading it as a whole and its parts in their context." (*Guclimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 38 (internal quotes omitted).) For purposes of ruling on a demurrer, the complaint must be construed liberally by drawing reasonable inferences from the facts pleaded. (*Wilner v. Sunset Life Ins. Co.* (2000) 78 Cal.App.4th 952, 958.)

When ruling on a demurrer, the Court may only consider the complaint's allegations or matters which may be judicially noticed. (*Blank, supra*, 39 Cal.3d at 318.) The Court may not consider any other extrinsic evidence or judge the credibility of the allegations plead or the difficulty a plaintiff may have in proving his allegations. (*Ion Equip. Corp. v. Nelson* (1980) 110 Cal.App.3d 868, 881.) A demurrer is properly sustained only when the complaint, liberally construed, fails to state facts sufficient to constitute any cause of action. (*Kramer v. Intuit Inc.* (2004) 121 Cal.App.4th 574, 578.)

Plaintiff-in-Interpleader Robb Evans & Associates, LLC commenced this interpleader action on April 15, 2022, as the appointed Receiver in *Federal Trade Commission v. Jason Cardiff, et al.*, pending in the United States District Court for the Central District of California (Case No. 5:18-cv-02104-DMG-PLA). (Comp. ¶ 2.)

On June 6, 2022, Cross-Complainants filed their Answer to the Complaint, which also stated a "Cross-Claim" for declaratory relief against TPI. The Answer alleged that TPI defaulted on loans from Cross-Complainants, and that Cross-Complainants were entitled to $1,000,000 of the interpleaded funds as the senior debt holders on TPI's default obligations. (Answer pp. 7-8.)

On May 1, 2023, Cross-Complainants filed their Cross-Complaint, restating their claim for "declaratory relief that $1,000,0000 from the Interpleader funds are, in fact, rightfully the property of [Cross-Complainants]." (Cross-Complaint, Prayer 2.) Specifically, Cross-Complainants allege that each of them agreed to provide loans to TPI in June and July 2019, in return for the issuance of debentures securing TPI's promise to repay the debts. (Cross-Complaint ¶¶ 1-2.) TPI allegedly "defaulted on its repayment obligations under each Debenture by failing to make any of the required interest or principal repayments." (Cross-Complaint ¶ 5.)

The Court agrees with TPI that the claims in the Cross-Complaint are improper because there is no indication that they relate to the thing, debt, or duty that is the subject of this interpleader action. "When a person may be subject to conflicting claims for money or property, the person may bring an interpleader action to compel the claimants to litigate their claims among themselves." (*City of Morgan Hill v. Brown* (1999) 71 Cal.App.4th 1114, 1122; Code Civ. Proc. § 386, subd. (b).) In an action for interpleader, it is necessary "that the claimants seek the same thing, debt, or duty. . . . If the claims do not relate to the same thing, debt, or duty, then interpleader is improper." (*City of Morgan Hill*, 71 Cal.App.4th at 1123.)

In *City of Morgan Hill*, the city brought an interpleader action to determine the disposition of attorney's fees it owed, which were subject to conflicting demands from a law firm and its former shareholder. (71 Cal.App.4th at 1118.) The former shareholder "answered the interpleader complaint and also filed a cross-complaint against the Firm and shareholders"; the cross-complaint "included claims for breach of contract, wrongful discharge of employment, defamation, and other causes of action." (*Id.* at 1119.) The trial court found that the firm was entitled to all interpleaded funds, because "[w]hile [former shareholder] may have a claim for additional compensation or bonuses under partnership/shareholder agreements, it does not appear that she has an ownership interest or lien interest with respect to the particular contingent fee or specific 'fund' herein which belong[s] solely to [the Firm]." (*Id.* at 1120.) The Court of Appeal affirmed, stating, "[former shareholder's] claim is based upon a right to sue the Firm for wrongful termination and payment of compensation. In the process of that claim, she may show that her work on the City's account entitles her to payment from the Firm but she cannot show she was entitled to receive the Fees from the City. Interpleader speaks of conflicting claims against the same obligor over the same fund; not on the possible eventual right to a judgment that might be satisfied out of that fund." (*Id.* at 1126.)

Here, Plaintiff-in-Interpleader has brought this action to determine the disposition of surplus funds possessed by the Receivership estate in *Federal Trade Commission v. Jason Cardiff, et al.* (Complaint ¶¶ 64-66.) Cross-Complainants' claims arise solely from TPI's alleged breach of the obligations imposed by the debentures. (Cross-Complaint ¶ 5-6.) The claims in the Cross-Complaint would entitle Cross-Complainants to judgment against TPI for breach of the debentures, but they do not show any basis for Cross-Complainants' entitlement to the surplus receivership funds.

"Interpleader speaks of conflicting claims against the same object over the same fund, not on the possible eventual right to a judgment that might be satisfied out of that fund." (*City of Morgan Hill*, 71 Cal.App.4th at 1126; see *Placer Foreclosure, Inc. v. Aflalo* (2018) 23 Cal.App.5th 1109, 1116.) The policy concerns described by the court in *City of Morgan Hill* are applicable here: "allowing interpleader in these circumstances would constitute a form of prejudgment attachment without the protections generally afforded those subject to that provisional remedy," and there is no apparent "threat of double vexation" to Plaintiff-in-Interpleader from Cross-Complainants' claims. (*City of Morgan Hill* at 1125-26.)

Cross-Complainants also argue that TPI's demurrer is untimely because their June 6, 2022 Answer was also their initial filing of the Cross-Complaint, and so TPI was required to demur within 30 days of that pleading. The Court disagrees. The Answer originally filed by Cross-Complainants did not constitute the filing of a Cross-Complaint, regardless of the cross-claim that it purported to assert against TPI. (Code Civ. Proc. § 428.40 ["The cross-complaint shall be a separate document"].) Cross-Complainants filed and served their Cross-Complaint on May 1, 2023, and so TPI's demurrer is timely. (Code Civ. Proc. § 432.10.) Accordingly, the demurrer is sustained.