Leonard M. Shulman - Bar No. 126349
Ryan D. O'Dea - Bar No. 273478
**SHULMAN BASTIAN FRIEDMAN & BUI LLP**
100 Spectrum Center Drive, Suite 600
Irvine, California 92618
Telephone:    (949) 340-3400
Facsimile:    (949) 340-3000
Email:    ROdea@shulmanbastian.com
    LShulman@shulmanbastian.com

Attorneys for Alleged Debtor,
True Pharmastrip, Inc.

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>**TRUE PHARMASTRIP, INC,**<br><br>    Debtor. | Case No. 8:23-bk-11489-SC<br><br>Chapter 7<br><br>**ALLEGED DEBTOR'S RESPONSE TO ORDER TO SHOW CAUSE WHY THE COURT SHOULD NOT ABSTAIN PURSUANT TO 11 U.S.C. § 305(a)**<br><br>**Hearing Date**:<br>Date:    December 14, 2023<br>Time:    11:00 a.m.<br>Place:    Courtroom 5C<br>        411 West Fourth Street<br>        Santa Ana, California 92701 |

**TO THE HONORABLE SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY JUDGE, THE PETITIONING CREDITORS AND THEIR COUNSEL:**

True Pharmastrip Inc. ("Alleged Debtor") hereby submits its response ("Response") to the order to show cause why the Court should not abstain pursuant to 11 U.S.C. § 305(a) (the "OSC"), and respectfully requests that this Court abstain and dismiss the involuntary bankruptcy petition filed by BPMD Texas Partners, LP, Robert Chaikin, Lejos Investments, LLC, Richard Lyons, and

Gordon Smith (the "Petitioning Creditors").  In support of this Response, Alleged Debtor represents as follows:

## I.    SUMMARY OF ARGUMENT

The Involuntary Petition[1] is nothing more than an improper litigation tactic employed by the Petitioning Creditors to defer their litigation expenses and to exact leverage over Alleged Debtor to resolve a two-party dispute.  Seeing directly through the Petitioning Creditors' abuse of the bankruptcy process, the Court issued the OSC for the parties to justify why abstention under Code Section 305(a) is not warranted.  This Response will not argue against abstention – as Alleged Debtor believes abstention is required under applicable law.  In connection with Alleged Debtor's request to abstain, this Response requests dismissal of the Involuntary Petition – as staying the matter does not remedy the infirmities and improprieties that predicate the Involuntary Petition.  Should the Court abstain and dismiss the Involuntary Petition, Alleged Debtor expressly reserves all rights to seek an award of its fees and costs incurred in connection with the Involuntary Petition pursuant to Code Section 303(i).

For the reasons stated below, Alleged Debtor respectfully requests this Court to exercise its discretion under Section 305(a) and dismiss the Involuntary Petition.

## II.    PROCEDURAL HISTORY OF THE INVOLUNTARY BANKRUPTCY

1.    On July 24, 2023, the Petitioning Creditors filed the Chapter 7 involuntary petition against Alleged Debtor (the "Involuntary Petition"), which commenced Bankruptcy Case No. 8:23-bk-11489-SC. [Dkt. No. 1].

2.    On July 28, 2023, the Petitioning Creditors filed their Motion to Appoint an Interim Trustee (the "Motion to Appoint") [Dkt. No. 5], their Request for Judicial Notice in Support of their Motion to Appoint an Interim Trustee [Dkt. No. 6] and Declarations of Marc Graubart [Dkt. No. 7], Jeff Farr [Dkt. No. 8], Ricky Lyons [Dkt. No. 9], Gordon Smith [Dkt. No. 10], Robert Chaikin [Dkt.

---

[1] All capitalized terms not defined in this Summary of Argument shall have the meaning ascribed to same below.

No. 11], and Jack L. Henningsen [Dkt. No. 12] in support of the Petitioning Creditors' Motion to Appoint an Interim Trustee.

3.  The Petitioning Creditors filed an Application for Order Setting Hearing on Shortened Notice Pursuant to LBR 9075-1(b) on July 28, 2023. [Dkt. No. 13]. This Court set the hearing for the Motion to Appoint an Interim Trustee for 8/24/2023. [Dkt. No. 16].

4.  On August 10, 2023, Alleged Debtor filed its Opposition to the Petitioning Creditors' Motion to Appoint an Interim Trustee (the "Opposition to Appointment" [Dkt No. 22] and their Request for Judicial Notice in Support of their Opposition to Petitioning Creditor's Motion to Appoint an Interim Trustee. [Dkt. No. 25]. Alleged Debtor hereby incorporates by reference the declarations and request for judicial notice documents submitted in support of the Opposition to Appointment.

5.  On August 17, 2023, the Petitioning Creditors filed their Reply to Alleged Debtor's Opposition to Petitioning Creditor's Motion to Appoint an Interim Trustee. [Dkt. No. 29] (the "Appointment Reply").

6.  On August 24, 2023, the hearing on the Motion to Appoint was held (the "Hearing") [Dkt. No. 39]. On the same day, Alleged Debtor filed its Notice of Lodgment of Order Denying Petitioning Creditors' Motion to Appoint an Interim Trustee. [Dkt. No. 38].

7.  On August 25, 2023, the Court entered the OSC [Dkt. No. 40], wherein Alleged Debtor and the Petitioning Creditors were: (1) ordered to appear in person in Courtroom 5C of the United States Bankruptcy Court, Central District of California, located at 411 West Fourth Street, Santa Ana, CA 92701, on September 14, 2023, at 9:30 a.m. and show cause why the Court should not abstain from this bankruptcy case; and (2) to file a response to the OSC on or before September 1, 2023.

8.  The parties engaged in extensive settlement discussions between August 24, 2023 and November 10, 2023, but were ultimately unable to reach an agreement as of the filing of this Response. As a result of the parties' settlement efforts, two stipulations for extension of the deadlines under the OSC were submitted and granted by this Court. As per the Court's order granting the parties second stipulation [Dkt. No. 60], the parties' deadline to respond to the OSC is

November 16, 2023 and hearing on the OSC is currently scheduled for December 14, 2023 at 11:00 am.

### III.  ARGUMENT

The Court's OSC provided that "[t]he Parties' responses should address the discussion in which the Court engaged with the Parties on the record at the August 24, 2023, hearing [on the Motion to Appoint], and should actually entertain the standards for abstention, including those set forth in *In re Marciano*, 459 B.R. 27, 46-47 (B.A.P. 9th Cir. 2011), *Wechsler v. Macke Int'l Trade, Inc. (In re Macke Int'l Trade, Inc.)*, 370 B.R. 236, 246 (9th Cir. B.A.P. 2007) and *In re Spade*, 258 B.R. 221 (Bankr. D. Colo. 2001)."

As stated by *In re Marciano*, 459 B.R. 27, 46-47 (B.A.P. 9th Cir. 2011):

The § 305(a) Factors are:

(1) the economy and efficiency of administration; (2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court; (3) whether federal proceedings are necessary to reach a just and equitable solution; (4) whether there is an alternative means of achieving an equitable distribution of assets; (5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case; (6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and (7) the purpose for which bankruptcy jurisdiction has been sought.

In addition to the seven (7) Section 305(a) factors discussed in *In re Marciano*, the B.A.P.'s opinion in *In re Macke Int'l Trade, Inc.* provides that "[a]nother consideration is where there are few, if any, valuable nonexempt assets and the administrative expenses would likely consume the entire estate." *In re Macke Int'l Trade, Inc.*, 370 B.R. at 247. Finally, the court in *In re Spade* quoted and relied upon *In re Tarletz*, 27 B.R. 787, 793 (Bankr. D. Colo. 1983), stating: "[I]n considering dismissal under Section 305, it is appropriate to consider the motivation of the petitioners, whether the bankruptcy court or the state court can better serve the interests of the creditors and the detriment of the bankruptcy proceedings to the debtor." *In re Spade*, 258 B.R. at 224-225. Each of the aforementioned factors/considerations will be addressed individually below.

///

///

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

(a) <u>The Economy and Efficiency of Administration/Assets and Administrative Expenses</u>:

As stated in the Appointment Reply, Alleged Debtor's only liquid assets were put into an interpleader action pending in Los Angeles Superior Court (the "<u>Interpleader Action</u>"). <u>Appointment Reply</u>, 12:1-2. As further acknowledged by the Petitioning Creditors, the Spertus, Landes & Josephs law firm has filed a notice of lien encumbering the $1.2 million being held in the Interpleader Action. <u>Motion to Appoint</u>, 8:4-6. In light of these facts presented by the Petitioning Creditors, the Court stated at the Hearing:

> <u>THE COURT</u>: You probably thought it was a good idea to file an involuntary bankruptcy petition against the True Pharmastrip, thinking that this Court would then mandate that some trustee in our division would actually spend money of which they would get nothing, if you fail to have a rightful ownership in that, or if you succeeded, for instance. You're causing the Court to cause -- to expend time, money, and energy. You're expecting the Court to watch a Chapter 7 Trustee expend funds and time with potential of no remuneration…so now I understand what's happening here, and I appreciate your honesty and your clarification.

At the Hearing, counsel for the Petitioning Creditors offered no substantive response disputing the Court's comments regarding the administrative and economic inefficiencies attendant to proceeding with the instant involuntary bankruptcy. As such, it is clear that bringing the dispute between Alleged Debtor and the Petitioning Creditors into the bankruptcy court would only add an additional layer of expense to the resolution of essentially a two-party dispute.[2] This additional layer of expense, when tempered against the lack of assets to be administered, further highlights the administrative inefficiency of the Involuntary Petition. If this case remains in chapter 7, the hypothetical bankruptcy estate will be required to pay the fees and costs of bankruptcy counsel hired

---

[2] While the Appointment Reply purports to disagree that the Involuntary Petition is a two-party dispute, the undisputed facts belie such disagreement. Alleged Debtor has no remaining unsecured creditors other than the Petitioning Creditors and two other debenture holders who elected not to participate in the settlement. (Richard Poujade Dec., ¶7). After not participating in settlement, the Petitioning Creditors further banded together and misguidedly asserted an interest in the interpleader funds – ultimately resulting in each being a defendant in the Interpleader Action and all represented by the same attorney. Given the identical predicate of the Petitioning Creditors' alleged claims against Alleged Debtor, the Petitioning Creditors' uniformity of actions predating the Involuntary Petition and their joint representation by the same counsel (in this involuntary bankruptcy and in the Interpleader Action), it is apparent that the Involuntary Petition is merely a two-party collection dispute.

by a chapter 7 trustee, as well as that trustee's statutory compensation for the administration of the estate. Furthermore, this Court will be required to carry out all of the administrative obligations that are inherent in chapter 7 liquidation proceedings.

As discussed below, given that alternative forums afford the Petitioning Creditors a suitable arena to resolve the dispute with Alleged Debtor, it is grossly inefficient and unnecessarily costly to process this private dispute through the Court. Therefore, Alleged Debtor submits that it is more efficient and economical to have this dispute resolved in an alternative forum, and as such, this factor indicates that the Petitioning Creditors and Alleged Debtor would be better served by dismissal pursuant to 11 U.S.C. § 305(a).

(b) <u>Another Available Forum / Pending State Court Proceeding</u>:

It is undisputed that the Petitioning Creditors are defendants in the Interpleader Action. *See* <u>Motion to Appoint</u>, 7:26-28 ("Petitioners were named as 'Defendants,' or in other words parties who had a potential interest in the $1.2 million. TPI filed a cross-complaint against all other parties, asserting its sole right to the money."). As such, when the Involuntary Petition was filed, the Petitioning Creditors were already parties to a pending action regarding their purported claim to Alleged Debtor's sole liquid assets. It is further undisputed that the Involuntary Petition was initiated only after court in the Interpleader Action was inclined to reject the Petitioning Creditors' claim to the funds. *See* <u>Appointment Reply</u>, 11:9-11 ("There, TPI argued and the Superior Court appears inclined to agree, that creditors may not assert their claim to interplead funds because those claims are not direct, *i.e.*, they are not purporting to own the funds directly). Once these issues became apparent at the Hearing, the Court and counsel for the Petitioning Creditors stated:

> <u>THE COURT</u>: Why haven't you filed a civil action against True Pharmastrip to then, in the complaint, request a TRO preliminary injunction and permanent injunction?
>
> <u>MR. PRINCE</u>: I don't know that -- our opinion was that you cannot -- that we cannot get an injunction against state Superior Court.
>
> <u>THE COURT</u>: You don't do that. You get an injunction against the Debtor and that attorney from this end and the principal of that attorney. And you then file a complaint, sue True Pharmastrip, sue the principal that you're afraid might dissipate or even the resigned principal, and that attorney who may seek those monies because of a lien. And it's called a request for declaratory relief and permanent injunction for the purposes of protecting your client's interests in the unsecured portions of that $1.2 million. That's how you do it, Mr. Prince. What you're doing is forum shopping.

MR. PRINCE: Okay, your Honor.

Based upon the Court's comments and counsel for the Petitioning Creditors' failure to argue otherwise, it cannot be reasonably disputed that there is another available forum for the dispute between the Petitioning Creditors and Alleged Debtor to be resolved.

Also available to the Petitioning Creditors was the possibility of an appeal of any ruling of the court in the Interpleader Action. However, and as aptly pointed out by the Court at the Hearing:

> THE COURT: …What would happen is if your clients do want to appeal that motion for summary judgment or the decision that would turn over the money to True Pharmastrip or any entity that would be affiliated with, you would simply file a notice of appeal and then file a bond, and you would get a stay. And you don't want to file a bond, and that's the -- that's why you're back in bankruptcy. I almost must guarantee you that you and your colleagues were sitting around going "Hey, maybe we should go into bankruptcy court." You said "Yeah, we won't have to file a bond." You know, the appeal bond. So for that reason alone, I don't think this works for, not only the motion for an appointment of an interim trustee, but for the involuntary bankruptcy.

As with the Court's other comments and observations at the Hearing, counsel for the Petitioning Creditors failed to dispute or argue against the Court's findings.

Therefore, the Interpleader Action was pending prior to the Involuntary Petition being filed – and the Petitioning Creditors clearly thought their dispute could be resolved therein. However, once it became apparent that they were not going to be successful, the Petitioning Creditors filed the Involuntary Petition. Rather than pursuing appellate relief from any ruling of the court in the Interpleader Action, and rather than initiating a civil suit against Alleged Debtor, Alleged Debtor's principal(s), or Alleged Debtor's counsel holding the attorney lien (whether filed in state court, district court, or in Canada), the Petitioning Creditors filed the Involuntary Petition. As such, Alleged Debtor submits that the Involuntary Petition is a flagrant abuse of the bankruptcy process.

(c) Whether Bankruptcy is Necessary to Reach a Just and Equitable Solution:

Alleged Debtor submits that bankruptcy is not necessary for a just and equitable solution for the reasons stated above. To summarize, the Petitioning Creditors chose to not participate in a settlement with Alleged Debtor's other unsecured creditors. As a result, the Petitioning Creditors are essentially the only unsecured creditors of Alleged Debtor. It is acknowledged that Alleged Debtor's sole liquid assets are the funds in the Interpleader Action – and if the Petitioning Creditors disagree with any ruling in the Interpleader Action they can initiate an appeal of same. Alternatively

or concurrently, the Petitioning Creditors can initiate a civil action in an alternative forum where the bona fides of their claims can be adjudicated. There is simply no need for this two-party dispute to clog the docket of this Court or any other bankruptcy court. Highlighting this sentiment, the Court and counsel for the Petitioning Creditors engaged in the following colloquy at the Hearing:

> THE COURT: Really? Tell me everything about it, Mr. Prince. Tell me about the uniqueness of a bankruptcy court.
>
> MR. PRINCE: I think for example, debtors have -- and trustees have powers that you cannot exercise through a motion. For example, I think there's been a discussion of an attorney's lien. Perhaps, this attorney's lien is not wrongful in the sense of justifying a TRO, but it might be avoidable.
>
> THE COURT: No, you're wrong about that. You're absolutely wrong about that. Along with administrative law, I have a pretty [good] working knowledge of attorney's liens law in California and attorney's secret liens in existence in California, and I am well versed in it. And the answer is – in fact, I've represented a party with an invisible attorney's lien. Mr. Prince, here is what I perceive -- and I know what a -- I'm not saying you've done anything in bad faith at this point.
>
> MR. PRINCE: I appreciate that, your Honor.

Therefore, and given the litany of alternative forums where the Petitioning Creditors' dispute with Alleged Debtor can be adjudicated, a bankruptcy is not necessary to reach a just and equitable solution.

(d) <u>A Less Expensive Out-of-Court Arrangement</u>:

As made clear by Alleged Debtor's settlement with virtually all other parties holding unsecured claims, Alleged Debtor has already shown its willingness to resolve debts with similarly situated creditors. However, it was the Petitioning Creditors who refused to participate in such settlement. Given the Petitioning Creditors' tactics in the Interpleader Action and through initiation of the Involuntary Petition, perhaps the Petitioning Creditors believed they could fare better than the other creditors by being among the few hold-outs. Furthermore, and to no avail, Alleged Debtor engaged in good faith settlement negotiations with the Petitioning Creditors for approximately two (2) months in an effort to globally resolve all disputes. After the Involuntary Petition is dismissed, Alleged Debtor would still entertain the concept of a global settlement agreement. However, with the perceived leverage flowing from the Involuntary Petition, Alleged Debtor does not believe the less expensive out-of-court arrangement can ever gain traction among and between the parties.

SHULMAN BASTIAN
FRIEDMAN & BUI LLP
100 Spectrum Center Drive
Suite 600
Irvine, CA 92618

(e) <u>Non-federal Insolvency Proceeding</u>:

This factor/consideration is inapplicable to the facts of this case.

(f) <u>Purpose for Which Bankruptcy Jurisdiction Has Been Sought/Petitioners' Motivation</u>:

As noted by the Court at the Hearing and not disputed by the Petitioning Creditors' counsel on the record, the Involuntary Petition was motivated by a desire to forum shop as well as a desire to shift costs of litigating their state court collections case to a bankruptcy trustee. Furthermore, the events leading up to the Involuntary Petition further highlight the motives of the Petitioning Creditors. The claims of the Petitioning Creditors are disputed, and creditors cannot file involuntary petitions when the claims are disputed. For legitimate involuntary filings, the claims must be completely undisputed, not partially undisputed. 11 USC 303(b). The Interpleader Action alone unequivocally demonstrates that the claims are disputed. The parties have been litigating their alleged right to the interpleader funds for over two years and have asserted competing counter-claims against one another each requesting attorneys' fees and costs. The Petitioning Creditors' baseless claims in the Interpleader Action have done nothing but drive up legal expenses, ultimately eroding the entirety of the funds on hand due to Alleged Debtor's attorney fees. Had the Petitioning Creditors not asserted a baseless claim to ownership of the funds, the Interpleader Action would have never been initiated to begin with. Continuing with their penchant to pursue baseless legal theories and drive up Alleged Debtor's legal expenses, we are now faced with the Involuntary Petition. Apparently the Petitioning Creditors were tired of spending their own funds pursuing meritless legal claims and viewed bankruptcy as a forum where someone else – namely a chapter 7 trustee – would foot the fees and costs.

In sum, the Petitioning Creditors have maintained their claims to the interpleader funds in bad faith and Alleged Debtor intends to pursue damages against the Petitioning Creditors in the Interpleader Action. However, such pursuit of funds in the Interpleader Action will not compensate Alleged Debtor for the fees and costs associated with the improper Involuntary Petition. The harm to Alleged Debtor flowing from the Involuntary Petition will only continue to grow if the Court does not abstain and dismiss the involuntary bankruptcy pursuant to Section 305(a).

## IV. ALLEGED DEBTOR RESERVES ALL RIGHTS TO AN AWARD OF ATTORNEY FEES AND COSTS

Alleged Debtor expressly reserves all rights to request an award of all fees and costs incurred in connection with the Involuntary Petition, as such an award is permitted in the event of dismissal under Section 305(a). "The Ninth Circuit indicated in *Higgins* that those who prosecute an involuntary bankruptcy petition against a debtor should expect, if unsuccessful, to compensate that debtor for the costs of defending…The facts of this case demonstrate why this approach is the correct one. As the bankruptcy court found, this involuntary chapter 11 petition had no legitimate goal, and 'would only lead to administrative expenses, and would be a waste of judicial resources.'" *In re Macke Int'l Trade, Inc.*, 370 B.R. at 253. Further, "[w]e hold that the plain meaning of § 303(i) provides that, unless an involuntary petition has been dismissed with the parties' consent, and without the debtor's waiver of the right to judgment under § 303(i), the bankruptcy court, based upon the totality of the circumstances, may, in its discretion, award attorney's fees and costs under § 303(i)(1) for a § 305(a)(1) dismissal of an involuntary petition." *Id*. Therefore, in the event the Court abstains and dismisses the Involuntary Petition under Section 305(a), Alleged Debtor intends to seek an award of all fees and costs incurred pursuant to Section 303(i).

## V. CONCLUSION

For the reasons stated above, Alleged Debtor respectfully requests this Court to abstain and dismiss the Involuntary Petition pursuant to Section 305(a) and to permit Alleged Debtor to submit an accounting of all fees and costs incurred as a result of the involuntary bankruptcy.

**SHULMAN BASTIAN FRIEDMAN & BUI LLP**

DATED: November 16, 2023    By:    */s/ Ryan D. O'Dea*
　　　　　　　　　　　　　　　　Leonard M. Shulman
　　　　　　　　　　　　　　　　Ryan D. O'Dea
　　　　　　　　　　　　　　　　Attorneys for True Pharmastrip, Inc.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 100 Spectrum Center Drive, Suite 600, Irvine, CA 92618.

A true and correct copy of the foregoing document entitled (*specify*): **ALLEGED DEBTOR'S RESPONSE TO ORDER TO SHOW CAUSE WHY THE COURT SHOULD NOT ABSTAIN PURSUANT TO 11 U.S.C. § 305(a)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On November 16, 2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Christopher Crowell**   ccrowell@hrhlaw.com
- **Michael W Kinney**   mkinney@lblglaw.com, michael@kinneylegal.com
- **Ryan D O'Dea**   rodea@shulmanbastian.com, lgauthier@shulmanbastian.com
- **Christopher E Prince**   cprince@lesnickprince.com, jmack@lesnickprince.com;cprince@ecf.courtdrive.com;jnavarro@lesnickprince.com
- **United States Trustee (SA)**   ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page.

**2. <u>SERVED BY UNITED STATES MAIL</u>**:
On (*date*) <u>November 16, 2023,</u> I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

The Honorable Scott C. Clarkson
U.S. Bankruptcy Court
Ronald Reagan Federal Building
411 W. Fourth Street, Suite 5130
Santa Ana, CA 92701

☐ Service information continued on attached page.

**3. <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 11/16/2023 | Lori Gauthier | */s/ Lori Gauthier* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                                      **F 9013-3.1.PROOF.SERVICE**