CHRISTOPHER E. PRINCE (SBN 183553)
 cprince@lesnickprince.com
LESNICK PRINCE & PAPPAS LLP
315 W. Ninth Street, Suite 705
Los Angeles, CA 90015
Telephone: (213) 493-6496
Facsimile: (213) 493-6596

Attorney for Petitioning Creditors BPMD
Texas Partners, LP, Lejos Investments, LLC,
Ricky Lyons, Gordon Smith, and Robert
Chaikin

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br><br>TRUE PHARMASTRIP, INC., a Canadian corporation<br><br><br><br>Debtor. | Case No. 8:23-bk-11489-SC<br><br>Chapter 7<br><br>**RESPONSE OF PETITIONING CREDITORS TO THE COURT'S ORDER TO SHOW CAUSE**<br><br>Hearing Information:<br>Date: December 14, 2023<br>Time: 11:00 a.m.<br>Place: 411 West Fourth Street<br> Courtroom 5C<br> Santa Ana, California 92701 |

## **TABLE OF CONTENTS**

I.   **INTRODUCTION** ..................................................................................... 1

II.  **FACTUAL BACKGROUND** ..................................................................... 2

    A.   Poujade And Cardiff Found True Pharmastrip, Inc. And Solicit Investors. ...... 2

    B.   The FTC Files A Complaint And An "Asset Freeze" Against Jason Cardiff And Various Affiliated Companies. ........................................................................... 2

    C.   Poujade And Cardiff Continue To Solicit Investments In TPI But Do Not Disclose The FTC Action To Prospective Investors. ....................................... 3

    D.   Jacques Poujade Is Found To Have "Perpetrated Fraud On [The District] Court," And Is Held In Civil Contempt (With A Recommendation That The United States Pursue Criminal Contempt) .................................................... 4

    E.   The Receiver In The FTC Action Files An Interpleader Action In Los Angeles County Superior Court ....................................................................................... 8

    F.   Jacques Poujade Forms Various Other Companies And Solicits Investors For Those Companies. ............................................................................................. 9

    G.   Jacques Poujade Pleads Guilty to Securities Fraud ..................................... 11

    H.   Petitioning Creditors File An Involuntary Petition Against TPI. .................... 12

    I.   Poujade And Tri-Emerald File Voluntary Bankruptcy Petitions. ................... 12

III. **ARGUMENT** ....................................................................................... 13

    A.   The Seven Factors Weigh Against Abstention .............................................. 14

        1.   The Economy and Efficiency of Administration .................................. 14

        2.   Whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court. ........ 15

        3.   Whether federal proceedings are necessary to obtain a just and equitable result ............................................................................... 16

        4.   Whether there is an alternative means of achieving an equitable distribution of assets ........................................................................ 17

        5.   Whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case ............................................................................................. 17

        6.   Whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process? ............................................... 18

        7.   The purpose for which bankruptcy jurisdiction has been sought ....... 18

    B.   The Totality of the Circumstances Weigh Against Abstention. ...................... 18

IV.  **CONCLUSION** ................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*In re Eastman*
  188 B.R. 621 (B.A.P. 9th Cir. 1995) ............................................................ 13, 14

*In re Marciano*
  459 B.R. 27 (B.A.P. 9th Cir. 2011) ................................................................ 14

*In re Martin–Trigona*
  35 B.R. 596 (Bankr.S.D.N.Y.1983) ............................................................... 13

*In re Pine Lake Village Apartment Co.*
  16 B.R. 750 (Bankr.S.D.N.Y.1982) ............................................................... 13

*In re QDOS, Inc.*
  652 B.R. 543 (Bankr. C.D. of Cal. 2023) ...................................................... 14

*In re RAI Marketing Services, Inc.*
  20 B.R. 943 (Bankr.D.Kansas 1982) ............................................................ 13

*In re Sapphire Development, LLC*
  523 B.R. 1 (D. Conn. 2014) ..................................................................... 13, 18

*In re Zais Inv. Grade Ltd. VII*
  455 B.R. 839 (2011) ............................................................................... 16, 17

*Morgan Hill v. Brown*
  71 Cal. App. 4th 1114 (1999) ......................................................................... 8

*Wechsler v. Macke Int'l Trade, Inc. (In re Macke Int'l Trade, Inc.)*
  370 B.R. 236 (9th Cir. B.A.P. 2007) .............................................................. 14

**Statutes**

11 U.S.C. § 305(a)(1) ................................................................................. 13, 18

**Legislative Reports**

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 325 (1977); 1978 U.S.C.C.A.N. 5963 ......... 14

## I.    INTRODUCTION

This Court should only dismiss or suspend this bankruptcy case if it finds that both the debtor and its creditors are better served by such dismissal or suspension. With respect to the creditors, they would be obviously better off with True Pharmastrip, Inc. ("TPI" or "Alleged Debtor") in bankruptcy. TPI was formed to advance one of Jacques Poujade's multiple fraudulent fundraising schemes. Poujade has now been convicted of securities fraud and is headed to federal prison. TPI has no intention of paying its debts, and Poujade[1] cannot be trusted to liquidate its assets and distribute them to creditors in a fair and equitable manner.

This Court has no need or reason to defer to a court of general jurisdiction because Petitioning Creditors' claims are not genuinely disputed. More importantly, a court of general jurisdiction cannot and would not resolve issues which are normally central to the bankruptcy process, including avoidance claims, derivative claims, claim priority issues, and equitable subordination. And, of course, creditors arguably lack standing to bring certain claims that a trustee might bring, such as claims for legal malpractice.

Because creditors would be better served by TPI's bankruptcy, abstention is improper. To justify abstention, **both** creditors and the debtor must be better served by dismissal or suspension of the proceedings. Even if abstention were appropriate where only the debtor was made better off, TPI is better served by a bankruptcy proceeding. Although TPI will argue in favor of abstention, it will do so at the behest of Jacques Poujade and his personal attorneys. The interests of Poujade and his personal attorneys are not the same as the interests of TPI itself.

In addition, Poujade and another one of his companies (Tri-Emerald Financial Group, Inc.) have now themselves filed for bankruptcy protection. Poujade used Tri-Emerald to sell fraudulent unregistered securities -- a scheme that led to his criminal

---

[1] Jacques Poujade purported to "resign" just days before he was served with this Petition on behalf of TPI, and now his brother Richard Poujade allegedly operates the company. As shown in Petitioning Creditors' Reply in Support of Their Motion to Appoint an Interim Trustee [Dkt. No. 29], the resignation is an obvious sham.

conviction for securities fraud, a five-year federal prison sentence and a restitution order directing him to pay over $6 million.

It boggles the mind to think that a convicted securities fraudster can run into bankruptcy court for his own benefit while his victims find the courtroom doors closed to them.  This Court should not abstain, and the involuntary bankruptcy case against TPI should proceed.

## II.    FACTUAL BACKGROUND

### A.    Poujade And Cardiff Found True Pharmastrip, Inc. And Solicit Investors.

Jacques Poujade and Jason Cardiff founded Alleged Debtor True Pharmastip, Inc. ("TPI") in or about 2018.  [*Corrected* Poujade Declaration in FTC Action, *Federal Trade Commission v. Jason Cardiff et al.*, C.D. of Cal., Case No. 5:18-cv-02104, Dkt. No. 153-5, pages 3 to 7.]  Jason Cardiff was the original incorporator of TPI, and both Poujade and Cardiff were its original shareholders.  [*Id.* at p. 4].  Cardiff opened a bank account for TPI, and Poujade and Cardiff began soliciting investment funds.  [*Id.* at p. 7-8].

By late 2018, Poujade and Cardiff had convinced investors to contribute several million dollars towards TPI's alleged business.  [*Id.*]  After obtaining its first investments, Poujade formed a wholly-owned subsidiary of TPI called Pharmastrip Corp. [*Id.*]

### B.    The FTC Files A Complaint And An "Asset Freeze" Against Jason Cardiff And Various Affiliated Companies.

On October 10, 2018, while Cardiff and Poujade were actively soliciting investment funds for TPI, the Federal Trade Commission filed a complaint for a permanent injunction and other equitable relief against Jason Cardiff individually, as well as Redwood Scientific Technologies, Inc. ("Redwood Scientific"), a company for which Cardiff served as a shareholder, officer, and director.  [Complaint, *FTC v. Cardiff*, Dkt. No. 1, RJN[2] Ex. 1.]

After filing the FTC Complaint, the FTC immediately moved for and obtained a preliminary injunction against Cardiff and his wife, with the Court finding "in numerous

---

[2] Petitioning Creditors filed a Request for Judicial Notice ("RJN") in Support of their Motion to Appoint an Interim Trustee.  [Dkt. No. 6.]

1   instances" they had "misrepresented the effectiveness of their dissolvable film strip

2   products for smoking cessation, weight loss, and improved male sexual performance,

3   thereby misleading vulnerable consumers." [Preliminary Injunction, *FTC v. Cardiff,* Dkt.

4   No. 59, 5:18-25, RJN Ex. 2.] As part of the order granting the FTC's motion for

5   preliminary injunction (the "PI Order"), the Court ordered the Cardiffs' assets frozen,

6   which prohibited them from "transferring, liquidating, converting, encumbering, pledging,

7   loaning, selling, concealing, dissipating, disbursing, assigning, relinquishing, spending,

8   withdrawing, granting a lien or security interest or other interest in, any Assets . . . .

9   owned or controlled, directly or indirectly, by any Defendant, including, but not limited to,

10  those for which any Defendant is a signatory on the account." [*Id.* at 14:22-28.]

11          The PI Order also confirmed the continued appointment of a receiver (the

12  "Receiver") to hold and control the assets of the Cardiffs. [[*Id.* at 22:8-23:20], Section

13  XVI(B)(empowering the Receiver to take "exclusive custody, control, and possession of

14  all Assets and Documents of, or in the possession, custody or under the control of, any

15  Receivership Entity and all Assets of Defendant Jason Cardiff and Eunjung Cardiff

16  covered by Part XV of this Order, wherever situated").

17          **C.      Poujade And Cardiff Continue To Solicit Investments In TPI But Do Not
                      Disclose The FTC Action To Prospective Investors.**

18

19          In May 2019, an investment banker named John Lemak contacted Marc Graubart,

20  the managing partner of Petitioning Creditor BPMD Texas Partners, LP, about an

21  investment opportunity in Alleged Debtor TPI. *See* Declaration of Marc Graubart

22  (hereinafter "Graubart Dec.") Dkt. No. 7, ¶3.[3] All told, Graubart (through BPMD Texas

23  Partners) invested $200,000 in Alleged Debtor. Several other investors known to Graubart

24  invested the following sums:

25          Robert Chaikin:                $50,000

26

27  _____

    [3] This declaration and the other declarations referenced herein were submitted in
28  connection with Petitioning Creditors' motion for the appointment of an interim trustee.
    Dkt. Nos. 7-12.

1    Gordon Smith:              $50,000

2    Ricky Lyons:               $25,000

3    *See* Graubart Dec., Dkt. No. 7, ¶6; Declaration of Robert Chaikin ("Chaikin

4    Dec.") Dkt. No. 11, ¶3; Declaration of Gordon Smith ("Smith Dec.") Dkt. No. 10, ¶3;

5    Declaration of Ricky Lyons ("Lyons Dec.") Dkt. No. 9, ¶3.

6         Another investor, Petitioning Creditor Lejos Investments, LLC, also learned

7    about the investment opportunity by discussing it with John Lemak and invested

8    $150,000.  Declaration of Jeff Farr ("Farr Dec.") Dkt. No. 8, ¶3.

9         The loan agreements came due in June and July of 2021.  Although the

10   loan agreements did not require them to demand repayment, Petitioning Creditors did so

11   anyway, but to no avail.  *See* Graubart Dec., Dkt. No. 7, ¶10; Chaikin Dec., Dkt. No. 11,

12   ¶7; Farr Dec., Dkt. No. 8, ¶7; Smith Dec., Dkt. No. 10, ¶7; Lyons Dec., Dkt. No. 9, ¶7.  TPI

13   simply ignored them.  *See* Graubart Dec., Dkt. No. 7, ¶10; Chaikin Dec., Dkt. No. 11, ¶7;

14   Farr Dec., Dkt. No. 8, ¶7; Smith Dec., Dkt. No. 10, ¶7; Lyons Dec., Dkt. No. 9, ¶7.  Not

15   only did TPI fail to repay Petitioning Creditors, TPI has utterly failed to even communicate

16   any intention of *ever* repaying them.  *See* Graubart Dec., Dkt. No. 7, ¶10; Chaikin Dec.,

17   Dkt. No. 11, ¶7; Farr Dec., Dkt. No. 8, ¶7; Smith Dec., Dkt. No. 10, ¶7; Lyons Dec., Dkt.

18   No. 9, ¶7.

19        When Lemark and Cardiff solicited funds from Graubart and the other investors in

20   July 2019, they failed to disclose Cardiff was a named defendant in the FTC Complaint

21   and that his assets had been frozen nearly one year earlier.  *See* Graubart Dec., Dkt. No.

22   7, ¶7; Chaikin Dec., Dkt. No. 11, ¶4; Farr Dec., Dkt. No. 8, ¶4; Smith Dec., Dkt. No. 10,

23   ¶4; Lyons Dec., Dkt. No. 9, ¶4.

24   **D.    Jacques Poujade Is Found To Have "Perpetrated Fraud On [The
           District] Court," And Is Held In Civil Contempt (With A Recommendation
25         That The United States Pursue Criminal Contempt).**

26        In June 2019 – right around the time Cardiff began soliciting investment funds from

27   Petitioning Creditors – the FTC returned to district court, filing a motion to hold Cardiff, his

28

4

1   wife, and Jacques Poujade in contempt for violating the terms of the PI Order and

2   unlawfully transferring funds to Cardiff.  Following three days of court testimony from July

3   29-31, 2019, and several filings thereafter, the district court entered an order on October

4   29, 2019.  [Order, *FTC v. Cardiff*, Dkt. No. 238, RJN Ex. 3.]  In its order, the district court

5   found that "Jason Cardiff, Eunjung Cardiff, and Jacques Poujade were in contempt of the

6   Court's Temporary Restraining Order and Preliminary Injunction."  *Id.* (docket citations

7   omitted).

8        In connection with the Order, the district court judge stated that "I've never

9   presided over a matter where the fraud committed by the defendants was so clear, the

10  deception so extreme.  I'm astounded."  [Hearing Transcript, *FTC v. Cardiff*, Dkt. No. 188,

11  86:3-6, RJN Ex. 4.]  Speaking directly to Poujade – TPI's CEO – the district court stated:

12          "Mr. Poujade, I find that you are totally unbelievable.  You lied
13          to this Court.  You perpetrated fraud on this Court.  You did
            that in conjunction with the Cardiffs.  You created a paper trail
14          perpetrating the fraud on the Court.  It's unbelievable
            considering the positions that you hold as a financial officer.
15          But I guess money is everything and greed is everything.  And
            in the pursuit of your greed, you have advanced the interest
16          of the Cardiffs to the detriment of the public, government
            agencies, the receiver, and the Court."
17

18      [*Id.*, 87:17 – 88: 2.]  Indeed, the district court recommended that the FTC pursue

19  criminal charges against both:

20          "It would seem to me because of the egregious nature of this
21          case, that the government should consider or should have
            considered pursuing a criminal contempt.  I am convinced that
22          if this matter were brought before a jury, the jury would return
            a verdict of conviction as to all defendants in this case.  I would
23          - - I would suggest that the FTC seriously consult with the
            office of the U.S. Attorney and bring this matter to the attention
24          of the federal authorities, criminal section of the U.S. Attorney.
            This is outrageous, unbelievable."
25

26  [*Id.*, 88:9-19.]

27      The evidentiary basis for the District Court's findings was extensive.  The record in

28  the matter contains substantial evidence that Jacques Poujade was lying to the court.  For

example, Jacques Poujade testified that he had a ten-minute telephone call with Cardiff at

12:55 p.m. on October 12, 2018 where supposedly the only subject of the call was Cardiff

saying that he couldn't talk.  [Hearing Transcript, *FTC v. Cardiff*, Dkt. No. 187, 49:19-50:10,

Additional Request for Judicial Notice ("Add'l RJN") Ex. 12.][4]  Indeed, Poujade's testimony

fell apart when the court itself questioned him. [*Id.*, 98:24-100:25.]

The court made its opinion of Poujade's conduct clear:

> In reference to Mr. Poujade, the Court is going to require the
> government to provide the Court with findings of fact and
> conclusions of law concerning his testimony and the
> misstatements he made in court, lies perpetrated by Mr.
> Poujade, false testimony provided to the Court. Evidence
> submitted to the court in the contempt hearing was damning to
> Poujade's purported defense.

[Hrg. Tr., *FTC v. Cardiff*, 89:14-18, RJN Ex. 4.]

The record also implicated Jacques Poujade's brother, Richard Poujade, and TPI's

Candadian attorney. Erwin Sui. The following is a summary of some of the evidence

prepared by the FTC as part of the proposed findings requested by the court.  No

proposed findings were adopted by the court, but the FTC's proposal contains evidentiary

citations for every contention (note that Clover Cannastrip changed its name to True

Pharmastrip, so the references to Clover Cannastrip below are references to TPI):

> For example, over $1.5 million CAD was drained out of the
> Clover Cannastrip TD Canada account (for which the Cardiffs
> were the sole signatories) on October 16 and 18, 2018; Jacques
> Poujade funneled much of that money back to the Cardiffs in the
> form of a sham loan; the $2.02 million CAD raised by Clover
> Cannastrip after the asset freeze was deposited (minus fees)
> directly into the trust account of Clover Cannastrip's Canadian
> counsel (thereby bypassing the account for which the Cardiffs
> were signatories); the Cardiffs documented a "resignation" as
> Clover Cannastrip Board Directors a week after the PI was
> entered; and Clover Cannastrip substituted Jacques Poujade's
> name as CEO on corporation filings with Canadian and U.S.
> securities regulators, also after the PI was entered.  The $1.2

---

[4] Petitioning Creditors are concurrently filing an additional request for judicial notice to
supplement their prior request.

million CAD wired out of the Sui Trust Account to Pharmastrip on October 25, 2018 were frozen assets under the TRO. The $360,000 CAD wired out of the TD Canada Trust account on October 18, 2018, to Jacques Poujade's brother Richard Poujade were frozen assets under the TRO. The $1.81 million CAD wired out of the Sui Trust Account to Pharmastrip on November 6, 2018, were frozen assets under the TRO. [internal docket citations omitted]

The district court further ordered counsel for Poujade -- the Spertus, Landes & Josephs firm -- to transfer $1,560,000 Canadian dollars ($1,205,984.80 United States dollars) to the Receiver for the purpose of maintaining those funds pending further order of the Court. *Id.* The transfer of those funds "resolves the contempt proceedings as to the money at issue." *Id.*

The district court also ordered Poujade to comply with a subpoena from the FTC within 30 days of entry of the order. *Id.* Although the order directing Poujade to comply with the subpoena was entered on October 19, 2019, he had still not complied more than six months later, so the FTC filed another contempt motion. [Contempt Motion, *FTC v. Cardiff,* Dkt. No. 342, Add'l RJN Ex. 13.]

After briefing and a hearing, the district court found Poujade to be in contempt yet again. [Order re Contempt Motion, *FTC v. Cardiff,* Dkt. No. 357, Add'l RJN Ex. 14.] The district court provisionally sanctioned Poujade $360,000 to incentivize compliance with its order. *Id.* Because of Poujade's evasions, the district court also ordered that incarceration was an appropriate provisional sanction:

Because this stiff monetary sanction has not sufficiently incentivized Poujade's compliance, the Court turns to coercive incarceration, which is an appropriate sanction for civil contempt so long as "the contemnor can avoid the sentence imposed on him, or purge himself of it, by complying with the terms of the original order." Hicks on Behalf of Feiock v. Feiock, 485 U.S. 624, 635 (1988); see Purge Contempt Order at 7-8 (warning Poujade that the courtmay "order coercive incarceration if a monetary sanction proves ineffective in securing [his] compliance with the Court's orders."). Given the fact that this Court is now requested to hold him in contempt of a prior contempt order, and Poujade's evasive behavior thus far, the Court finds incarceration a necessary method by which to coerce compliance with Paragraph 2.k of the Purge Contempt Order. [Id.]

7

**E.    The Receiver In The FTC Action Files An Interpleader Action In Los Angeles County Superior Court.**

To resolve other matters in the FTC Action, the receiver filed the Interpleader Action in February 2022.  [Complaint, *Robb Evans & Associates LLC v. Redwood Scientific Technologies, Inc., et al.* ("Interpleader Action"), LASC, Case No. 22STCV04546, RJN Ex. 6.]  Petitioning Creditors were named, among many others, as defendants who had a potential interest in the $1.2 million.  *Id.*  Because Petitioning Creditors had only a derivative claim to the funds, they filed a cross-complaint for declaratory relief and breach of contract.

TPI demurred to the Petitioning Creditors' cross-complaint, not because their breach of contract claims were defective or lacked merit,  but because the interpleader court lacked jurisdiction to hear the claims because they were derivative in nature, i.e., the Petitioning Creditors claimed the funds in their capacity as creditors of TPI, not as direct owners of the funds.[5]  The superior court agreed and sustained TPI's demurrer stating, "[T]he claims in the [Petitioning Creditors'] Cross-Complaint would entitle [Petitioning Creditors] to judgment against TPI for breach of the debentures, but they do not show any basis for [their] entitlement to the surplus receivership funds."

In June 2023, TPI filed a motion for summary judgment in the Interpleader Action, contending it was entitled to the first $948,589.60 of the $1.2 million that had been deposited by the Receiver.  [Declaration of Jack Henningsen ("Henningsen Dec.")[6], Dkt. No. 12, ¶3.]  TPI's motion did not request that the funds be paid to TPI; instead, TPI asked the Court to pay the funds directly to the Spertus, Landes & Josephs law firm (the "Spertus Firm") [Motion for Summary Judgment, *Interpleader Action*, 2:27-28, RJN Ex. 9] (asking the Court to "order the Clerk to release the funds forthwith to the Spertus, Landes & Josephs, LLP – Attorney Client Trust Account").  Finding that all other claimants had

---

[5] See *Morgan Hill v. Brown* (1999) 71 Cal. App. 4th 1114.

[6] This declaration was filed in support of Petitioning Creditors' motion to appoint an interim trustee in this case.

either defaulted or had derivative claims to the funds, the superior court granted TPI's Motion and indeed ordered the funds to be paid directly to the Spertus Firm.

### F.    Jacques Poujade Forms Various Other Companies And Solicits Investors For Those Companies.

Poujade has founded numerous additional companies over the years and appears to have solicited investors for all of them.  So far as Petitioning Creditors are aware, none of these companies have ever returned money to their investors.

At some point, Poujade formed a company called Tri-Emerald Financial Group, Inc. and an affiliated company called Tri-Emerald Holdings LLC.  Both those companies, and Jacques Poujade individually, were sued by a bankruptcy trustee in an adversary proceeding in the Middle District of Florida.  [Complaint, *Kapila v. Tri-Emerald Financial Group, Inc.* (*In re Richert Funding, LLC*), M.D. of Fla., Adv. No. 6:21-ap-00057-KSJ, Dkt. No. 1, Add'l RJN Ex. 15.]

Attorney Michael Kinney ("Kinney") appeared as counsel of record in that adversary proceeding on behalf of the two Tri-Emerald companies and Jacques Poujade individually.  [*Id.*, Dkt. No. 25, Add'l RJN Ex. 16.]  Michael Kinney is the same attorney who represented Poujade in the FTC Action when the District Court found Poujade had perpetrated a fraud on the court.  Michael Kinney has also appeared for TPI in this Involuntary Case.[7]

In June 2023 Kinney moved to withdraw as counsel of record for Tri-Emerald and Poujade.  [*Id.*, Dkt. No. 101, Add'l RJN Ex. 17.]  In support of his motion, Kinney stated the Defendants owed him more than $150,000, that he asked to be replaced as counsel as early as 2022, and that Tri-Emerald and Jacques Poujade had informed him they intended to file Chapter 7 bankruptcy petitions.  [*Id.*]

As described more fully below, Poujade used Tri-Emerald to perpetrate a fraudulent unregistered securities scheme upon unwitting victims which bilked those

---

[7] Kinney's relationship with Poujade appears to extend back as far as 2005, when Kinney represented Poujade's wife, Heather Markovich, in her chapter 7 bankruptcy case.

victims of over $6 million and led to his conviction in October 2023 for federal securities fraud.

In 2016, Poujade founded LendPlus Holdings, Inc.  In 2017, LendPlus was sued for, among other things, failure to pay principal and interest on a $250,000 note. [Complaint, *Lyron Bentovim v. LendPlus Holdings, Inc. et al.*, C.D. of Cal., Case No. 8:17-cv-01927-CJC(SSx), Dkt. No. 1, Add'l RJN Ex. 18.]  Kinney also appeared as counsel for LendPlus in that action.  [*Id.*, Dkt. No. 37, Add'lRJN Ex. 19.]  LendPlus was sued again in 2018 for breach of a consulting agreement, and again Kinney represented LendPlus. [Answer, *SCS, LLC v Lend Plus Holdings, Inc. et al.*, C.D. of Cal., Case No. 8:18-cv-00756-DOC-DFMx, Dkt. No. 21, Add'l RJN Ex. 20.]

As with Tri-Emerald, Poujade used LendPlus to perpetrate the fraudulent unregistered securities scheme that resulted in his conviction for federal securities fraud and a corresponding five-year prison sentence.

In 2019, Poujade founded a company called 8Tech Innovate LLC ("8Tech").  [Add'l RJN Ex. 21.]  In October 2021, 8Tech filed a UCC-1 against TPI and Pharmastrip Corp. [Add'l RJN Ex. 22.]

8Tech's registered agent is an attorney named Ulises Pizano-Diaz who has also represented TPI and Jacques Poujade in a malpractice action against the Venable LLP law firm.  [Complaint, *True Pharmastrip, Inc. and Jacques Poujade v. Venable LLP*, LASC, Case No. 20STCV34843, Add'l RJN Ex. 23.]  TPI and Poujade sued Venable -- the law firm who initially represented Poujade in the FTC Action -- for professional negligence.  In their complaint, TPI and Poujade allege "[t]he representation by [Venable] of TPI was directly adverse to Poujade in the FTC Action regarding the OSC.  Further, there was a significant risk that [Venable's] representation of TPI would be, and was, materially limited by Defendant's responsibilities to or relationships with Poujade."  [*Id.*, ¶16.]  TPI obtained a settlement from Venable and dismissed the action with prejudice.

1  [Minute Order re Case Management Conference and Request for Dismissal, *True*

2  *Pharmastrip, Inc. et al v. Venable*, Add'l RJN Ex. 24.]

3      Even though TPI sued Venable for jointly representing TPI and Poujade when they

4  said that the joint representation was improper, TPI is staunchly defending its decision to

5  pay the Spertus Firm nearly $1 million for jointly representing TPI and Poujade in the

6  same matter.  Indeed, the Spertus Firm's joint representation of Poujade and TPI is even

7  more questionable because the Spertus Firm agreed to represent Poujade in his criminal

8  proceedings, all while continuing to represent TPI.

9      In March 2023, 8Tech and Poujade were sued for failure to pay a promissory note

10  and a guaranty, respectively.  [Complaint, *Crest Industries LLC v. 8Tech Innovate and*

11  *Jacques Poujade*, E.D. TX Case No 4:23-cv-00233-SDJ, Dkt No. 1, Add'l RJN Ex. 25.]

12  8Tech and Poujade filed a motion to dismiss on jurisdictional grounds.  In support of the

13  motion to dismiss, attorney Michael Kinney submitted a declaration in which he stated, "I

14  am the corporate attorney for 8 Tech Innovate LLC ("8Tech") and have served in that

15  capacity for a number of years."  [*Id.,* Dkt. No. 14-2, Add'l RJN Ex. 26.]

16      In 2020, the following companies were registered to do business in California with

17  attorney Michael Kinney listed as their registered agent:

18          Pharmastrip California LLC

19          Pharmastrip Enterprises LLC

20          Pharmastrip Hemp LLC

21          Pharmastrip Organics LLC

22          Pharmastrip USA Corp

23          Pharmastrip Ventures Corp.

24  [Add'l RJN Ex. 27.]

25      **G.      Jacques Poujade Pleads Guilty to Securities Fraud.**

26      In June 2023, Poujade agreed to plead guilty to one count of Securities Fraud in

27  violation of 15 U.S.C. §§ 78j(b), 78ff and 17 C.F.R. § 240.10b-5.  [Plea Agreement, *USA*

28

11

1    *v. Poujade, C.D. Cal. 8:23-cr-00084-MCS*, Dkt. No. 6, Add'l RJN Ex. 28.]  The Spertus

2    Firm represents Poujade in his criminal case.  [*Id.* at p. 25.]  This is the same law firm that

3    represented Jacques Poujade in the FTC Action along with Michael Kinney (after the

4    initial contempt order).  The Spertus Firm also represented TPI in the Interpleader Action.

5        The factual basis for Poujade's securities fraud conviction was a fraudulent

6    scheme to defraud investors in Tri-Emerald Companies and Lend Plus, including the

7    issuance of unregistered securities.  [*Id.* at p. 8-17.]  Poujade's fraudulent conduct began

8    in 2015 and continued through at least May 2020.  [*Id.* at p. 32.]  Poujade did not act

9    alone.  The plea agreement states on multiple occasions that his fraudulent conduct was

10    "together with others." [*Id.*]

11        Poujade has now been sentenced to 63 months in federal prison and has also

12    been ordered to pay $6,170,600 in restitution.  [Judgment, *USA v. Poujade*, Dkt. No. 44,

13    Add'l RJN Ex. 29.]  Poujade has appealed his sentence, and the Spertus Firm is

14    representing Poujade in his appeal.  [Notice of Appeal, *USA v. Poujade,* Dkt. No. 48,

15    Add'l RJN Ex. 30.]

16        **H.**      **Petitioning Creditors File An Involuntary Petition Against TPI.**

17        On July 24, 2023, Petitioning Creditors filed the instant Chapter 7 involuntary petition

18    against Alleged Debtor (the "Involuntary Petition"), which commenced Bankruptcy Case No.

19    8:23-bk-11489-SC. [Dkt. No. 1].  On August 24, 2023, the hearing on Petitioning Creditor's

20    Motion to Appoint an Interim Trustee was held. [Dkt. No. 39]. The Court denied the Motion,

21    and on August 25, 2023, the Court entered its Order (1) Directing The Parties To Appear

22    And Show Cause Why The Court Should Not Abstain Pursuant To 11 U.S.C. Section 305(a)

23    (the "Order to Show Cause"); and (2) Continuing The Status Conference to September 14,

24    2023. [Dkt. No. 40].

25        **I.**      **Poujade And Tri-Emerald File Voluntary Bankruptcy Petitions.**

26

27        Although Poujade and his attorney Michael Kinney opposed the Involuntary Petition

28    here, both Poujade and Tri-Emerald themselves filed voluntary bankruptcy petitions in this

1    very same district.  Tri-Emerald filed a voluntary petition under Chapter 7 on October 31,

2    2023 in the Santa Ana Division of the Central District of California.  [Petition, *In re Tri-*

3    *Emerald Financial Group, Inc.*, Bankr. C.D. of Cal. Case No. 8:23-bk-12302-SC, Dkt.

4    No. 1, Add'l RJN Ex. 31.]  Poujade filed a voluntary petition under chapter 7 on November

5    6, 2023 in the Riverside Division of the Central District of California.  [Petition, *In re*

6    *Jacques Bertrand Poujade*, Bankr. C.D. of Cal. Case No. 6:23-bk-15205-WJ, Dkt. No. 1,

7    Add'l RJN Ex. 32.]  Although Poujade has been ordered to pay over $6 million in

8    restitution, he estimates that his liabilities are less than $50,000.  [*Id.*]

9    **III.    ARGUMENT**

10          The Court may dismiss or suspend this Involuntary Petition if it finds that "the

11   interests of creditors and the debtor would be better served by such dismissal or

12   suspension."  Bankruptcy Code Section 305(a)(1).  Suspension or dismissal of a

13   bankruptcy case or proceeding is commonly referred to as "abstention."

14          Section 305(a)(1) restricts appellate review of abstention to a single appeal to the

15   district court.  "[B]ecause it is unappealable beyond the district court, abstention under

16   Section 305(a)(1) should be treated as an 'extraordinary remedy,' and 'should be used

17   sparingly.'  *In re Sapphire Development, LLC*, 523 B.R. 1, 7-8 (D. Conn. 2014) (citations

18   omitted); *see also In re Eastman*, 188 B.R. 621, 624 (B.A.P. 9th Cir. 1995) ("The courts

19   that have construed § 305(a)(1) are in general agreement that abstention in a properly filed

20   bankruptcy case is an extraordinary remedy, and that dismissal is appropriate under §

21   305(a)(1) only in the situation where the court finds that both 'creditors and the debtor'

22   would be 'better served' by a dismissal.") (*citing In re RAI Marketing Services, Inc.*, 20 B.R.

23   943, 945–46 (Bankr.D.Kansas 1982); *In re Martin–Trigona*, 35 B.R. 596, 598–99

24   (Bankr.S.D.N.Y.1983); and *In re Pine Lake Village Apartment Co*., 16 B.R. 750, 753

25   (Bankr.S.D.N.Y.1982)).

26          As the court in *Eastman* noted, the legislative history of Section 305(a)(1) gives an

27   example of when both creditors and the debtor would be better served by abstention:

28

> an arrangement is being worked out by creditors and the debtor out of court, there is no prejudice to the rights of creditors in that arrangement, and an involuntary case has been commenced by a few recalcitrant creditors to provide a basis for future threats to extract full payment.

*Id.* (citing and quoting H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 325 (1977); 1978 U.S.C.C.A.N. 5963, 6281).

"Whether 'the interests of creditors and the debtor would be better served by such dismissal' requires a court to analyze the 'totality of the circumstances.'" *In re QDOS, Inc.*, 652 B.R. 543 (Bankr. C.D. of Cal. 2023) (citing and quoting *Wechsler v. Macke Int'l Trade, Inc. (In re Macke Int'l Trade, Inc.),* 370 B.R. 236, 247 (9th Cir. B.A.P. 2007)).

Courts in the Ninth Circuit have applied seven factors to determine whether the court should abstain in a particular matter:

> (1) the economy and efficiency of administration; (2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court; (3) whether federal proceedings are necessary to reach a just and equitable solution; (4) whether there is an alternative means of achieving an equitable distribution of assets; (5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case; (6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and (7) the purpose for which bankruptcy jurisdiction has been sought.

*In re QDOS, Inc.*, 652 B.R. at 547-48 (citing *In re Marciano*, 459 B.R. 27, 46–47 (B.A.P. 9th Cir. 2011)).

**A.      The Seven Factors Weigh Against Abstention**

**1.      The Economy and Efficiency of Administration**

According to the Alleged Debtor, Petitioning Creditors hold five of the seven general unsecured claims against the estate.  All these unsecured claims are matured, liquidated and undisputed -- they are the face amounts of matured debentures which the Alleged Debtor acknowledges it could not and cannot pay.  Indeed, the Alleged Debtor has confirmed their validity in writing on more than one occasion.  To support its argument that

1  Petitioning Creditors' claims are disputed, the Alleged Debtor points to the Interpleader

2  Action in Los Angeles Superior Court.  This is a highly disingenuous argument.

3       As the Alleged Debtor is fully aware, the dispute in the Interpleader Action had

4  nothing to do with the merits of Petitioning Creditors' claims.  Rather, it was simply a matter

5  of jurisdiction.  The superior court held that an interpleader court lacks jurisdiction to

6  consider claims from creditors of TPI because those claims are derivative in nature.

7       This context demonstrates why economy and efficiency of administration favors

8  retention of jurisdiction here.  In a court of general jurisdiction, to reduce a claim to

9  judgment – even an undisputed claim – requires a material investment of time and

10  resources.  In a bankruptcy case, however, filing a proof of claim establishes the validity of

11  the claim unless and until a legitimate objection is filed.  If a claim objection is filed, of

12  course, the bankruptcy court can evaluate whether the objection is appropriately resolved

13  in a non-bankruptcy forum or may be more efficiently resolved in the bankruptcy case.

14  **2.    Whether another forum is available to protect the interests of
        both parties or there is already a pending proceeding in state
15      court.**

16       As described above, there is no pending proceeding where the Petitioning

17  Creditors' claims are being resolved.  Moreover, there is no suitable forum to protect

18  Petitioning Creditors' and the Alleged Debtor's respective interests.  Indeed, in a very real

19  sense, the Alleged Debtor has no material interest in dismissal of this bankruptcy

20  proceeding.  TPI has no operating business.  It purports to have a valuable asset in the

21  form of a subsidiary company Pharmastrip with unencumbered equipment worth $2 million.

22  [TPI Opposition to Trustee Motion, Dkt. No. 22, 34:24-26 ("TPI has a wholly owned

23  subsidiary in Pharmastrip Corp which has unencumbered fixed assets in the form of

24  manufacturing equipment worth in excess of $2,000,000.")]

25       Pharmastrip Corp.'s assets, however, would not benefit Petitioning Creditors unless

26  they obtained a judgment, used cross-border post-judgment mechanisms to seize TPI's

27  shares in its subsidiary, obtained another order in some other court of general jurisdiction

28

1    freezing the subsidiary's assets, appointed its own slate of directors to replace

2    management, and liquidated the equipment – all while hoping that management would

3    honor the civil asset freeze despite their prior history of ignoring similar court orders in the

4    past.

5         In any event, the existence of $2 million in unencumbered assets, like nearly

6    everything else the Alleged Debtor has said, appears to be a blatant lie.  As described

7    above, a company called 8Tech has filed a UCC financing statement against TPI and its

8    subsidiary Pharmastrip.  Jacques Poujade is the manager of 8Tech.  Moreover, TPI's

9    bankruptcy counsel – Michael Kinney – has stated under oath that he is 8Tech's long time

10   corporate counsel.  It is inconceivable that both Poujade and Kinney simply forgot that they

11   had caused 8Tech to file UCC financing statements encumbering TPI's and Pharmastrip's

12   assets.  Obviously, when Michael Kinney signed and filed a pleading with this Court stating

13   Pharmastrip's assets were unencumbered, both he and Poujade knew it was a lie.

**3.    Whether federal proceedings are necessary to obtain a just and equitable result**

16   The issues in this involuntary bankruptcy case involve the liquidation of TPI's

     supposedly valuable asset, the validity of 8Tech's purported liens, potentially valuable

     litigation claims against Michael Kinney, Jacques Poujade, and the Spertus Firm, as well

     as the priority of the purportedly secured claim of the Spertus Firm.  Because the Alleged

     Debtor has no operating business to protect, it is entirely appropriate for this Court to

     oversee these matters for the benefit of all creditors.

     The case of *In re Zais Inv. Grade Ltd. VII*, 455 B.R. 839 (2011) is instructive.  There,

     as here, the debtor had no operating business.  *Id*. at 847.  There, as here, the issues

     were the liquidation of assets and an inter-creditor dispute regarding priority that cannot be

     easily resolved in any other forum.  *Id*.  As the court put it:

> Bankruptcy is historically a creditors' remedy allowing for the
> orderly liquidation of assets for the collective benefit of all
> creditors. THOMAS H. JACKSON, THE LOGIC AND LIMITS OF
> BANKRUPTCY LAW 3–4 (Beard Books 1986). That is the
> avowed purpose of this case …

16

*Id.*

For example, despite having never operated a functioning business (directly or through a subsidiary), TPI apparently "spent" millions of dollars that it solicited from investors.[8]  Given that Jacques Poujade was conducting a multi-million-dollar securities fraud scheme during the entire time of that TPI has existed, it is not mere speculation to believe he misused the investors' money.  Accordingly, TPI's trustee would likely have valuable fraudulent transfer claims.

In addition, there are significant issues regarding the claim of the Spertus Firm that cannot be meaningfully addressed outside of a bankruptcy proceeding.  First, there is the issue of whether the Spertus Firm obtained a proper conflict waiver when it purported to represent TPI and Jacques Poujade jointly.  Second, there is the issue of whether the fees incurred by the Spertus Firm were actually incurred for the benefit of Jacques Poujade individually, not TPI.  Petitioning Creditors may not have standing to raise these issues outside of a bankruptcy proceeding.  And, of course, a bankruptcy trustee would own TPI's attorney-client privilege.  The trustee is entitled to obtain unredacted billing records and communications between Poujade and the Spertus Firm – documents creditors could not obtain in discovery in a state court proceeding.  This information would naturally be invaluable in any dispute with the Spertus Firm.

### 4.    Whether there is an alternative means of achieving an equitable distribution of assets

For the reasons described above, there is no alternative means to deal with the issues presented here.

### 5.    Whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case

Because the Spertus Firm asserts a lien on all the interpleaded funds and because the Petitioning Creditors are not the entire creditor body, an out-of-court resolution is highly

---

[8] From TPI's own statements in the FTC Action, it appears that Poujade raised at least $10 million from investors in TPI.

1  implausible.  Indeed, Petitioning Creditors did attempt to negotiate an out-of-court

2  settlement with TPI, but those efforts were unsuccessful.

3      **6.    Whether a non-federal insolvency has proceeded so far in those
           proceedings that it would be costly and time consuming to start
4          afresh with the federal bankruptcy process?**

5      There is no pending non-federal insolvency proceeding.  As noted, the court in the

6  Interpleader Action determined Petitioning Creditors could not assert their claims against

7  TPI in that case because they were derivative in nature, and Petitioning Creditors had no

8  direct claim to the funds that were deposited with the court.

9      **7.    The purpose for which bankruptcy jurisdiction has been sought**

10     Petitioning Creditors initiated this involuntary bankruptcy for the exact purposes

11 served by the Bankruptcy Code:  to ensure the efficient liquidation of assets of a defunct

12 insolvent company and to ensure the proceeds of that liquidation are distributed to

13 creditors in a fair and equitable manner.

14     **B.    The Totality of the Circumstances Weigh Against Abstention.**

15     As seen above, the seven factors discussed in *QDOS* and *Macke* strongly weigh

16 against abstention.  Even if they did not, however, the explicit text of Section 305(a)(1) and

17 the policies underlying the Bankruptcy Code must ultimately control.  *Sapphire*

18 *Development, LLC*, 523 B.R. at 10 ("[The seven factors], although helpful in ensuring a

19 thorough case-by-case analysis, cannot be employed to reach a conclusion that is

20 incompatible with the text of Section 305(a)(1), its narrow purpose, and its context within

21 the larger Bankruptcy Code.")  In other words, the seven-factor analysis must ultimately be

22 used to meet the strict standard set out in Section 305(a)(1):  both the debtor and the

23 creditors must be "better served" by suspension or dismissal.

24     Here, TPI raised at least ten million dollars from investors, including more than

25 $500,000 from the Petitioning Creditors.  So far as Petitioning Creditors are aware, none of

26 the money was ever returned to investors.  Indeed, on a more fundamental level, there is

27 no evidence TPI ever operated a business, sold products, or generated revenue.

28

1   A bankruptcy trustee would be permitted to investigate and pursue claims for fraudulent

2   transfers against recipients of those investor funds.

3        A bankruptcy trustee could also investigate claims against Michael Kinney.  Kinney

4   has been intimately involved with Jacques Poujade's "business" activities for years –

5   activities such as facilitating Jason Cardiff's illegal supplement businesses and the

6   fraudulent unregistered securities fraud scheme that ultimately landed Poujade in jail.  In

7   court filings, Kinney described himself as 8Tech's long-time "corporate counsel."

8   Presumably, he served a similar role for TPI and Tri-Emerald.  He even serves as the

9   "Registered Agent" for multiple Poujade entities.  [A dubious role for someone who left the

10  country after his longtime client and business partner agreed to plead guilty to securities

11  fraud.]

12       When Poujade was using Tri-Emerald and Lend Plus to commit securities fraud,

13  Michael Kinney was representing Poujade, Tri-Emerald and Lend Plus jointly in multiple

14  matters.  Poujade had already negotiated and signed his plea agreement before Kinney

15  moved to withdraw as counsel for Poujade and Tri-Emerald.  In his motion to withdraw,

16  Kinney never mentions Poujade's criminal case or his plea agreement.  Kinney did

17  mention that he (Kinney) had permanently left the United States.

18       A bankruptcy trustee would be permitted to investigate and pursue claims that

19  Kinney knew or should have known that Poujade was defrauding investors.  A bankruptcy

20  trustee could also investigate whether TPI paid Kinney to represent Poujade's interests

21  rather than TPI's.

22       A trustee could investigate similar issues with respect to the Spertus Firm.  In

23  Opposition to Petitioning Creditors' Motion to Appoint an Interim Trustee, Jacques Poujade

24  submitted engagement letters with the Spertus firm.  According to these engagement

25  letters, Poujade agreed that TPI would pay all his personal legal fees because "it is not

26  possible to segregate work performed for [TPI] and work performed for Jacques Poujade."

27  This statement is extraordinary.  At the time, TPI was not a party to the FTC Action, and

28

Poujade was engaging an attorney to have his personal contempt citation discharged.  It seems very clear that work performed for Poujade is easily differentiated from work for TPI.

The engagement letter further says that, in the opinion of the Spertus Firm, there was no conflict between TPI and Jacques Poujade.  This is also extraordinary given that Poujade had been found to have intentionally violated a TRO and committed fraud on a federal court.  Moreover, the engagement letter is signed by Poujade, i.e., the person with whom the potential conflict has arisen.  There is no evidence that this engagement was presented to TPI's disinterested directors, let alone approved by them.

Last but certainly not least, this position directly contradicts the position that TPI took when it sued Venable LLP for malpractice.  There, TPI stated that "[t]he representation … of TPI was directly adverse to Poujade in the FTC Action regarding the OSC.  Further, there was a significant risk that [the] representation of TPI would be, and was, materially limited by Defendant's responsibilities to or relationships with Poujade."  [Complaint, *True Pharmastrip, Inc. et al v. Venable*, ¶16, Add'l RJN Ex. 23.]

Any one of the above claims would be worth investigating.  Given the multiplicity of potential claims, TPI – as an entity – is better off in bankruptcy with a trustee.

## IV.    CONCLUSION

For the reasons described above, neither the Alleged Debtor nor its creditors would be "better served" by dismissal of this involuntary bankruptcy.  The Court should not abstain.

DATED:  November 16, 2023              LESNICK PRINCE & PAPPAS, LLP

By:  /s/ Christopher E. Prince
    Christopher E. Prince
    Attorney for Petitioning Creditors BPMD
    Texas Partners, LP, Lejos Investments,
    LLC, Ricky Lyons, Gordon Smith, and
    Robert Chaikin

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
Lesnick Prince & Pappas LLP, 315 W. Ninth St., Suite 705, Los Angeles, CA 90015

A true and correct copy of the foregoing document entitled (*specify*): **RESPONSE OF PETITIONING CREDITORS TO THE COURT'S ORDER TO SHOW CAUSE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 11/16/2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Christopher Crowell**    ccrowell@hrhlaw.com
- **Michael W Kinney**    mkinney@lblglaw.com, michael@kinneylegal.com
- **Ryan D O'Dea**    rodea@shulmanbastian.com, lgauthier@shulmanbastian.com
- **Christopher E Prince**    cprince@lesnickprince.com,
  jmack@lesnickprince.com;cprince@ecf.courtdrive.com;jnavarro@lesnickprince.com
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) 11/16/2023, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Hon. Scott C. Clarkson
United States Bankruptcy Court
411 W. Fourth St., Suite 5130
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 11/16/2023 | Janet A. Mack | /s/ Janet A. Mack |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.